# 21-2019

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

❖❖

ROBERT BARTLETT, TERREL CHARLES BARTLETT, LINDA JONES, SHAWN BARTLETT, MAXINE E. CROCKETT, individually and on behalf of the ESTATE OF RICKY LEON CROCKETT, MARVISE L. CROCKETT, TRACIE ARSIAGA, individually and on behalf of the ESTATE OF ROBERT R. ARSIAGA, SYLVIA MACIAS, GILBERT ARSIAGA, JR., GEORGE ARSIAGA, MATTHEW ARSIAGA, ANGEL MUNOZ, ROBI ANN GALINDO, PATRICIA ARSIAGA, on behalf of the ESTATE OF JEREMY ARSIAGA, CEDRIC HUNT, STEVEN GREENWOOD, STEVEN W. HILLER, individually and on behalf of the ESTATE OF STEPHEN DUSTIN HILLER, JEREMY CHURCH, SANDRA HANKINS, INGRID FISHER, individually and on behalf of the ESTATE OF STEVEN SCOTT FISHER, KRISTIN WALKER, STEVEN T. FISHER, KATHLEEN GRAMKOWSKI,

(*Caption continued on inside covers*)

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX
## FOR MOVANT-APPELLANT AND DEFENDANT-APPELLANT

DAVID B. RIVKIN, JR.
ELIZABETH PRICE FOLEY
MARK W. DELAQUIL
KENDALL E. WANGSGARD
BAKER & HOSTETLER LLP
Washington Square
1050 Connecticut Avenue, NW
Suite 1100
Washington, DC 20036
(202) 816-1500

*Attorneys for Movant-Appellant
and Defendant-Appellant*

DANIEL CARVILL, MARY CARVILL, PEGGY CARVILL-LIGUORI, INDIVIDUALLY
AND ON BEHALF OF THE ESTATE OF FRANK T. CARVILL, PAMELA ADLE-WATTS,
JOHN WATTS, GLORIA NESBITT, INDIVIDUALLY AND ON BEHALF OF THE ESTATE
OF DEFOREST L. TALBERT, D.J.H., A MINOR, TAWANNA TALBERT DARRING,
LATASHA MARBLE, JAMES TALBERT, MIRANDA PRUITT, VELINA SANCHEZ,
INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF MOSES ROCHA, ALOYSIUS
SANCHEZ, JR., ROMMEL ROCHA, PHILLIP SANCHEZ, GLORIA P. REYNOSO,
INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF YADIR G. REYNOSO, JASMIN
REYNOSO, PATRICIA REYNOSO, JOSE REYNOSO, ASHLEY WELLS SIMPSON,
INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF LARRY LLOYD WELLS,
CHAD WELLS, CRYSTAL STEWART, CHASITY WELLS-GEORGE, CANDICE
MACHELLA, BILLY DOAL WELLS, HOPE ELIZABETH VEVERKA, DONNA JEAN
HEATH, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF DAVID MICHAEL
HEATH, LOLA JEAN MODJESKA, JOHN DAVID HEATH, OLGA LYDIA GUTIERREZ,
INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF JACOB DAVID MARTIR,
ISMAEL MARTIR, NATHANIEL FOLEY, MICHAEL SCOTT DEWILDE, STEVEN
MORRIS, DANIELLE DECHAINE-MORRIS, NICHOLAS MORRIS, K.M., A MINOR,
MONICA ARIZOLA, ROBERTO AARON ARIZOLA, ROBERTO ARIZOLA, SR., CECILIA
ARIZOLA, DANNY ARIZOLA, RICARDO ARIZOLA, GREG KLECKER, RAYMOND
MONTGOMERY, PATRICIA MONTGOMERY, TONY WOOD, JOEDI WOOD, ADAM
WOOD, MEGAN WOOD, LISA RAMACI, LISA RAMACI INDIVIDUALLY AND ON
BEHALF OF THE ESTATE OF STEVEN VINCENT, ISABELL VINCENT, CHARLES
VINCENT, MARIA VIDAL, TAMARA HASSLER, RICHARD E. HASSLER, JOANNE
SUE HASSLER, SCOTT HUCKFELDT, KATHRYN HUCKFELDT, ALISHA
HUCKFELDT, MATTHEW HUCKFELDT, TIMOTHY NEWMAN, PADRAIC J. NEWMAN,
AMENIA JONAUS, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF JUDE
JONAUS, GERNESSOIT JONAUS, DAPHNIE JONAUS MARTIN, RICKY JONAUS,
MARCKENDY JONAUS, CLAIRE JONAUS, SHAREN JONAUS MARTIN, MASINA
TULIAU, AUDELIA MORIN, ESTEBAN MORIN, ESTAVAN MORIN, SR., BRIANNA
RENEE NAVEJAS, MARGARITO A. MARTINEZ, AMY LYNN ROBINSON,
INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF JEREMIAH ROBINSON,
FLOYD BURTON ROBINSON, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF
JEREMIAH ROBINSON, JACOB MICHAEL ROBINSON, LUCAS WILLIAM ROBINSON,
JODEE JOHNSON, JAMES HIGGINS, WENDY COLEMAN, BRIAN RADKE, NOVA
RADKE, STEVEN VERNIER, JR., CLIFFORD L. SMITH, JR., INDIVIDUALLY AND ON
BEHALF OF THE ESTATE OF KEVIN J. SMITH, GEORGIANNA STEPHENS-SMITH,
CORENA MARTIN, ADAM MATTIS, TERRANCE PETERSON, III, PETRA SPIALEK,
DAVID G. CARDINAL, JR., INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF
ANTHONY CARDINAL, RICHELLE HECKER, INDIVIDUALLY AND ON BEHALF OF
THE ESTATE OF WILLIAM F. HECKER, III, VICTORIA HECKER, W.H., A MINOR,
C.H., A MINOR, WILLIAM F. HECKER, JR., NANCY HECKER, JOHN D. HECKER,
ROBERT F. MARIANO, DEBRA MARIANO, BOBBIE D. MARIANO, VICKIE MICHAY
WHITE, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF STEPHEN J. WHITE,
GLADYS E. REYES CENTENO, VERONICA LOPEZ REYES, INDIVIDUALLY AND ON
BEHALF OF THE ESTATE OF JASON LOPEZ REYES, ZORAIMA LOPEZ, JENNIFER
LINK, SHARON JOHNSTON, KENNY LEE, TOM B. LEE, LING P. LEE, DEBORAH
NOBLE, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF CHARLES E.
MATHENY, IV, DAVID NOBLE, CHARLES E. MATHENY, III, JUDY COLLADO,
KAIYA COLLADO, JUSTIN WALDECK, TANJA KUHLMEIER, INDIVIDUALLY AND

ON BEHALF OF THE ESTATE OF DANIEL KUHLMEIER, ROBERT J. KUHLMEIER, THERESA A. KUHLMEIER, THERESA ANN KUHLMEIER, EDWARD KUHLMEIER, THOMAS KUHLMEIER, JOHN KUHLMEIER, ROBERT W. KUHLMEIER, PATRICK FARR, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF CLAY P. FARR, SILVER FARR, CARROL ALDERETE, ANTHONY ALDERETE, CHAD FARR, RAYANNE HUNTER, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF WESLEY HUNTER, W.H., A MINOR, T.H., A MINOR, FABERSHA FLYNT LEWIS, CHRISTOPHER ANTHONY BERSHEFSKY, LORENZO SANDOVAL, JR., INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF ISRAEL DEVORAGARCIA, LORENZO SANDOVAL, JR., ADRIAN SANDOVAL, ROSA ESTHER SANDOVAL, HENRY J. BANDHOLD, SR., INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF SCOTT BANDHOLD, AFONSO BANDHOLD, MARIANA BANDHOLD, H. JOSEPH BANDHOLD, DONALD C. BANDHOLD, JOSHUA P. STEIN, NICOLE B. STEIN, NICOLE B. STEIN, A MINOR, J.S.S., A MINOR, JESSE P. STEIN, ERIK ROBERTS, E.C.R, A MINOR, ROBIN ROBERTS, JAMES CRAIG ROBERTS, CARA ROBERTS, COLIN ROBERTS, LUKE MURPHY, WILLETTE MURPHY, SHANE IRWIN, T.R., A MINOR, HELEN MARGUERITE IRWIN, NICOLE IRWIN, MARIA GOMEZ, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF JOSE GOMEZ, JOHN DANA GREER, STEPHANIE SANDER, CHRISTOPHER D. GREER, JOSEPH L. GREER, CARL K. GREER, CHRISTOPHER JOYNER, ANNE P. JOYNER, BRIAN MONTOGMERY, K.K, A MINOR, NECOLE DUNLOW SMITH, MICHAEL R. MILLS, M.R.M., A MINOR, EDDIE JO PALINSKY, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF JERRY A. PALINSKY, JR., JERRY A. PALINSKY, II, ADINA PALINSKY, JERRY A. PALINSKY, SR., KATHLEEN HOKE, JOEL PALINSKY, KARALEEN HERB, ERIC BRANDON STONEKING, CARRIE SUE STONEKING, FAITH RENEE STONEKING, NANETTE SAENZ, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF CARLOS N. SAENZ, JUAN SAENZ, JOAQINA SAENZ CHORENS, LUZ MARIA ESTRADA-PULIDO, FRANCES CATHERINE CASTRO, ELVA ESPINOZA, AMANDA VACHO, ON BEHALF OF THE ESTATE OF NATHAN J. VACHO AND ON BEHALF OF E.V., A MINOR, BAYLI VACHO, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF NATHAN J. VACHO, JOHN VACHO, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF CAROL VACHO, ASHLEY VACHO LESLIE, RONALD VEVERKA, CAROL POLLEY, DOUGLAS VEVERKA, SANDRA SOLIDAY, JEANETTE WEST, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF ROBERT H. WEST, SHELBY WEST, DONNA ENGEMAN, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF JOHN W. ENGEMAN, SHANNON SHUMATE, LAUREN SHUMATE, L.S., A MINOR, NICOLE DICENZO, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF DOUGLAS ANDREW DICENZO, D.D., A MINOR, LARRY DICENZO, KATHY CRANE, JOHNNY ALLEN BLAIR, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF ROBERT EDWARD BLAIR, CHARLEE BLAIR WEBB, C.L., A MINOR, ARNE EASTLUND, TINA EASTLUND, SVEN EASTLUND, TAYLOR EASTLUND, ELIZABETH JO EASTLUND, MATTHEW ADAMSON, R.A., A MINOR, KATHY ADAMSON, RICHARD ADAMSON, CHRISTOPHER ADAMSON, JEFFREY ADAMSON, JUSTIN ADAMSON, JAMES SHEPARD, JOHN P. SKLANEY,, III, KATHY CRABTREE, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF DANIEL CRABTREE, M.C., A MINOR, JUDY ANN CRABTREE, RONALD WAYNE CRABTREE, DEBRA WIGBELS, JUDY HUENINK, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF BENJAMIN J. SLAVEN, SEAN SLAVEN, NICOLE LANDON, MISTI FISHER, STEVEN J. FRIEDRICH, A.F., A MINOR, PHILIP ALAN DERISE, NORMA ALICIA CONTRERAS, JONATHAN

CONTRERAS, JR., CARLOS CONTRERAS, CESAR CONTRERAS, HERNAN CONTRERAS, NOEL CONTRERAS, DANNYEL CONTRERAS, SHARON M. PUGH, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF KENNETH IRVING PUGH, BRITNEY E. CARTER, ALICIA PEARSON, DANIEL J. EVANS, JUSTIN EVANS, KEVIN GRAVES, NICHOLAS GENE KOULCHAR, MICHAEL KOULCHAR, SUHEIL CAMPBELL, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF EDGARDO ZAYAS, A.Z.C., A MINOR, CATHY ANDINO, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF EDWIN A. ANDINO JR., LUIS JUNIOR PUERTAS, LIDIA SULLIVAN, GABRIELA D. PUERTAS VERGARA-DONOSO, CHRISTOPHER MICHAEL MELENDEZ, NARCISO MELENDEZ, CHRISTINA MELENDEZ, LAUREL BARATTIERI, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF GUY BARATTIERI, PATRICIA WHEATLEY, REBECCA BARATTIERI, NICOLE BARATTIERI, GINA TESNAR, GLORIA L. MAGANA, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF KENNY FRANCES STANTON JR., MARIO STANTON, BRANDIE STANTON, TERRYMARIE STANTON, FRED FRIGO, NANNETTE BRYNE-HAUPT, LYNN FOREHAND, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF RYAN HAUPT, LANCE HAUPT, RHONDA HAUPT, TIFANY THOMPSON, SABRINA CUMBE, WILLIAM WITTE, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF KEVIN M. WITTE, MICHAEL MOCK, TAMMY DORSEY, ERIC PHYE, JAMES GMACHOWSKI, CONSTANCE BRIAN, AMBER HENSLEY, DAVID W. HAINES, DAWN HAINES, MACKENZIE HAINES, KARAR ALABSAWI, MICHELLE TAYLOR, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF DAVID G. TAYLOR, JR., J.T., A MINOR, PHYLLIS TAYLOR, JOHN TAYLOR, BRIAN B. TAYLOR, JUDAS RECENDEZ, TYLER NORAGER, SHALEE NORAGER, M.N., A MINOR, HARRY RILEY BOCK, JILL ANN BOCK, MARIAH SIMONEAUX, KOUSAY AL-TAIE, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF AHMED AL-TAIE, NAWAL AL-TAIE, BASHAR AL-TAIE, HATHAL K. TAIE, LAWRENCE KRUGER, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF ERIC KRUGER, CAROL KRUGER, C.K., A MINOR, E.K., A MINOR, DOUGLAS KRUGER, JACKIE FARRAR-FINKEN, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF PAUL FINKEN, EMILIE FINKEN, C.F., A MINOR, J.F., A MINOR, STEPHEN FINKEN, ALAN FINKEN, RICHARD FINKEN, DAVID FINKEN, MARK FINKEN, JEAN PRUITT, JOAN HENSCHEID, PETER FINKEN, LORI ANN MCCOY, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF GREGORY MCCOY, L.M., A MINOR, T.M., A MINOR, GLENN MICHAEL COX, SANGSOON KIM, SEOP STEVE KIM, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF JANG HO KIM, MICHELLE KIM, KURTISS LAMB, FRANCIS L. COTE, NANCY COTE, CHRISTOPHER COTE, SAMANTHA DUNFORD, MAXIMILLIAN SHROYER, SAMANTHA DUNFORD, CASEY REUBEN, BREE REUBEN, PATRICK REUBEN, JACKIE STEWART, MARK MUNNS, CRISTA MUNNS, SHARON DEBRABANDER, DENNIS DEBRABANDER, NICOLE DEBRABANDER, JOELLA PRATT, HELEN FRASER, RICHARD FRASER, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF DAVID M. FRASER, TRICIA ENGLISH, NATHAN ENGLISH, N.C.E., A MINOR, A.S.E., A MINOR, TODD DAILY, ON BEHALF OF THE ESTATE OF SHAWN L. ENGLISH, JOSHUA STARKEY, BRENT HINSON, WILLIAM HINSON, FRAN HINSON, HILARY WESTERBERG, JOHN GIBSON, STEPHANIE GIBSON WEBSTER, SEAN ELLIOTT, TRAVIS GIBSON, WILLIAM RONALD LITTLE, BRENDA LITTLE, INDIVIDUALLY AND ON BEHALF OF WILLIAM RONALD LITTLE, JR., KIRA SIKES, RANDOLPH DELBERT NANTZ, JOSHUA RYAN NANTZ, CHAQUITA TALBERT, ALOYSIUS SANCHEZ, SR., VICTORIA M. FOLEY,

INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF ALEXANDER SCOTT ARREDONDO, GWENDOLYN MORIN-MARENTES, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF STEVE MORIN, JR., ALVIS BURNS, KEITH VEVERKA, SUZZETTEE LAWSON, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF ISAAC S. LAWSON, CHASTITY DAWN LAFLIN, ALEXANDER ZAYAS, COLIN HAINES, LORI ANN MCCORMICK, LORI ANN MCCORMICK INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF CLINTON MCCORMICK, DEBORAH BEAVERS, DENISE VENNIX, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF ALAN R. BLOHM, JEREMY BLOHM, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF CHRIS BLOHM, KIANA BLOHM, JAMES SMITH, MAUK MAUK, ROBERT VACCARO, JOANNE GUTCHER, CHARLOTTE FREEMAN, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF BRIAN S. FREEMAN, G.F., a minor, I.F., a minor, KATHLEEN SNYDER, RANDOLPH FREEMAN, KATHALEEN FREEMAN, ALBERT SNYDER, RICHARD LEE, DANNY CHISM, ELIZABETH CHISM, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF JOHNATHAN B. CHISM, VANESSA CHISM, JULIE CHISM, RUSSELL J. FALTER, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF SHAWN P. FALTER, LINDA FALTER, MARJORIE FALTER, RUSSELL C. FALTER, JOHN SACKETT, JASON SACKETT, MICHAEL LUCAS, MARSHA NOVAK, DAVID LUCAS, TIM LUCAS, ANDREW LUCAS, SHANNON MILLICAN, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF JOHNATHON M. MILLICAN, PAUL MITCHELL MILLICAN, NOALA FRITZ, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF JACOB FRITZ AND THE ESTATE OF LYLE FRITZ, DANIEL FRITZ, ETHAN FRITZ, BILLY WALLACE, BILLY WALLACE, STEFANIE WALLACE, AUSTIN WALLACE, DEVON WALLACE, C.W., a minor, EVAN KIRBY, MARCIA KIRBY, STEVEN KIRBY, JOHNNY WASHBURN, MARVIN THORNSBERRY, CYNTHIA THORNSBERRY, A.B., a minor, TRACY ANDERSON, JEFFREY ANDERSON, ADAM G. STOUT, ANDREW JEFFREY ANDERSON, ELIZABETH LYNN ISLAS, ANASTASIA FULLER, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF ALEXANDER H. FULLER, A.F., a minor, L.R.-W., a minor, HEATH DAMON HOBSON, JODI MICHELLE HOBSON, SAMANTHA BALSLEY, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF MICHAEL C. BALSLEY, JODI MICHELLE HOBSON, M.D.H., a minor, NICHOLE GARRIGUS, DEADRA GARRIGUS, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF MICKEL D. GARRIGUS, DAVID GARRIGUS, KYLA OSTENSON, MATTHEW GARRIGUS, SHAWN RYAN, SHARON Y. DUNN SMITH, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF TERRENCE DUNN, DENNIS DUNN, RICHARD LANDECK, VICTORIA LANDECK, LAVONNA HARPER, MELBA ANNE F. HARRIS, PAUL D. HARRIS, HYUNJUNG GLAWSON, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF CURTIS E. GLAWSON, YOLANDA BROOKS, CURTIS GLAWSON,, SR., KIERRA GLAWSON, SABRINA GLAWSON, ON BEHALF OF THE ESTATE OF CORTEZ GLAWSON, JAZMON REYNA, RYAN SABINISH, R.J.S., a minor, S.J.S., a minor, CARRIE THOMPSON, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF SEAN M. THOMAS, A.T., a minor, DANIEL THOMAS, SR., DIANA THOMAS, DANIEL THOMAS, JR., KELLY GILLIS, MELINDA FLICK, ANN CHRISTOPHER, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF KWESI CHRISTOPHER, NANCY FUENTES, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF DANIEL A. FUENTES, ARMANDO FUENTES, JULIO FUENTES, TATYANA FUENTES, EMMA MCGARRY, D.J.F., a minor, JOHN KIRBY, MICHAEL MURPHY-SWEET, ELIZABETH MURPHY-SWEET, ANONA GONELLI, LINDSAY YOUNG, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF BRETT A. WALTON,

LEASA DOLLAR, EUGENE DELOZIER, MICHELLE KLEMENSBERG, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF LARRY R. BOWMAN, SCOTT LILLEY, FRANK LILLEY, JOLENE LILLEY, MATTHEW LILLEY, AVA TOMSON, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF LUCAS V. STARCEVICH, RICHARD TOMSON, GLENDA STARCEVICH, ARIANA STARCEVICH, TRENTON STARCEVICH, SAMANTHA TOMSON, ANDREW TOMSON, JARED S. STEVENS, S.W., A MINOR, BRADLEY STARCEVICH, SUSAN MARIA DOSKOCIL HICKS, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF GLENN DALE HICKS, JR., GLENN DALE HICKS, JR., DAVID JAMES HICKS, JOHN CHRISTOPHER HICKS, S.L.H., A MINOR, KAREN FUNCHEON, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF ALEXANDER J. FUNCHEON, ROBERT FUNCHEON, DWIGHT MARTIN, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF JAY E. MARTIN, DOVE DEANNA ADAMS, RAVEN ADAMS, LARK ADAMS, HOLLY BURSON, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF JEROME POTTER, NANCY UMBRELL, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF COLBY J. UMBRELL, MARK UMBRELL, CASEY BOEHMER, JEREMY D. SMITH, DANIEL DIXON, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF ILENE DIXON AND THE ESTATE OF ROBERT J. DIXON, JESSICA HUBBARD, ON BEHALF OF THE ESTATE OF ROBERT J. DIXON, M.R., A MINOR, L.R., A MINOR, DAVID DIXON, DANIEL AUSTIN DIXON, GRETCHEN LANG, REBECCA J. OLIVER, DANIEL C. OLIVER, KIMBERLEE AUSTIN-OLIVER, TIFFANY M. LITTLE, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF KYLE A. LITTLE, K.L., A MINOR, SHELLEY ANN SMITH, DAKOTA SMITH-LIZOTTE, KIMBERLEE AUSTIN-OLIVER, TIFFANY M. LITTLE, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF KYLE A. LITTLE, K.L., A MINOR, SHELLEY ANN SMITH, DAKOTA SMITH-LIZOTTE, SHYANNE SMITH-LIZOTTE, ERIN LEE DRUCTOR, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF BLAKE STEPHENS, TRENT STEPHENS, KATHLEEN STEPHENS, DEREK STEPHENS, RHETT STEPHENS, SUMMER STEPHENS, BRITTANI HOBSON, CYNTHIA CONNER, WILLIAM FARRAR, SR., INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF WILLIAM FARRAR, JOSHUA BROOKS, JOYCE BROOKS, DANIEL TYLER BROOKS, DELILAH BROWN, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF SCOTT J. BROWN, TONYA K. DRESSLER, ARDITH CECIL DRESSLER, MELISSA DRESSLER, TANYA SUZZETTE DRESSLER, DANIEL DRESSLER, ELIZABETH MASTERSON, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF JOSHUA D. BROWN, MARIAN BROWN, WAYNE BROWN, DANIELLE SWEET, A.B., A MINOR, G.B., A MINOR, DONNA KUGLICS, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF MATTHEW J. KUGLICS, LES KUGLICIS, EMILY ADAMS, DEREK GAJDOS, TAMMY DENBOER, BRANDEAUX CAMPBELL, RYAN WILSON, JAMI LIN WILSON, MATTHEW LAMMERS, ALICIA LAMMERS, BARBARA LAMMERS, GARY LAMMERS, STACY PATE, ANGEL GOMEZ, DENISE JACKSON, SCOTT HOOD, FLORA HOOD, DIXIE FLAGG, STEPHANIE HOOD, CHEYENNE FLAGG, WILLIAM PARKER, MEGHAN PARKER-CROCKETT, ANDREW MOORES, SHEILA TRACY, INDIVIDUALLY AND BEHALF OF THE ESTATE OF JACOB TRACY, DONALD TRACY, NICHOLE SWEENEY, CHRISTINA SHERIDAN, MATTHEW BENSON, MELISSA BENSON, C.B., A MINOR, B.B., A MINOR, DANIEL P. BENSON, CAROL BENSON, DANIEL R. BENSON, RAYMOND NIGEL SPENCER, JR., SYLVIA JOHNSON SPENCER, MICHAEL DEAN MOODY, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF MICHAEL DEAN MOODY, JR., CONNIE MOODY, KEDRICK DANTE MOODY, DREW EDWARDS, DONIELLE EDWARDS, ARIFAH HARDY, T.C., A

MINOR, AUNDRA CRAIG, JOYCE CRAIG, DEBRA COOK-RUSSELL, NASHIMA
WILLIAMS CRAIG, JONATHAN CRAIG, ANDRE BROWN, MICHAEL COOK,
VALENCIA COOK, KATHERINE M. CROW, INDIVIDUALLY AND ON BEHALF OF THE
ESTATE OF WILLIAM J. CROW, K.A.C., A MINOR, CANDACE CATHRYN HUDSON,
INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF KATHRYN ANN MONDINI,
K.E.C., A MINOR, JOHN TAYLOR, CARROL ALDERETE, TRACYANDERSON, J.J.,
R.J.S., LORI ANN MCCORMICK, TINA EASTLUND, NANETTE SAENZ,
BARBARAFARLEY, JACKIE MERK HLASTAN, KATHRYN HUCKFELDT, RANDOLPH
FREEMAN, MAXINE E.CROCKETT, CAMERON FARLEY, JUAN SAENZ, THOMAS
SMITH, JENNIFER RENEE YORK, BOONCHOB PRUDHOME, STEPHANIE MCCULLEY,
DREW EDWARDS, RHONDA KEMPER, DANIEL C. OLIVER, CECILIA ARIZOLA,
JACOB MICHAEL ROBINSON, MICHELLE TAYLOR, T.M.(A MINOR), DEREK
STEPHENS, BRUCE LUKOW, KATHY KUGLER, STEPHANIE HOOD, M.R.(A MINOR),
TONYA FREEMAN, MICHELLE BENAVIDEZ, EDWARD KUHLMEIER, JUSTIN
ADAMSON, NICHOLE LOHRIG, ANTHONY ALDERETE, NAWAL ALTAIE, WILLIAM
WITTE, ANNE P. JOYNER, CLIFFORD VAUGHN, A.F.(A MINOR), LAUREN SHUMATE,
TAWANNA TALBERT DARRING, DANIEL BENAVIDEZ, SKYLAR HAKE, MICHAEL
LUKOW, CHARLEE BLAIR WEBB, HENRY J. BANDHOLD, SR, JEFFREY D. PRICE,
MARC STEARNS, BRANDON ARNOLD, ADAM WOOD, CHRISTOPHER LEVI, I.W.,
NICHOLAS GENE KOULCHAR, WAYNE BROWN, C.S.(A MINOR), B.B., GREG
KLECKER, GLENN DALE HICKS, SR, ROBERT FUNCHEON, NANCY UMBRELL,
COLLEEN CZAPLICKI, JOAQINA SAENZ CHORENS, DANIELCARVILL, ALOYSIUS
SANCHEZ, SR, AVA TOMSON, NATHANIEL FOLEY, DONNA JEAN HEATH,AUDELIA
MORIN, KATRINA COE, G.H., PHILIP ALAN DERISE, MARLYNN GONZALES,
JOSHUADENMAN, CORY SMITH, ANGELA M. LAIRD, MEGAN WOOD, L.W.,
MATTHEW CRAIG, JUDY ANN CRABTREE, ANDREW LUKOW, DARLENE SHELTON,
WESLEY WILLIAMSON, LUKE MURPHY, RAYMOND NIGEL SPENCER, SR., DEADRA
GARRIGUS, KATHRYN HEAD, DENISE VENNIX, K.A.C., LARRY DICENZO, JOYCE
CRAIG, CESAR CONTRERAS, EMILY LEVI, JOEDI WOOD, JOSEPH LUKOW, CANA
HICKMAN, ROBIN ROBERTS, SARAH DUDEK, S.S., SEAN ELLIOTT, GEORGIANNA
STEPHENSSMITH, JORDAN M. LAIRD, CHRISTOPHER BOUTEN, PATRICK WARD,
MELISSA DRESSLER, TATYANA FUENTES, TANJA KUHLMEIER, ERIC PHYE,
GLORIA P REYNOSO, JOAN HENSCHEID, NICHOLAS MORRIS, STEVEN J.
FRIEDRICH, G.L., MATTHEW MENKE, ROBERT KUGLER, TERREL CHARLES
BARTLETT, CATHY ANDINO, ADAM MATTIS, PHYLLIS TAYLOR, J.M.H., AMBER
HABSIEGER, ARIANA STARCEVICH, K.A., HEATH DAMON HOBSON, S.L.H.,
BRENT HINSON, TIMOTHY TIFFNER, E.R., KIMBERLEE AUSTINOLIVER, MARK
HURST, LISA RAMACI, KELLY GILLIS, NORMA ALICIA CONTRERAS, M.B.S.,
J.L.(A MINOR), JOSEPH T. MILLER, JEREMY D. SMITH, DONALD MAYES, ALAN
BURKS, MEGAN PEOPLE, JOHN RICHARD TULLY, II, BRETT FARLEY,
CHRISTOPHER JOYNER, ANGELICA ANDRADE, MATTHEW GARRIGUS, STEVEN T.
FISHER, JENNIFER ROOSE, CASSANDRA BAILEY, ERIC NEIBERGER, SHAREN
JONAUS MARTIN, TRENT STEPHENS, LEE WOLFER, NICHOLAS PROWSE,
THERESA DAVIS, KAIYA COLLADO, TABITHA MCCOY, JUSTIN WALDECK, JONI
ARIEL REEVES LITTLE, TAMMY DORSEY, JODEE JOHNSON, ROBERTO ARIZOLA,
SR, NATHAN ENGLISH, ALISON BURKS MCRUIZ, CYNTHIA DELGADO, ANDREW
BRADLEY, KEDRICK DANTE MOODY, DON JASON STONE, DONNA LEWIS, ANDY
POOL, JERRY L. MYERS, JEFFREY C. MANN, GEORGE ARSIAGA, JOHN STEARNS,
BRIDGET JUNEAU, BREANNA LYNN GASPER, DONNA FARLEY, AUSTIN

WALLACE, BRIAN T. SHELTON, AFONSO BANDHOLD, MARY NEIBERGER, NANCY
HECKER, KIRA SIKES, RICHARD TOMSON, MACKENZIE HAINES, CHRISTOPHER
BOGART, LUZ MARIA EstradaPulido, JESSICA H. WILLIAMS, NICHOLAS
BAUMHOER, SANDRA HANKINS, ESTEBAN MORIN, MICHAEL KOULCHAR, GINA
TESNAR, LINDSAY YOUNG, REBECCA J. OLIVER, CHARLES B. GREGSTON,
JAMES SMITH, JACKIE FarrarFinken, SABRINA GLAWSON, MICHAEL SCOTT
DEWILDE, SHANNON SHUMATE, JOHN D HECKER, LILLIAN HURST, DAVID
WAYNE HARTLEY, RYAN WILSON, LOLA JEAN MODJESKA, BEVERLEY WOLFER,
DENICE YORK, FABERSHA FLYNT LEWIS, KERI HAKE, PAMELA AdleWatts,
ROBI ANN GALINDO, BRANDIE STANTON, KURTISS LAMB, BRYAN S. SHELTON,
M.R.M, JOHNNY JAVIER MILES, JR, JACQUELINE A. SMITH, MELISSA BENSON,
MARK MUNNS, CARL K. GREER, CARRIE THOMPSON, TOM B. LEE, RICHARD
FRASER, JOANNE SUE HASSLER, ANDREW LUCAS, HUNTER L. LAIRD,
JONATHAN CONTRERAS, SR, MARIA ALVAREZ, ALEXANDER ZAYAS, NANNETTE
BryneHaupt, CONNIE HADDOCK, JENNIFER LINK, DOVE DEANNA ADAMS,
CHARLOTTE FREEMAN, HOLLY BURSON, CHRISTOPHER WATTS, NATALIA
WHITE, ZACHARY HAKE, T.S. (A MINOR), SEAN HARRINGTON, TAMARA
RUNZEL, SHYANNE SmithLizotte, K.B., SUZZETTEE LAWSON, CEDRIC HUNT,
E.C.R., GLADYS E. REYES CENTENO, LAVONNA HARPER, DAWN HAINES,
ROBERT NEIBERGER, JENNIFER MORMAN, HARRY RILEY BOCK, CARLOS
CONTRERAS, DEVON WALLACE, TIFFANY M. LITTLE, MARY JANE
VANDEGRIFT(INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF MATTHEW R.
VANDEGRIFT), SAMANTHA DUNFORD, CHRISTINA MELENDEZ, CALVIN CANINE,
LES KUGLICIS, WAYNE NEWBY, REBECCA BARATTIERI, KYLA OSTENSON,
FRANCES CATHERINE CASTRO, JUDY HOFFMAN, BRENDA LITTLE, PAULA
MENKE, CONNIE MOODY, DEBRA WIGBELS, JEAN DAMMANN, DONNA
ENGEMAN, STEPHANIE KIDDER, SYLVIA JOHNSON SPENCER, DEBORAH SMITH,
DEBRA CookRussell, MICHAEL HABSIEGER, H. JOSEPH BANDHOLD, I.F.,
MEGAN MAUK, ESTAVAN MORIN, SR, J.T.B., RAYANNE HUNTER, DANIEL
BENAVIDEZ, JR, HERNAN CONTRERAS, TAYLOR EASTLUND, CHRISTINA SMITH,
MICHEAL PAUL ALLEN SHELSWELL, J.M., JUDY COLLADO, DIXIE FLAGG,
CHASTITY DAWN LAFLIN, ASHLEY VACHO LESLIE, RICKY JONAUS, M.R.M.,
TANYA EVRARD, COLIN HAINES, LUCAS WILLIAM ROBINSON, JOHN RICHARD
TULLY, MARK UMBRELL, P.A., JEAN PRUITT, VERONICA PENA ANDRADE,
RICHARD LEE, CAROL BENSON, ROBERTO AARON ARIZOLA, TIMOTHY NEWMAN,
COLIN ROBERTS, ROBERTO ANDRADE, SR., SVEN EASTLUND, SABRINA
CHAPMAN, SHANE IRWIN, SCOTT LILLEY, CRYSTAL TUTWILER, SUHEIL
CAMPBELL, DOUGLAS KRUGER, DAVID FINKEN, MARIANA BANDHOLD, PETRA
SPIALEK, VELINA SANCHEZ, DANIEL THOMAS, SR, PATRICIA MONTGOMERY,
JAMES VAUGHN, A.L.R., K.K, DAVID C. IVERSON, KAYTRINA JACKSON, L.R.,
N.C.E., T.C., DIANNE O'NEILL, WILLIAM PARKER, ETHAN FRITZ, EDNA LUZ
BURGOS, WILLIAM FARRAR,Sr., BRANDEAUX CAMPBELL, CHRISTINA SHERIDAN,
JERRY A. PALINSKY, SR, STEVE WADLEIGH, KATHLEEN HOKE, MICHELLE WEST,
TIFANY THOMPSON, JESSECA LYN TSOSIE, KEVIN GRAVES, JUDAS RECENDEZ,
CORENA MARTIN, DANIEL FRITZ, MIRANDA PRUITT, JAMES KINSEY, KEMELY
PICKETT, JARRETT WARD, D.A.S., MARY CARVILL, JEFFREY ANDERSON,
VICTOR RAY WISE II, BILLY DOAL WELLS, NICOLE BARATTIERI, NICHOLE
GARRIGUS, VICTORIA LANDECK, DONNA KUGLICS, CHRISTOPHER SONGER,
JESSALYN HOLT, VALENCIA COOK, LING P. LEE, ROSEMARIE ALFONSO, DANIEL

DRESSLER, LARK ADAMS, RICHARD E. HASSLER, ERIK ROBERTS, PATRICIA WHEATLEY, A.M.H., MARGARITA ARISTIZABAL, THERESA HART, MARY JANE VANDEGRIFT(INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF JOHN VANDEGRIFT), DANIEL MENKE, JOSEPH L. GREER, SHELLEY ANN CASEY, CHRISTOPHER MILLER, RENE POOL, JARED S. STEVENS, KENNY LEE, A.Z.C., MELINDA FLICK, JOHN GIBSON, OLGA LYDIA GUTIERREZ, FRED FRIGO, NICOLE A. KAPLAN, REBECCA L. SAMTENFINCH, TAMMY VANDERWAAL, TYLER NORAGER, BRITNEY E. CARTER, DAVID JAMES HICKS, SHANNON MILLICAN, R.A., CARLLIE PAUL, THEODORE LESTER, LORI ANN MCCOY, K.L., BOBBIE D. MARIANO, C.L.(A MINOR), ANASTASIA FULLER, RICHARD FINKEN, JOSHUA SCHICHTL, KIERRA GLAWSON, FAITH RENEESTONEKING, PATRICIA REYNOSO, BRIANNA RENEE NAVEJAS, POLOKA AIETI, DONIELLE EDWARDS, SHELBY WEST, VICTORIA M. FOLEY, RUSSEL HICKS, JR., ELVA ESPINOZA, CHAD FARR, CRISTA MUNNS, DAVID ARNOLD, ANTHONY HUDSON, JOSEPH HELTON, SR., JOHN D. LAMIE, GEORGE D. WHITE, C.F., BASHAR ALTAIE, MATTHEW LILLEY, VIVIAN PICKETT, BILLY JOHNSON, CARA ROBERTS, C.B., CHRIS FARLEY, JESSICA HUBBARD, RANDALL GEIGER, ROBERT CANINE, JOHN SACKETT, J.T., LEASA DOLLAR, JOHN MCCULLEY, CANDICE MACHELLA, MATTHEW LAMMERS, WILLIAM RONALD LITTLE, CASSIE COLLINS, CHRISTOPHER COTE, NICOLE LANDON, JOSHUA P. STEIN, CARRIE SUE STONEKING, URSULA ANN JOSHUA, MATTHEW BENSON, JAMES CANINE, CHRISTINA BIEDERMAN, MARIO STANTON, VERONICA DENISSE ANDRADE, BILLY WALLACE, DIANA THOMAS, MONICA ARIZOLA, DAKOTA SMITHLIZOTTE, LEAANN WADLEIGH, LESLIE K. REEVESHARDCASTLE, A.S.E., TONY GONZALEZ, JENNIFER LYNN HUNT, SLADE VICTOR TULLY, DOUGLAS VEVERKA, THOMAS KUHLMEIER, JOHN VACHO, KIMBERLY VESEY, ELIZABETH CHISM, AVA LANETTE BRADLEY, HILARY WESTERBERG, M.C., DEBORAH BEAVERS, MAX W. HURST, TANYA SUZZETTE DRESSLER, JAMIE BARNES, PEGGY CARVILLLIGUORI, JEFFREY ADAMSON, SAMANTHA BALSLEY, ELIZABETH JO EASTLUND, ANGEL MAYES, ALOYSIUS SANCHEZ, JR, JUDITH TIFFNER, T.R., HOPE ELIZABETH VEVERKA, A.S., ARIFAH HARDY, JUSTIN EVANS, GILBERT ARSIAGA, JR, SELICIA FIELD, A.B.(A MINOR), FRANK LILLEY, JEANNINE VAUGHN, NOEL CONTRERAS, ADINA PALINSKY, BRIAN MONTGOMERY, EMANUELA FLOREXIL, STEPHEN FINKEN, RUSSELL J. FALTER, CASEY REUBEN, M.A.H., STEVEN GREENWOOD, SEOP KIM, PAUL MITCHELL MILLICAN, JAMES TALBERT, GEORGE J. WHITE, ANITA BAKER, KARALEEN HERB, PAM MARION, KELLI D. HAKE, BRIAN G. TAYLOR, MATTHEW ARSIAGA, DONALD C. BANDHOLD, JEANNE RHEA MCMANUS, DANIEL PRICE, MARK FINKEN, K.M., VICKIE MICHAY WHITE, REBEKAH SCOTT, ERIC BILLITER, MICHAEL J. MILLER, RICHELLE HECKER, STEVEN KIRBY, MARLEN PICKETT, SHAYLYN C. REECE, GLORIA L. MAGANA, ROMMEL ROCHA, T.H., MARILYN LOUISE TULLY, TAMARA HASSLER, DAVID DIXON, BRITTANI HOBSON, HELEN FRASER, JOHN DAVID HEATH, JOHN KUHLMEIER, P.H., KIMBERLY SONGER, MATTHEW FIESER, BRIAN COKE, DEREK ALLEN HOLLCROFT, ADAM MAGERS, JOYCE BROOKS, MARICEL MURRAY, SEBASTIAN NIUMAN, SAMANTHA TUCKER, JOSHUA P.G. WOLD, ANDREW TOMSON, JACOB BAUER, JOHNNY JAVIER MILES, SR, CLAIRE JONAUS, DANNYEL CONTRERAS, STEPHANIE C. SANDER, ROBERT WHITE, CHRISTOPHER D. GREER, DANNY CHISM, MICHAEL DEAN MOODY, ROBERT VACCARO, SHALEE NORAGER, MICHAEL LUCAS, ARDELL THOMSEN, TIMOTHY W. ELLEDGE, ARNE EASTLUND, DAVID W.

HAINES, MELBA ANNE F. HARRIS, JESSE P. STEIN, RALPH THOMSEN, MICHAEL
WEATHERLY, SUSAN MARIA DOSKOCIL HICKS, VERONICA LOPEZ REYES,
AUNDRA CRAIG, SANDRA SOLIDAY, ANDREW MOORES, L.R.W., RONALD
SLOAN, KATHLEEN SNYDER, HATHAL K. TAIE, SHEILA TRACY, ROBERT F.
MARIANO, JUDY HUENINK, MICHAEL SMITH, DENNIS DUNN, CYNTHIA CONNER,
IMO AIETI, CONSTANCE BRIAN, JOHN O'NEILL, DAVID KAPLAN, ELENA SHAW,
G.B.(A MINOR), ANGELA ALVAREZ, AMI NEIBERGER, JOLENE LILLEY, JENNIE L.
MORIN, JONATHAN CRAIG, ANDRE BROWN, JAMES DRESSLER, KATHY
ADAMSON, RHETT MURPHY, MICHAEL R. MILLS, CAROL POLLEY, CYNTHIA
THORNSBERRY, ALAN FINKEN, CELESTE YANTIS, KRISTIN WHITE, JASON
ROBINSON, JODI MICHELLE HOBSON, SCOTT HOOD, SHAULA SHAFFER, DANIEL
J. EVANS, C.W., MARION CRIMENS, GABRIELA D. PUERTAS VERGARADONOSO,
DONALD TRACY, DONALD FIELD, CHRISTOPHER GOLEMBE, ANGELICA FIELD,
LANI D. BOGART, FRANK L. CONVERSE, RUSSELL C. FALTER, MARVISE L.
CROCKETT, JEAN MARIANO, SENOVIA FIELD, JESSICA CABOT, LORENZO
SANDOVAL, JR, EUGENE DELOZIER, SHARON JOHNSTON, STACY PATE, SHILYN
JACKSON, VICTORIA HECKER, MARIO BOWEN, SETH TIFFNER, JOHN P.
SKLANEY, III, JOELLA PRATT, PRESTON SHANE REECE, JEREMY BAUER, DAVID
G. CARDINAL, JR, JEREMY CHURCH, LAUREL BARATTIERI, EDDIE JO PALINSKY,
CHEYENNE FLAGG, JOEL PALINSKY, S.J.S., BRENDA CHAND, SAMANTHA
TOMSON, MICHELLE KIM, JERRY A. PALINSKY, II, LATASHA MARBLE, PHILLIP
SANCHEZ, LUIS GARZA, CHRISTOPHER MICHAEL MELENDEZ, JOHN DANA
GREER, PADRAIC J. NEWMAN, ALICIA PEARSON, LINDA GIBSON, CHRISTOPHER
ADAMSON, ELIZABETH MASTERSON, GREGORY BAUER, M.N., KATHY CRABTREE,
J.R., EVAN D. BOGART, MAXIMILLIAN SHROYER, CHASITY WELLSGEORGE,
MICHELLE KLEMENSBERG, JOHNNY WASHBURN, G.F., ISABELL VINCENT,
MICHAELMURPHYSWEET, MARGARITO A. MARTINEZ, JR, STEFANIE WALLACE,
NATHAN NEWBY, VANESSA CHISM, ZORAIMA LOPEZ, SUSAN ARNOLD, EMILIE
FINKEN, VICKIE MCHONE, JOSHUA TIFFNER, MATTHEW HUCKFELDT, JAYDEAN
HAMILTON, MARIAH SIMONEAUX, SHARON M. PUGH, DONNIE MARION, JAMES
CRAIG ROBERTS, AMBER HENSLEY, AMENIA JONAUS, MELISSA DOHENY,
SHELLEY ANN SMITH, NOEL S. FARLEY, TAMMY KINNEY, GLORIA NESBITT,
KIMBERLY MILLER, SEAN SLAVEN, ERIC BRANDON STONEKING, JULIE CHISM,
DWIGHT MARTIN, KATHY CRANE, RONALD VEVERKA, TRAVIS GIBSON, NOALA
FRITZ, MATTHEW L. MERGELE, LAWRENCE KRUGER, SHARON Y. DUNN SMITH,
JOSE REYNOSO, BRADLEY STARCEVICH, DANIEL P. BENSON, KEITH VEVERKA,
PATRICIA SMITH, E.W., SHIRLEY STEARNS, ADAM G. STOUT, ARMANDO FUENTES,
RONALD WAYNE CRABTREE, SANDRA VALENCIA, KAREN FUNCHEON, ISMAEL
MARTIR, E.K., BRYANT BEARFIELD, WILLIAM J. LEE, MARVIN THORNSBERRY,
ANN CHRISTOPHER, CHRISTOPHER DAVID, TAUSOLO AIETI, BENJAMIN DANIEL
CARRINGTON, NANCY COTE, JANET JONES, MERLESE PICKETT, NICOLE IRWIN,
AMANDA VACHO, RICHARD CASEY, PERRY WHITE, SHARON DEBRABANDER,
ADRIAN SANDOVAL, JAMI LIN WILSON, HYUNJUNG GLAWSON, LINDA FALTER,
KARAR ALABSAWI, JASON SACKETT, ROADY LANDTISER, JEREMY BLOHM,
PETER FINKEN, TERRANCE PETERSON, III, ANGELINE JACKSON, ERIC LEVI,
FRANCES ROBINSON, RYAN SABINISH, SHELBY WHITE, ASHLEY GUDRIDGE
HOUPPERT, JOSHUA BROOKS, MICHAEL COOK, NICHOLE SWEENEY, SARAH
CROSBY, JAMES SHEPARD, STEPHANIE JUNEAU, ROBERT W. KUHLMEIER, GARY
LAMMERS, LINDA JONES, SHAWN BARTLETT, TEMIKA SWINTON, JOHN

Daggett, Lynn Forehand, Janet L. Rios, Mark E. Thomsen, Lauren Niquette, Joel Hernandez, Victoria Hernandez, Athena Hall, Matthew C. Beatty, Andrew Charles Major, H.K., Kiersten Hall, Jerrin Matthew Ogden, Ronald Alldridge, Brooke Kenney, K.R.G., Todd Alldridge, Rene Gutel, Abigail Hall, Joann Alldridge, Andrew James Raymond, Kandi Danielle Whiteside, Thomas Niquette, A.M.M., Ana M. Gomez, Randall Klingensmith, Sharon Smithey Whiteside, Kaitlyn Adams, Angela M. Garcia, Ryan Bowman, Michael Pasco, Andrew Hall, Daniel Kenney, Christopher Whiteside, Sean M. Niquette, Christopher Satterfield, Grant H. Von Letkemann, II, Ashley Meikel Major, Brian Clark Alldridge, Sheryl Ann Chen, Tara Hutchinson, Randi Jean Martz, J.K., K.M.G., M.J.H., Stephen W. Evans, Jackson Wiley Whiteside, Tyler Nicholas Ogden, M.T.W., Richard Hedgecock, II, Matthew Whiteside, Mackenzie G. Hall, Dianna Alldridge, Mary Niquette, Mark A. Hall, Gary Douglas Fishbeck, Toni Attanasio,

*Plaintiffs-Appellees,*

—against—

Dr. Muhammad Baasiri,

*Movant-Appellant,*

Jammal Trust Bank SAL,

*Defendant-Appellant.*

## Corporate Disclosure Statement

Pursuant to Federal Rule of Appellate Procedure 26.1, Appellants state the following:

Dr. Baasiri is not a corporate party.

No other company owns more than 10% of Jammal Trust Bank, which, on September 24, 2019, sought liquidation and was placed in receivership pursuant to Article 17 of Law 110 of Lebanese law. The liquidation process under Lebanese law allows the Central Bank to acquire the bank's assets and its rights.

# **Table of Contents**

INTRODUCTION ...................................................................................................1

STATEMENT OF JURISDICTION..........................................................................2

ISSUES PRESENTED..............................................................................................3

STATEMENT OF THE CASE...................................................................................3

        A.      Underlying Suit ......................................................................4

        B.      JTB Liquidation ....................................................................4

        C.      JTB's Motions to Substitute or Intervene and Dismiss ................6

STANDARD OF REVIEW ........................................................................................9

SUMMARY OF ARGUMENT ................................................................................10

ARGUMENT ..........................................................................................................11

    I.     The Central Bank Is the Real Party in Interest but Is Immune from Suit as an Instrumentality of the State of Lebanon................................................11

        A.      The District Court's Application of the Time-of-Filing Rule Is Erroneous ...........................................................................15

                1.      *Dole Food*'s Time-of-Filing Statements Are Dicta ......................16

                2.      The Time-of-Filing Rule Does Not Apply to Federal-Question Cases that Have Not Been Removed ............................................20

                3.      Applying the Time-of-Filing Rule To the Central Bank Violates the FSIA's Purposes ........................................................27

    II.    The District Court Erred in Denying the Motion to Substitute.............................41

CONCLUSION........................................................................................................51

# Table of Authorities

**Page(s)**

**Cases**

*Abdulaziz v. Metro. Dade Cnty.*,
 741 F.2d 1328 (11th Cir. 1984) .........................................................................33

*Abrams v. Société Nationale des Chemins de Fer Francais*,
 389 F.3d 61 (2d Cir. 2004) (per curiam) .......................................................35, 36

*Abrams v. Société Nationale des Chemins de Fer Francais*,
 175 F. Supp. 2d 423, 425 (E.D.N.Y. 2001) .......................................................35

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
 2008 WL 5958061 (E.D.N.Y. Sept. 26, 2008) ..................................................22

*Allied Fid. Ins. Co. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi.*,
 677 F. Supp. 562 (N.D. Ill. 1988) ...............................................................14, 50

*Allstate Life Ins. Co. v. Linter Grp. Ltd.*,
 994 F.2d 996 (2d Cir. 1993) ..............................................................................40

*Atl. Cleaners & Dryers v. United States*,
 286 U.S. 427 (1932).........................................................................................38

*Barnes v. Thompson*,
 58 F.3d 971 (4th Cir. 1995) .............................................................................37

*Beers v. Arkansas*,
 61 U.S. 527 (1857)..........................................................................23, 24, 25, 32

*Biton v. Palestinian Interim Self-Gov't Auth.*,
 510 F. Supp. 2d 144 (D.D.C. 2007)..................................................................22

*Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling
 Co.*,
 137 S. Ct. 1312 (2017).......................................................................................28

*Callejo v. Bancomer, S.A.*,
 764 F.2d 1101 (5th Cir. 1985) .....................................................................34, 35

*Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*,
527 U.S. 666 (1999)......................................................................25

*Connectu LLC v. Zuckerberg*,
522 F.3d 82 (1st Cir. 2008).............................................21, 22, 23, 26

*Cunard S.S. Co. v. Salen Reefer Serv. AB*
773 F.2d 452 (2d Cir. 1985) ...............................................................40

*Doe v. Roman Catholic Diocese of Galveston-Houston*,
408 F. Supp. 2d 272 (S.D. Tex. 2005)................................................33

*Dole Food Co. v. Patrickson*,
536 U.S. 956 (2002)............................................................................17

*Dole Food Co. v. Patrickson*,
538 U.S. 468 (2003)......................................................................*passim*

*Drexel Burnham Lambert Group, Inc. v. Galadari*,
12 F.3d 317 (2d Cir. 1993) ...........................................................*passim*

*Drexel Burnham Lambert Grp., Inc. v. Galadari*,
1987 WL 6164 (S.D.N.Y. Jan. 29, 1987) .....................................47, 48

*EM Ltd. v. Banco Central de la Republica Argentina*,
800 F.3d 78 (2d Cir. 2015) ..........................................................*passim*

*Fabe v. Aneco Reinsurance Underwriting Ltd.*,
784 F. Supp. 448 (S.D. Ohio 1991) ............................................14, 50

*FDIC v. Meyer*,
510 U.S. 471 (1994)...........................................................................40

*FDIC v. Wrapwell Corp.*,
922 F. Supp. 913 (S.D.N.Y. 1996) ..............................................14, 50

*Fed. Republic of Germany v. Philipp*,
141 S. Ct. 703 (2021).....................................................................27, 28

*Filler v. Hanvit*,
378 F.3d 213 (2d Cir. 2004) ...............................................................13

ii

*Finanz AG Zurich v. Banco Economico S.A.*,
    192 F.3d 240 (2d Cir. 1999) ........................................................................*passim*

*First Nat'l City Bank v. Banco Nacional de Cuba*,
    406 U.S. 759 (1972).........................................................................................33

*Fullerton Ave. Land Dev. Ltd. v. Cianciulli*,
    48 Fed. App'x 813 (2d Cir. 2002) .............................................................19, 20

*United States ex rel. Gadbois v. PharMerica Corp.*,
    809 F.3d 1 (1st Cir. 2015).............................................................................21

*Gross v. Winter*,
    876 F.2d 165 (D.C. Cir. 1989).....................................................................37

*Grupo-Dataflux v. Atlas Glob. Grp., L.P.*,
    541 U.S. 567 (2004).................................................................................21, 22

*Hong Kong Deposit & Guar. Co. Ltd. v. Hibdon*,
    602 F. Supp. 1378 (S.D.N.Y. 1985) ...........................................................50

*Iowa Tribe of Kan. & Neb. v. Salazar*,
    607 F.3d 1225 (10th Cir. 2010) ...........................................................*passim*

*Jimenez v. Walker*,
    458 F.3d 130 (2d Cir. 2006) .........................................................................19

*Kentucky v. Graham*,
    473 U.S. 159 (1985).......................................................................................30

*Knox v. Palestine Liberation Org.*,
    306 F. Supp. 2d 424 (S.D.N.Y. 2004) .......................................................22

*Louisville & Nashville R. Co. v. Mottley*,
    211 U.S. 149 (1908).......................................................................................21

*Massachusetts v. United States*,
    333 U.S. 611 (1948).......................................................................................20

*Mathie v. Fries*,
    121 F.3d 808 (2d Cir. 1997) .........................................................................30

iii

*Maysonet-Robles v. Cabrero*,
    323 F.3d 43 (1st Cir. 2003)................................................................26

*In re MDL-731 Tax Refund Litig.*,
    989 F.2d 1290 (2d Cir. 1993) .........................................................37

*Nat'l Trust for Historic Pres. in U.S. v. FDIC*,
    21 F.3d 469 (D.C. Cir. 1994)..........................................................40

*New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*,
    101 F.3d 1492 (3d Cir. 1996) ....................................................22, 23

*NML Capital, Ltd. v. Banco Cent. de la Republica Argentina*,
    652 F.3d 172 (2d Cir. 2011) .....................................................13, 39

*Oliver American Trading Co., Inc. v. Government of the United States of Mexico*,
    5 F.2d 659 (2d Cir. 1924) ....................................................31, 32, 33

*Organic Cow, LLC v. Ctr. for New England Dairy Compact Rsch.*,
    335 F.3d 66 (2d Cir. 2003) ..........................................................9, 42

*Patrickson v. Dole Food Co.*,
    251 F.3d 795 (9th Cir. 2001) ...........................................................16

*Petersen Energia Inversora S.A.U. v. Argentine Republic & YPF S.A.*,
    895 F.3d 194 (2d Cir. 2018) ..........................................................2, 9

*Postlewaite v. McGraw-Hill*,
    333 F.3d 42 (2d Cir. 2003) .............................................................20

*Klein ex rel. Qlik Tech., Inc. v. Qlik Tech., Inc.*,
    906 F.3d 215 (2d Cir. 2018) .............................................................19

*Quinones v. City of Binghamton*,
    997 F.3d 461 (2d Cir. 2021) .............................................................30

*R.R. Co. v. Alabama*,
    101 U.S. 832 (1879).........................................................................33

*Redhead v. Conf. of Seventh-Day Adventists*,
    360 Fed. App'x 232 (2d Cir. 2010) .................................................19

iv

*Reeve Aleutian Airways, Inc. v. United States*,
    982 F.2d 594 (D.C. Cir. 1993)............................................................37

*Republic of Austria v. Altmann*,
    541 U.S. 677 (2004)..............................................................27, 36

*Rukoro v. Fed. Republic of Germany*,
    976 F.3d 218 (2d Cir. 2020) ................................................9

*S&S Mach. Co. v. Masinexportimport*,
    706 F.2d 411 (2d Cir. 1983) ................................................*passim*

*Samantar v. Yousuf*,
    560 U.S. 305 (2010)............................................................14

*San Filippo v. U.S. Trust Co. of N.Y., Inc.*,
    737 F.2d 246 (2d Cir. 1984) ................................................3

*Saudi Arabia v. Nelson*,
    507 U.S. 349 (1993)............................................................11

*The Schooner Exchange v. McFadden*,
    7 Cranch 116 (1812) ............................................................31, 33

*U.S. Fid. & Guaranty Co. v. Exec. Ins. Co.*,
    893 F.2d 517 (2d Cir. 1990) ................................................50

*Ungar v. Palestine Liberation Org.*,
    402 F.3d 274 (1st Cir. 2005)................................................22

*United States v. Brennan*,
    650 F.3d 65 (2d Cir. 2011) ................................................19

*United States v. Epskamp*,
    832 F.3d 154 (2d Cir. 2016) ................................................19

*United States v. Fazio*,
    770 F.3d 160 (2d Cir. 2014) ................................................19

*United States v. Mendoza*,
    464 U.S. 154 (1984)............................................................20

*Valley Eng'rs Inc. v. Elec. Eng'g Co.*,
158 F.3d 1051 (9th Cir. 1998) ............................................................37

*Verlinden B.V. v. Cent. Bank of Nigeria*,
461 U.S. 480 (1983)........................................................12, 20, 21, 27

*Wolf v. Banco Nacional de Mexico, S.A.*,
739 F.2d 1458 (9th Cir. 1984) ...................................................... 34, 35

*Yates v. United States*,
574 U.S. 528 (2015)............................................................................38

**Statutes**

18 U.S.C. § 2333 ...............................................................................2, 4

18 U.S.C. § 2338 ...................................................................................2

28 U.S.C. § 1291 ...................................................................................2

28 U.S.C. § 1331 ............................................................................2, 21

28 U.S.C. § 1441(d) ......................................................................20, 21

28 U.S.C. § 1603 ........................................................................*passim*

28 U.S.C. §§ 1604-05 .........................................................................27

**Other Authorities**

84 Fed. Reg. 46,782-1 at 46,782-83 (September 9, 2019)........................................4

Black's Law Dictionary (11th ed. 2019) .................................................43

Fed. R. Civ. P. 25(c).....................................................................*passim*

The Federalist No. 81 (Alexander Hamilton) (Gideon Ed. 2001) .............................1

H.R. Rep. 94-1487, 94th Cong., 2d Sess. (1976) .............................................21, 29

**INTRODUCTION**

One of the founding principles of the United States legal system is that "[i]t is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent. This is the general sense, and the general practice of mankind." The Federalist No. 81 at 422 (Alexander Hamilton) (Gideon Ed. 2001). In this case, the Central Bank of Lebanon (the "Central Bank") has exercised its police powers to liquidate Jammal Trust Bank ("JTB"), which Plaintiffs allege to have aided and abetted systematic acts of terrorism perpetrated by unidentified third-parties in Iraq. The Central Bank liquidated JTB following the United States' designation of JTB as a specially designated global terrorist, an act which furthered U.S. policies, and left the Central Bank as the real party in interest to Plaintiffs' suit.

The district court erred in allowing the suit to proceed as to JTB and the Central Bank's liquidator, Dr. Muhammad Baasiri. There is no dispute that the Central Bank is now the real party in interest to the claims against JTB, and the Central Bank has not waived its sovereign immunity. Rather than apply the Foreign Sovereign Immunities Act ("FSIA") in a straightforward manner and dismiss, the district court mechanistically applied the time-of-filing rule from *Dole Food Co. v. Patrickson*, 538 U.S. 468 (2003), elevating JTB's status as a private party at the time the suit was filed over the issues that actually matter: the FSIA's plain language, the fundamental purpose of the FSIA and the preexisting sovereign-immunity precedent that

1

the FSIA was intended to codify. The district court likewise erred in denying substitution, leaving JTB—an entity that has functionally ceased to exist—as the nominal defendant.

For these reasons and those discussed below, the Court should reverse the decision below.

## STATEMENT OF JURISDICTION

The district court had jurisdiction over this case under 28 U.S.C. § 1331 because the Plaintiffs' claims arise under 18 U.S.C. §§ 2333, 2338. Appellants timely filed a notice of appeal on August 19, 2021 from the district court's order entered on August 6, 2021.

This Court has appellate jurisdiction under 28 U.S.C. § 1291, the collateral order doctrine, and pendant appellate jurisdiction. The collateral order doctrine authorizes interlocutory appeal of the district court's order denying Appellants' motion to dismiss based on sovereign immunity. *See EM Ltd. v. Banco Central de la República Argentina*, 800 F.3d 78, 88 (2d Cir. 2015) ("We have consistently held that the threshold sovereign-immunity determination is immediately reviewable under the collateral-order doctrine."); *accord Petersen Energia Inversora S.A.U. v. Argentine Republic & YPF S.A.*, 895 F.3d 194, 203 (2d Cir. 2018).

This Court has pendent appellate jurisdiction to review the district court's denial of the motion to substitute. Under the doctrine of pendent appellate jurisdiction,

"once [the court] ha[s] taken jurisdiction over one issue in case, [it] may, in [its] discretion, consider otherwise nonappealable issues in the case as well, where there is sufficient overlap in the factors relevant to the appealable and nonappealable issues to warrant…exercising plenary authority over the appeal." *San Filippo v. U.S. Trust Co. of N.Y., Inc*., 737 F.2d 246, 255 (2d Cir. 1984). Here, the sovereign immunity and substitution motions overlap because both rulings hinge upon the district court's belief that *Dole Food* rendered Appellants' sovereign immunity motion "meritless." SPA-4.

## ISSUES PRESENTED

1.  Whether a foreign state that exercises its police powers to liquidate an alleged tortfeasor, making that foreign state the transferee of all interest in the tortfeasor and the real party in interest to the suit, is immune from a suit that was commenced before the date of the liquidation.

2.  Whether the district court erred in denying Appellants' motion to substitute given the district court's acknowledgment that, under Lebanese law, all interests in JTB's assets have been transferred to the Central Bank.

## STATEMENT OF THE CASE

JTB and Dr. Muhammad Baasiri ("Liquidator") appeal from a judgment by the United States District Court for the Eastern District of New York (Amon, J.), granting the Liquidator's motion to intervene as of right but denying his motion for

3

substitution and motion to dismiss. The district court's decision is not reported in the Federal Supplement but is available at 2021 WL 3706909 (E.D.N.Y. Aug. 6, 2021).

### A.    Underlying Suit

In 2019, Plaintiffs filed suit against numerous banks, including JTB, alleging that the banks had provided financial services to various entities and individuals connected with Hezbollah. The complaint alleges that these actions violated the Anti-Terrorism Act ("ATA") as amended by the Justice Against Sponsors of Terrorism Act. 18 U.S.C. § 2333(a) and (d).

### B.    JTB Liquidation

Lebanon has been in a political and economic crisis since 2019. *See* Declaration of Dr. Muhammad Baasiri ("Baasiri Decl.") JA-959 ¶ 16. Consequently, like many Lebanese banks, JTB's deposits declined precipitously, creating a severe liquidity problem. *Id.*, JA-959 ¶ 17. To make matters worse, on August 29, 2019, (about nine months after this suit was filed) the Treasury Department's Office of Foreign Assets Control ("OFAC") designated JTB as a Specially Designated Global Terrorist. 84 Fed. Reg. 46,782-1 at 46,782-83 (September 9, 2019). This designation caused the Central Bank to freeze JTB's deposits and other banks to terminate their relationships with JTB. *Id.* at ¶ 22. This, in turn, forced JTB into liquidation. *Id.* at ¶ 23.

4

Under Lebanon's liquidation law, all of JTB's assets are now owned by the Central Bank. Law 110, JA-972 art. 17 ¶ 2 (Central Bank "exceptionally ha[s] the right to own the assets" of entity undergoing liquidation); *accord* Central Bank Letter, JA-990–91 (JTB liquidation "allows the Central Bank of Lebanon to acquire the bank's assets and all its rights"). The Central Bank has sole authority to approve a liquidator, who acts as the Central Bank's agent and is statutorily obligated to conduct the liquidation procedure "under the supervision and control of the Central Bank of Lebanon." *Id*. In JTB's case, the Central Bank appointed Dr. Muhammad Baasiri as its agent. Baasiri Decl. JA-957 ¶¶ 1–2. The Liquidator is required by Lebanese law to act "under the supervision and control of the Central Bank of Lebanon." Law 110, JA-972 art. 17 ¶ 2; *see also* Baasiri Decl. JA-957, JA-960 ¶¶ 1–2, 26, 46; Central Bank Letter, JA-990.

Similar to the FDIC, Lebanon has a National Institute for the Guarantee of Deposit ("NIGD") that guarantees bank deposits. Upon liquidation, the NIGD is statutorily obligated to pay a guarantee amount to the Liquidator, "who will disburse it to the depositories benefitting from it." Law 110, JA-970–72, arts. 14, 17 ¶ 2; Baasiri Decl. JA-960 ¶¶ 29–30. Once depositors are paid, the Liquidator pays any remaining claims against the bank from the NGID—in other words, from the Lebanese government. Law 110, JA-972, art. 17 ¶ 8; Baasiri Decl. JA-960, JA-962–63 ¶¶ 32–33, 49–50, 55–56. In JTB's case, its assets fall short of its liabilities by nearly

5

162 billion Lebanese pounds. Baasiri Decl. JA-963 ¶ 55. In carrying out JTB's liquidation under Lebanese law, therefore, the sovereign of Lebanon will ultimately incur substantial costs due to the statutory guarantee it provides depositors.

JTB is now fully controlled by the Central Bank. The Bank is a public entity established by Lebanese law. Law of 1 Aug. 1963, Code of Money and Credit, tit. II (Leb.) JA-998–1017 ("Code of Money & Credit"). It is undisputed that the Central Bank is an organ of the State of Lebanon. *S&S Mach. Co. v. Masinexportimport*, 706 F.2d 411, 414 (2d Cir. 1983) (state-owned central banks are "the paradigm of a state agency or instrumentality" that "indisputably are included in the § 1603(b) definition of 'agency or instrumentality.'"); *EM Ltd. v. Banco Central de la Republica Argentina*, 800 F.3d 78, 82–83 (2d Cir. 2015) (Argentina's central bank is immune under the FSIA).

### C.    JTB's Motions to Substitute or Intervene and Dismiss

After entering liquidation, JTB and the Liquidator (together, "Appellants") moved for substitution or intervention by the Liquidator. *See* Mot. to Dismiss, ECF No. 182. Appellants also moved to dismiss based on sovereign immunity under the FSIA and the ATA. *Id*. at 26–34. On August 6, 2021, the district court issued an opinion and order granting the motion to intervene and denying the motions to substitute and dismiss.

6

**Motion to Intervene:** The district court granted the Liquidator's motion to intervene as of right. The Plaintiffs opposed the motion because, among other arguments, they claimed the motion was untimely. The court rejected the Plaintiffs' arguments, and determined that the motion was timely, due to a change in counsel and "communication challenges" due to "severe civil strife in Lebanon." SPA-10. "Even if" the motion may have been untimely in another case, the "unusual circumstances" required a finding of timeliness. *Id.*

The court granted the Liquidator's motion to intervene as of right for two reasons. First, because he is "charged with disposing of all of JTB's assets…Dr. Baasiri therefore has an interest in the outcome of this litigation." *Id.* at 8–9. Second, his interests may be inadequately represented by other parties in this litigation because "[h]is status *vis a vis* the government of Lebanon differs from that of JTB," including the Liquidator's statutory charge to "disburs[e] the assets with priority to JTB's depositors." *Id.* This intervention as of right recognized the Liquidator's unquestionable legal interest in JTB's assets.

**Motion for Substitution:** The district court denied the Appellants' motion to substitute the Liquidator for JTB as a defendant under Fed. R. Civ. P. 25(c). The Appellants argued that, because JTB's assets are entirely controlled by the Central Bank through the Liquidator, a total transfer of interest has occurred. The district court expressly refused to decide "whether the requisite transfer of interest" under

Rule 25(c) had occurred, ruling that the "primary consideration" was "whether substitution will expedite and simplify the action." SPA-4. The district court concluded that granting substitution would "complicate the proceedings and unfairly frustrate Plaintiffs' ability to obtain a judgment against the party they properly sued: JTB." *Id*. Although Appellants' argued that substitution would simplify the proceedings because "it is legally more direct and appropriate to permit the Liquidator to raise the sovereignty-based defenses," the district court rejected this argument because "those arguments for dismissal [i.e., sovereign immunity] are meritless whether they are asserted by JTB or Dr. Baasiri." *Id*.

**Motion to Dismiss:** The district court denied the Appellants' motion to dismiss based on standing and sovereign immunity. Appellants only appeal the district court's denial of the motion on sovereign immunity grounds.

The Central Bank has not waived its sovereign immunity, and no party has argued that any exception to the FSIA's sovereign immunity applied. The Appellants argued that, under 28 U.S.C. § 1603(b), they are "an entity which is an organ of a foreign state." *Id.* at 16. But the district court focused on another section of the statute focused on when the "majority of the shares" of a corporation are owned. The court reasoned that, pursuant to *Dole Food*, no immunity could attach because the Central Bank's liquidation of JTB began *after* the lawsuit was filed. *Id*. at 15–16.

8

On August 19, 2021, Appellants timely filed their notice of appeal regarding the district court's denial of their motion to dismiss[1] and the motion for substitution.

## STANDARD OF REVIEW

A district court's legal determination regarding subject-matter jurisdiction, including questions of sovereign immunity, is a question of law that is reviewable *de novo*. *Petersen Energia*, 895 F.3d at 203; *Rukoro v. Fed. Republic of Germany*, 976 F.3d 218, 223 (2d Cir. 2020). The district court's ruling on a Rule 25(c) motion for substitution is generally a matter of discretion, but its determination of "whether an entity is a transferee of interest" so as to warrant an exercise of such discretion is an antecedent question involving the "application of law to facts." *Organic Cow, LLC v. Ctr. for New England Dairy Compact Rsch.*, 335 F.3d 66, 71 (2d Cir. 2003) (cleaned up). Thus, "this court reviews the district court's factual findings for clear error, but the application of law is subject to *de novo* review." *Id.* (internal citations omitted).

---

[1] Because the ATA's immunity provisions are construed consistent with those of the FSIA, Appellants will generally refer to the FSIA, though the district court's denial of *both* statutory bases for sovereign immunity are being appealed. *See* Mot. to Dismiss 33–34, ECF No. 182; SPA-18.

# SUMMARY OF ARGUMENT

Lebanon is immune from suit in the United States. Yet the district court's order permits the Plaintiffs to bring suit against an organ of the State of Lebanon, contrary to the FSIA. And by denying the Liquidator's motion to substitute, the district court ignored the realities of Lebanese law and refused to recognize the State of Lebanon's complete legal interest in the assets of JTB.

Under the FSIA, federal courts lack subject-matter jurisdiction over claims against foreign states. And the FSIA includes agencies and instrumentalities of foreign states in that definition. In this case, it is undisputed that the Central Bank is indeed an agency or instrumentality of the State of Lebanon, and therefore the Central Bank itself is immune from jurisdiction in federal district courts. Because of JTB's liquidation and, consequently, the Central Bank's control of JTB, JTB is also an agency or instrumentality of the State of Lebanon.

Instead of acknowledging this undisputed fact and the necessary immunity due to the Central Bank, the district court erred in applying a time-of-filing rule it erroneously read into *Dole Food*. First, the rule, as expressed in *Dole Food*, was solely dicta, because it was an "alternative" to the Court's actual holding. Second, even if the *Dole Food* rule was controlling, it does not apply to federal-question cases in these circumstances. And third, applying *Dole Food* to the Central Bank creates an unnaturally narrow reading of the FSIA, undermining the FSIA's purposes

10

to protect foreign states from litigation in federal court. The Supreme Court has ordered lower courts to consider the FSIA's purposes when construing it. But the district court failed to even mention those purposes here. Because JTB's liquidation is a "sovereign undertaking," an exercise of Lebanon's police power, and places JTB under the complete control of the State of Lebanon and its agents, FSIA immunity necessarily protects JTB from suit in federal court.

The district court also erred in denying the Liquidator's motion to substitute because it expressly declined to decide the key question of whether JTB's interest had been transferred. Rule 25(c) requires courts to first determine whether an interest has been transferred, and then whether the substitution would be expeditious. But in this case, the district court only considered expedition, committing legal error by avoiding the primary inquiry required by the rules. And indeed, this avoidance made no sense when the district court granted the Liquidator's motion to intervene based on the very interest it refused to address in the substitution context. Because of these significant errors, this Court should reverse the district court's denial of the Appellants' motions to substitute and dismiss.

## ARGUMENT

### I.  The Central Bank Is the Real Party in Interest but Is Immune from Suit as an Instrumentality of the State of Lebanon

The FSIA "provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country." *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993)

11

(citation omitted). Unless one of the specific statutory exceptions applies, "a federal court lacks subject-matter jurisdiction over a claim against a foreign state." *Id.*; *see also Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 488–89 (1983) (the FSIA grants "foreign state[s]" immunity from "the jurisdiction of the courts of the United States and of the states," unless a limited set of exceptions applies). The Central Bank, an organ of Lebanon, is the real party in interest and there is no applicable exception here. Accordingly, this case also must be dismissed for want of subject matter jurisdiction under the FSIA.

The FSIA defines "foreign state" expansively, declaring that it "includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b)." 28 U.S.C. § 1603(a). Subsection (b) then defines "agency or instrumentality" as follows:

> (b) An "agency or instrumentality of a foreign state" means an entity—
> ....
>> (2) which is an organ of a foreign state or political subdivision thereof, *or* a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof.

*Id.* at § 1603(b)(2) (emphasis added).

There has been no dispute that the Central Bank is an agency or instrumentality of the Lebanese state entitled to sovereign immunity under the FSIA. The Central Bank was created by a public law of Lebanon. *See* Code of Money & Credit JA-998–1107. Its capital is appropriated by the Lebanese legislature. *Id*. JA-998 tit. II,

art. 15. Its governors are appointed by Lebanon's Council of Ministers. *Id.* JA-999

tit. II, art. 18. It is supervised by Lebanon's Ministry of Finance. *Id.* JA-1003 tit. II,

art. 41. It exercises the "exclusive" sovereign function of issuing Lebanese currency,

*id.* JA-1004 tit. II, art. 47, and its employees and officers are prohibited from under-

taking "commercial operations of their own." *Id.* JA-1018 tit. II, art. 127. *See also*

*Filler v. Hanvit*, 378 F.3d 213, 217 (2d Cir. 2004) (recognizing these as factors to

identify instrumentality of a foreign state). The Central Bank, as a state-owned bank,

is "the paradigm of a state agency or instrumentality," that is "indisputably…in-

cluded in the § 1603(b) definition of 'agency or instrumentality." *Masinexpor-*

*timport*, 706 F.2d at 414.

Accordingly, under binding Second Circuit precedent, the Central Bank is im-

mune from lawsuits in American courts under the FSIA. *See EM Ltd.*, 800 F.3d at

82–83 (Argentina's central bank is immune under the FSIA); *NML Capital, Ltd. v.*

*Banco Cent. de la Republica Argentina*, 652 F.3d 172, 188 (2d Cir. 2011) ("[F]or-

eign central banks are not treated as generic 'agencies or instrumentalities' of a for-

eign state under the FSIA; they are given 'special protections' benefitting the partic-

ular sovereign interest in preventing the attachment and execution of central bank

property."); *Finanz AG Zurich v. Banco Economico S.A.*, 192 F.3d 240, 245–46 (2d

Cir. 1999) (liquidators of bank undergoing liquidation by Brazilian Central Bank

13

were real parties in interest and thus an "agency or instrumentality" of Brazil under the FSIA).

In *Samantar v. Yousuf*, 560 U.S. 305 (2010), the Supreme Court recognized that, in assessing claims of sovereign immunity, courts should be cognizant of the real party in interest. *See id.* at 325 (suits against individual in official capacity "should be treated as actions against the foreign state itself, as the state is the real party in interest"). And there is no dispute that the Central Bank is the real party in interest. The district court held as much, SPA-8, and an unbroken line of decisions compels that result. *See Banco Economico*, 192 F.3d at 245 (affirming the removal of a breach of contract suit against a private Brazilian bank because the bank's liquidator, who was appointed by the Central Bank of Brazil to unwind the bank's affairs, was "the real party in interest and [was] an 'agency or instrumentality of a foreign state' as defined in 28 U.S.C. § 1603(b)"); *FDIC v. Wrapwell Corp.*, 922 F. Supp. 913, 917 (S.D.N.Y. 1996) (concluding that FDIC's takeover of a bank rendered FDIC the real party in interest in case involving the bank); *Fabe v. Aneco Reinsurance Underwriting Ltd.*, 784 F. Supp. 448, 450 (S.D. Ohio 1991) ("[O]nce [the corporation] was ordered into liquidation, the real party in interest in this action became, not the corporation, but the liquidators of the corporation appointed by the Supreme Court of Bermuda."); *Allied Fid. Ins. Co. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi.*, 677 F. Supp. 562, 563 (N.D. Ill. 1988) ("[B]ecause Allied is now in

14

liquidation, Allied's liquidator, the Indiana Commissioner of Insurance…is the real party in interest").

Plaintiffs have not argued that any exception to the FSIA, such as the FSIA's "commercial activity" exception, applies in this case. And for good reason. While JTB's *banking* activities were commercial in nature, the *liquidation* of JTB, pursuant to Lebanese law, is a quintessential exercise of Lebanon's police power and thus, a sovereign process. Accordingly, a straightforward application of basic FSIA principles defeats jurisdiction over Plaintiffs' claims against JTB.

### A. The District Court's Application of the Time-of-Filing Rule Is Erroneous

Rather than apply the FSIA according to it terms, the district court held that Appellants are not entitled to sovereign immunity under the time-of-filing principle applied in *Dole Food*, which in certain cases directs courts to evaluate whether the FSIA shields the defendant from suit by virtue of its status at the time a lawsuit is filed. But the district court was wrong on all accounts, and *Dole Food* is not dispositive here for three reasons. First, *Dole Food* does not control this dispute because its time-of-filing rule is dicta; second, *Dole Food* is inapposite because it does not apply to non-removed federal-question cases; and third, applying the time-of-filing rule would undermine the FSIA's purposes.

### 1. *Dole Food*'s Time-of-Filing Statements Are Dicta

The time-of-filing discussion in *Dole Food* is dicta and does not bind this Court. *Dole Food* was a tort action filed in Hawaii state court by farm workers, who alleged that the defendant-corporations exposed them to harmful pesticides. *Dole Food*, 538 U.S. at 471. The defendants impleaded two Israeli companies, the "Dead Sea Companies," so the case was removed to federal court pursuant to federal law allowing removal of any civil action brought "against a foreign state" as defined by the FSIA. *Id*. at 472.

At the time the alleged torts were committed, Israel owned a majority of the shares of a *parent* corporation of the Dead Sea Companies. *Patrickson v. Dole Food Co.*, 251 F.3d 795, 805 (9th Cir. 2001). However, by the time the Dead Sea Companies were impleaded into the lawsuit—and claims filed against them—"the government [of Israel] *no longer owned*, directly or otherwise, a majority of the Dead Sea Companies." *Id*. (emphasis added). Nonetheless, based on Israel's ownership of the parent corporation at the time the torts were committed, the Dead Sea Companies argued that they were entitled to FSIA immunity on two alternative grounds: (1) because the majority-shares clause did not apply to an indirect corporate parent; and

16

(2) as an "organ" of Israel.[2] *Id.* at 805–08. Both arguments were rejected by the Ninth Circuit. *Id*.

The Dead Sea Companies then successfully petitioned the Supreme Court for certiorari, seeking review *only* of the Ninth Circuit's majority-shares ruling.[3] *See Dole Food Co. v. Patrickson*, Pet. for a Writ of Certiorari, No. 01-593, 2001 WL 34133758; *see also Dole Food Co. v. Patrickson*, 536 U.S. 956 (2002) (granting certiorari). The Supreme Court granted certiorari on only this issue, not the separate and distinct issue regarding whether the Dead Sea Companies qualified for agency/instrumentality status under the *organ clause*. *Id.*

The Supreme Court affirmed, holding that the Dead Sea Companies were not instrumentalities of Israel under the majority-shares clause because "these companies were, at various times, separated from the State of Israel by one or more intermediate corporate tiers." *Dole Food*, 538 U.S. at 473. Although "Israel owned a majority of shares, at various times, in companies one or more corporate tiers above the Dead Sea Companies…at no time did Israel own a majority of shares in the Dead Sea Companies. Those companies were *subsidiaries* of other corporations." *Id*. at 475 (emphasis added). Thus, "[t]he Dead Sea Companies, as indirect subsidiaries of

---

[2] As discussed below, Section 1603(b)(2)'s immunity for agencies and instrumentalities of a foreign state allows immunity to be invoked under either a "majority-shares" definition or an "organ" definition.

[3] As elaborated in Section I.A.3, it is thus clear that *Dole Food* involved only the majority-shares clause, not the organ clause, which is at issue here.

the State of Israel, were not instrumentalities of Israel under the FSIA *at any time*." *Id*. at 474 (emphasis added). The Court's holding was both clear and narrow: "[w]e hold that only direct ownership of a majority of shares by the foreign state satisfies the statutory [majority-shares] requirement." *Id*.; *see also id*. at 477 ("A corporation is an instrumentality of a foreign state under the FSIA only if the foreign state *itself* owns a majority of the corporation's shares.") (emphasis added).

After ruling that the Dead Sea Companies could not qualify under the majority-shares clause because they were subsidiaries, the *Dole Food* Court "turn[ed] to [a] second question" which it said "provides an alternative reason for affirming the Court of Appeals." *Id*. at 478. That "second question" was whether, "to be entitled to removal" as an agency/instrumentality under the majority-shares clause, such majority ownership should be ascertained at the time of the tort (as the Dead Sea Companies argued), or at the time the complaint was filed (as plaintiffs argued). *Id*. The Court concluded that the latter option—time-of-filing—was the appropriate point to ascertain agency/instrumentality status under the majority-shares clause. *Id*.

While the Supreme Court made an offhand reference to its decision that that instrumentality status is determined at the time of the filing of the complaint as a holding, *id*. at 480, its discussion of this "second" and "alternative" rationale is dicta because it was unnecessary to the decision. The Court had *already determined* that the Dead Sea Companies were not entitled to FSIA immunity under the majority-

18

shares clause as *subsidiaries* of another, parent corporation that had been majority-owned by Israel. *Id.* at 473–77. *See also United States v. Fazio*, 770 F.3d 160, 167 (2d Cir. 2014) (language in prior opinion "was dicta and unnecessary to our decision"); *Redhead v. Conf. of Seventh-Day Adventists*, 360 Fed. App'x 232, 234 n.1 (2d Cir. 2010) (statements in opinion "are dicta because they were unnecessary to the decision"); *Fullerton Ave. Land Dev. Ltd. v. Cianciulli*, 48 Fed. App'x 813, 814–15 (2d Cir. 2002) (dicta is "[n]on-binding language unnecessary to the disposition of the case"); *United States v. Brennan*, 650 F.3d 65, 144 (2d Cir. 2011) (Raggi, J., concurring in the judgment) ("Holdings consist of determinations necessary or pivotal to a decision; judicial statements that are unnecessary to the decision in the case are mere dicta.").

This Court has rejected the view that alternative bases for a decision are binding. *See United States v. Epskamp*, 832 F.3d 154, 169 n.15 (2d Cir. 2016) (alternative holding is *obiter dicta*); *Klein ex rel. Qlik Tech., Inc. v. Qlik Tech., Inc.*, 906 F.3d 215, 227 n.7 (2d Cir. 2018) (prior decision's conclusion that subject-matter jurisdiction was lacking was dispositive of outcome and additional statements about rule of civil procedure was thus non-binding dicta, not "alternative holding" as asserted by dissent); *Jimenez v. Walker*, 458 F.3d 130, 142 (2d Cir. 2006) ("[D]icta '[are] not and cannot be binding. Holdings—what is *necessary to a decision*—are binding. Dicta—no matter how strong or how characterized—are not.'") (quoting *United*

*States v. Garcia*, 413 F.3d 201, 232 n.2 (2d Cir. 2003)) (Calabresi, J. concurring) (emphasis added)).[4]

### 2. The Time-of-Filing Rule Does Not Apply to Federal-Question Cases that Have Not Been Removed

The *Dole Food* Court noted that a time-of-filing rule was "well-settled" in the context of *diversity jurisdiction*. *Dole Food*, 538 U.S. at 478 (citing cases). *Dole Food* was a state tort case that was removed to federal court under a special removal statute, 28 U.S.C. § 1441(d), allowing for removal of any case brought against a foreign state as defined by the FSIA. While this special removal statute renders the removed case a "federal question" within the *broader meaning* of Article III, *Verlinden*, 461 U.S. at 497, it is nonetheless a state-law case that could *not have been brought* initially in federal district court under the general diversity statute, 28 U.S.C.

---

[4] The Supreme Court's longstanding rule regarding an exception where alternative holdings may be binding requires that both "alternative" rationales be "necessary to [the] judgment." *Massachusetts v. United States*, 333 U.S. 611, 623 (1948) (alternative "holdings" exist *only* when "[n]either claim was more or less *essential to the decision* than the other, [and] indeed decision on both was *necessary to a judgment* favorable" to the party. *Id.* at 622 (emphasis added)). This limitation on "alternative" holdings is logical because it is consistent with the doctrine of collateral estoppel, which extends preclusive effect only to issues that are "necessary to the judgment." *See United States v. Mendoza*, 464 U.S. 154, 158 (1984); *Postlewaite v. McGraw-Hill*, 333 F.3d 42, 48 (2d Cir. 2003). Extending precedential force to an issue that was *not* "necessary to the judgment" would thus represent a significant departure from settled doctrine. *See Fullerton Ave.*, 48 Fed. App'x at 814–15 ("Non-binding language unnecessary to the disposition of the case will not be given preclusive effect" and is dicta).

20

§ 1331, absent the special removal statute.[5] The *Dole Food* Court thus reasoned, "[i]t would be anomalous to read § 1441(d)'s words 'foreign state as defined in section 1603(a) [of FSIA],' differently" than in the *diversity* statute, as the case could *not have been originally brought* in federal court under *diversity* jurisdiction because of the time-of-filing rule. *Id*. In other words, because *Dole Food* involved state-law claims that could not have been originally filed in federal court under diversity jurisdiction (because of the time-of-filing rule), the subsequent *removal* of the case to federal court should not deviate from the usual time-of-filing rule imposed for diversity cases.

But the time-of-filing rule is generally disfavored in non-removed federal-question cases, where "courts have been careful not to import the time-of-filing rule indiscriminately." *Connectu LLC v. Zuckerberg*, 522 F.3d 82, 92 (1st Cir. 2008); *United States ex rel. Gadbois v. PharMerica Corp.*, 809 F.3d 1, 5 (1st Cir. 2015).

---

[5] The well-pleaded complaint rule is an interpretation of the general diversity *statute*, 28 U.S.C. § 1331, and thus within control of Congress. *See Verlinden*, 461 U.S. at 494; *see also Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149 (1908). The special removal statute employed by the defendants in *Dole Food*, 28 U.S.C. § 1441(d), is thus a modification of the well-pleaded complaint rule and itself a constitutional statute "[b]ecause the judicial power of the United States [under Article III, section 2 of the Constitution] specifically encompasses actions 'between a State, or the Citizens thereof, and foreign States." H.R. Rep. 94-1487, 94th Cong., 2d Sess., at 33 (1976). Allowing for removal of such state-law cases ensures that the purposes of the FSIA are robustly protected. *See id*. at 32. ("In view of the potential sensitivity of actions against foreign states and the importance of developing a uniform body of law in this area, it is important to give foreign states clear authority to remove to a Federal forum actions brought against them in the State courts.").

Indeed, the "time-of-filing rule 'has been applied only rarely to federal question cases.'" *Iowa Tribe of Kan. & Neb. v. Salazar*, 607 F.3d 1225, 1233 (10th Cir. 2010) (quoting *Kabakjian v. United States*, 267 F.3d 208, 212 (3d Cir. 2001)); *New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc*., 101 F.3d 1492, 1503 (3d Cir. 1996). Indeed, in *Grupo-Dataflux v. Atlas Glob. Grp., L.P*., 541 U.S. 567 (2004), the Supreme Court held that the time-of-filing rule "measures all challenges to subject-matter jurisdiction *premised upon diversity of citizenship* against the state of facts that existed at the time of filing…." *Id*. at 571 (emphasis added).[6]

Lower courts uniformly have concluded that "the *Grupo Dataflux* Court explicitly restricted the time-of-filing rule to *diversity* cases" and the "letter and spirit

---

[6] In a footnote, the district court oddly cited *Grupo Dataflux* but failed to even acknowledge that the "longstanding jurisdictional time-of-filing rule" that *Grupo* recognized was unequivocally one that applied in *diversity* cases, not federal-question cases. SPA-17, n.4. It also cited two post-*Dole Food* district court decisions, both of which are easily distinguishable. The first, *In re Air Cargo Shipping Servs. Antitrust Litig*., 2008 WL 5958061 (E.D.N.Y. Sept. 26, 2008), unremarkably applied a time-of-filing rule to the *majority-shares* clause. *Id*. at 38-39. The second, *Biton v. Palestinian Interim Self-Gov't Auth.*, 510 F. Supp. 2d 144 (D.D.C. 2007), addressed *collateral estoppel*, concluding that the defendants "remain collaterally estopped from asserting a defense of sovereign immunity by [] prior decisions" of the First Circuit and Southern District of New York, both of which held that the Palestinian Liberation Organization ("PLO") and the Palestinian Authority ("PA") were not "foreign states" entitled to sovereign immunity. *Ungar v. Palestine Liberation Org*., 402 F.3d 274, 292 (1st Cir. 2005); *Knox v. Palestine Liberation Org.*, 306 F. Supp. 2d 424, 447–48 (S.D.N.Y. 2004). Here, by contrast, Lebanon is undoubtedly a foreign state and its Central Bank is undoubtedly an organ thereof. *Masinexportimport*, 706 F.2d at 414; *EM Ltd.*, 800 F.3d at 82–83.

22

of th[at] rule apply most obviously in diversity cases, where the rule originated and where heightened concerns about forum shopping and strategic behavior offer special justifications for it." *Connectu*, 522 F.3d at 92–93 (1st Cir. 2008) (internal citation omitted) (emphasis added); *New Rock Asset*, 101 F.3d at 1503. Thus, for diversity jurisdiction, the parties' citizenship needs to be fixed by reference to a particular moment in time (e.g., time-of-filing) because otherwise, in a mobile society, diversity jurisdiction could be easily manipulated "by the simple expedient of moving from place to place as a case progresses…." *Connectu*, 522 F.3d at 93.

But such manipulation cannot occur with federal-question cases, in which "jurisdiction derives from the existence of particular causes of action and thus, is not subject to the same vagaries." *Id.* at 94. For federal-question cases, therefore, the "risks of forum-shopping and jurisdictional manipulation are relatively insignificant." *Id*. Thus, while "a uniform, easily administered test [i.e., time-of-filing] is a practical necessity in diversity cases, no comparable need exists in federal question cases." *Id*. Accordingly, "[t]he only consistent use of the time-of-filing rule in *federal question* cases occurs in the area of removal—an area in which the danger of manipulation is high." *Id.* at 92 n.8, 93 (emphasis added); *accord Iowa Tribe*, 607 F.3d at 1233.

When sovereign immunity is claimed in a non-removed federal-question case (as here), the Supreme Court and lower federal courts have uniformly concluded that

time-of-filing is not dispositive of sovereign-immunity questions. In a long string of cases beginning with *Beers v. Arkansas*, 61 U.S. 527 (1857), the Supreme Court and the Courts of Appeals have unanimously refused to apply the time-of-filing rule because it would run contrary to the fundamental tenants of sovereign immunity. In *Beers*, the plaintiff sued in Arkansas state court seeking to collect interest due on state bonds. *Id*. at 528. *After suit was filed*, the Arkansas legislature passed a law requiring bond claimants, like plaintiff, to present their bonds to the state court or face dismissal. *Id*. When the plaintiff failed to produce the bonds, his state-law suit was dismissed. *Id*. at 529.

Plaintiff then filed a writ of error with the U.S. Supreme Court, contending that the Arkansas law violated the Constitution's Contracts Clause, thus invoking the Supreme Court's broad Article III arising under federal-question jurisdiction. *Id*. The Supreme Court concluded that dismissal of plaintiff's suit was appropriate because "[i]t is an established principle of jurisprudence in all civilized nations that the sovereign cannot be sued in its own courts, or in any other, without its consent and permission….And as this permission is altogether voluntary on the part of the sovereignty, it follows that *it…may withdraw its consent wherever it may suppose that justice to the public requires it*." *Id*. (emphasis added).

As the Tenth Circuit noted in 2010 (post-*Dole Food*) *Beers* "aimed…squarely at *post-filing* withdrawals of consent to be sued…." *Iowa Tribe*, 607 F.3d at 1234

24

(emphasis added). The sovereign in *Beers* (Arkansas) had undertaken a *post-filing* act—passage of a law—that revoked its earlier consent to be sued. And while such post-filing act "operated hardly or unjustly upon the parties whose suits were then pending," the Court expressly deemed such effect irrelevant. *Beers*, 61 U.S. at 530 ("[N]or can this court inquire whether the law operated hardly or unjustly upon the parties whose suits were then pending."). What mattered was whether the sovereign "*consented* to waive the privilege of sovereignty," not whether such consent may have been modified or withdrawn *post-filing*. *Id.* at 529.

*Beers* is still good law. Indeed, in *Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666 (1999)—a case also premised on a federal question, *id*. at 668–69, the Supreme Court reaffirmed *Beers*, citing it for the proposition that a "State may…alter the conditions of its waiver [of sovereign immunity] and apply those changes to a *pending suit*." *Id*. at 676 (emphasis added). *See also Iowa Tribe*, 607 F.3d at 1235.

Under *Beers* and *Florida Prepaid*, a state's entitlement to sovereign immunity is not dependent on facts existing at the time-of-filing. A sovereign's post-filing acts can (and should) be considered because the relevant question is whether the sovereign has *consented* to the exercise of jurisdiction over it. That a sovereign immunity defense, if successful, will "frustrate Plaintiffs' ability to obtain a judgment against the party they property sued[,]" as the district court here reasoned, SPA-4, is utterly

25

irrelevant. *See Beers*, 61 U.S. at 530 (court cannot "inquire whether the law operated hardly or unjustly upon the parties whose suits were then pending"); *accord Iowa Tribe*, 607 F.3d at 1234.

In its post-*Dole Food* decision in *Iowa Tribe*, 607 F.3d at 1228, the Tenth Circuit affirmed dismissal of a suit following a post-judgment motion because the property that was subject to suit was taken into trust on behalf of a Native American tribe by the U.S. government *after filing*, expressly declining "to adopt plaintiffs' position that sovereign immunity determinations should be made by reference to the facts in existence *at the time a complaint is filed*." *Id.* at 1230 (emphasis added).

Likewise, in *Maysonet-Robles v. Cabrero*, 323 F.3d 43 (1st Cir. 2003), the First Circuit rejected a time-of-filing rule in a class action suit alleging federal civil rights violations where the Puerto Rico legislature enacted a post-suit law transferring the defendant's assets to an organ of the Puerto Rico government, making the government the real party in interest. *Id*. In the First Circuit's view, because the original defendant's assets had been transferred *post-filing* to an organ of Puerto Rico—dismissal based on sovereign immunity was required "regardless of [the Department's] late arrival at the courthouse as a successor in interest…." *Id*. at 50. *Maysonet-Robles* was decided one month before *Dole Food* but has been reaffirmed post-*Dole Food*. *See Connectu*, 522 F.3d at 92 (time-of-filing rule inapplicable to federal-question cases).

As the cases discussed show, the type of policy concerns that justify embracing a time-of-filing rule for diversity cases are not present in federal-question cases, and indeed, are particularly inappropriate in cases involving an assertion of sovereign immunity by an organ of a foreign state.

### 3.    Applying the Time-of-Filing Rule To the Central Bank Violates the FSIA's Purposes

The type of policy concerns that counsel for the application of the time-of-filing rule in diversity cases but not federal-question cases are doubly present where a party is entitled to sovereign immunity. The Supreme Court has directed courts to consider the FSIA's purposes when construing it. *See Republic of Austria v. Altmann*, 541 U.S. 677 (2004).

The FSIA's sovereign immunity is a codification of preexisting principles of customary international law, embracing theory whereby immunity extends to "acts of a foreign state which are sovereign or governmental in nature, as opposed to acts which are either commercial in nature or those which private persons normally perform." H.R. Rep. No. 94-1487, at 14; *accord Fed. Republic of Germany v. Philipp*, 141 S. Ct. 703, 713 (2021). If no exception applies and there is no waiver, the foreign state is immune from the jurisdiction of federal and state courts. *Verlinden*, 461 U.S. at 488. *See also* 28 U.S.C. §§ 1604-05.

FSIA immunity thus reflects the principle that sovereigns are entitled to immunity from suit as a gesture of comity and respect for their independence and dignity. *See Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 137 S. Ct. 1312, 1319 (2017). As the Supreme Court recently reiterated, "[w]e interpret the FSIA as we do other statutes affecting international relations: to avoid, where possible, producing friction in our relations with other nations and leading some to reciprocate by granting their courts permission to embroil the United States in expensive and difficult litigation." *Philipp*, 141 S. Ct. at 714 (cleaned up).

Therefore, application of the time-of-filing rule to a situation where an organ of the state becomes party to an extant suit due to its exercise of police powers runs contrary to the purposes of the FSIA and the existing law of restrictive sovereign immunity codified by the Act. *Dole Food* appropriately considered whether imposing a time-of-filing rule in the majority-shares clause would be consistent with these purposes, concluding that Israel's sovereign dignity would not be offended because "[a]ny relationship recognized under the FSIA between the Dead Sea Companies and Israel had been severed *before suit was commenced*." *Dole Food*, 538 U.S. at 480 (emphasis added). Thus, because Israel severed its majority-shares ownership before the lawsuit was ever filed, allowing suit to proceed would not offend the dignity of Israel or undermine the "gesture of comity" that FSIA immunity represents. *Id*. at 479.

28

Here, by contrast, extending the time-of-filing rule to the FSIA's *organ clause* would undermine the Act's purpose by disrespecting Lebanon's sovereign, statutory process for bank liquidation and embroiling it in expensive and protracted litigation. Unlike in *Dole Food*, the foreign state here (Lebanon) has not "severed" its ties to the defendant-corporation "*before* suit was commenced." *Dole Food*, 538 U.S. at 480. Indeed, it is the opposite: Lebanon, through its Central Bank and Liquidator-agent, have assumed control of the corporate-defendant (JTB) *after* Plaintiffs' lawsuit was filed.

The salient question, therefore, is whether the Central Bank "is an organ of a foreign state" within the meaning of the FSIA's organ clause, 28 U.S.C. § 1603(b)(2). It undoubtedly is. Central Banks are organs of foreign states. *Masinexportimport*, 706 F.2d at 414; *EM Ltd.*, 800 F.3d at 82–83. Congress clearly expressed its desire that foreign states' central banks be given sovereign immunity as agents/instrumentalities thereof. *See* H.R. Rep. No. 1487, 94th Cong., 2d Sess. 15–16 ("[E]ntities which meet the definition of an 'agency or instrumentality of a foreign state' could assume a variety of forms, including…a central bank").

The Liquidator-agent has interjected himself into this litigation for the sole purpose of raising sovereign immunity on behalf of the Central Bank. The Liquidator, acting in his official capacity, is supervised and controlled by the Central Bank. *See* Law 110, JA-972 art. 17 ¶ 2; Baasiri Decl. JA 957, JA-960, JA-962 ¶¶ 1–2, 26,

29

46. It is axiomatic that when an individual acts in an official capacity under color of state law, as does the Liquidator here, he acts as an *agent of the state*. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity."); *accord Quinones v. City of Binghamton*, 997 F.3d 461, 466 n.2 (2d Cir. 2021); *Mathie v. Fries*, 121 F.3d 808, 818 (2d Cir. 1997).

Allowing this lawsuit to proceed—seeking recovery against JTB's assets, which have been transferred to the Central Bank by operation of Law 110—would offend the dignity of Lebanon. JTB does not exist anymore as an ongoing banking concern. Law 110, JA-972 art. 17 ¶¶ 5, 7; Baasiri Decl. JA-960, JA-962 ¶¶ 28, 47. The Central Bank is, and will always be, in control of JTB's assets until they are fully liquidated. Law 110, JA-972 art. 17 ¶ 2; Baasiri Decl. JA-959, JA-961 ¶¶ 25, 45. Any suit which seeks recovery against JTB's assets, as the district court acknowledged, is a suit against assets owned and controlled by the Central Bank and its Liquidator-agent. *See* SPA-8 ("[B]y operation of Lebanese law, Dr. Baasiri is charged with disposing of all of JTB's assets. Plaintiffs seek to recover from those assets in this lawsuit."). Allowing a lawsuit to proceed against assets *unquestionably controlled by an organ of a foreign sovereign* is a patent insult to the dignity of that foreign state.

30

Indeed, consider the potential implications of a contrary rule. Imagine a lawsuit is filed against the private owner of a vessel. After the lawsuit is filed, a foreign sovereign seizes the vessel, converting it into military service. If a time-of-filing rule applies, the sovereign will not be entitled to immunity. Maintenance of the suit, however, will clearly insult the dignity of the foreign state, interfere with its sovereign functions, and create diplomatic hostility. *Cf. The Schooner Exchange v. McFadden*, 7 Cranch 116 (1812) (Napoleon's seizure of private vessel confers sovereign immunity from suit seeking to attach and restore it to its prior owners).

Here, allowing this suit to proceed would be particularly offensive to Lebanon because JTB's assets are insufficient to pay the guarantee to which depositors are statutorily entitled. Baasiri Decl. JA-962–63 ¶¶ 49–50, 55–56. Thus, the Central Bank—which is funded by tax dollars provided by the Lebanese public—will subsidize JTB's liquidation. This lawsuit, involving many millions of dollars of potential liability, has (and will continue to) interrupt Lebanon's orderly, statutory liquidation process, potentially upend Lebanon's prioritization of depositors' claims, and cost the Central Bank (and thus the Lebanese public) a good deal of money to litigate.

Consistent with the need to maintain international comity, the Supreme Court and federal courts have consistently considered status as an "organ" of a foreign sovereign after the time of filing. For example, In *Oliver American Trading Co., Inc.*

31

*v. Government of the United States of Mexico*, 5 F.2d 659 (2d Cir. 1924), this Court addressed sovereign immunity in a breach of contract action brought by a Delaware corporation against both the United States of Mexico and an organ thereof, the National Railways of Mexico. *Id*. at 661. The defendants removed the case to federal court (based on diversity of citizenship) and asserted sovereign immunity. *Id*. at 660–61. At the time the lawsuit was filed, the United States did *not recognize* the government of Mexico; recognition occurred only post-filing. *Id*. at 661. Plaintiff thus asserted that "jurisdiction of the court fully attached" at the time-of-filing, and that the court's "jurisdiction was not divested by the [post-filing] occurrence of that event [U.S. recognition]." *Id*. at 661. The district court disagreed, accepting Mexico's claim of sovereign immunity. *Id*. at 660.

This Court affirmed, concluding that it was "without jurisdiction" because "we do not agree that [plaintiff] had any such right [of access to the courts] after the government of the United States recognized the government of Mexico…." *Id*. at 666. That U.S. recognition of the Mexican government occurred *after* suit was filed was of no consequence. All that mattered was that plaintiff's suit sought to reach property that Mexico and its organ, the Mexican National Railway, "h[eld] for public purposes" and "being such, it is entitled to the same immunity as a sovereign, or an

32

ambassador, or a ship of war, and for the same reason. The exercise of such jurisdiction by the courts of this country is inconsistent with the independence and sovereignty of Mexico." *Id*. at 667.

Tellingly, *Oliver Trading* began by observing that an essential attribute of sovereignty is that the sovereign cannot be sued without its consent. *Id*. at 661–62. It relied upon *Beers* and other cases in which immunity was claimed by a sovereign or organ thereof, all of which concluded that the sovereign's consent—not the time-of-filing—is the only relevant issue. *Id*. at 662. *See also R.R. Co. v. Alabama*, 101 U.S. 832 (1879) (sovereign's post-filing repeal of consent-to-be-sued statute deprived court of jurisdiction due to sovereign immunity).[7]

---

[7] *Oliver Trading* also noted the salience of *other* immunity doctrines, such as the act-of-state doctrine, head-of-state immunity, and diplomatic/consular immunity, *Oliver Trading*, 5 F.2d at 662–65, all of which share the same purpose as FSIA immunity. *See, e.g., First Nat'l City Bank v. Banco Nacional de Cuba*, 406 U.S. 759, 765 (1972) ("The act of state doctrine, like the doctrine of immunity for foreign sovereigns, has its roots…in the notion of comity between independent sovereigns."); *The Schooner Exchange*, 7 Cranch at 137–39 (diplomatic immunity protects dignity of sovereign); Restatement (Third) of Foreign Relations, ch. 6, intro. Note (Am. L. Inst. 1987) ("[D]iplomatic privileges and immunities are seen as functional—necessary for the orderly and effective conduct of friendly relations between states."). As the *Oliver Trading* court realized, these other immunity doctrines consider time-of-filing to be irrelevant. In such cases, what matters is whether the sovereign has waived its sovereign immunity, or whether an exception to immunity applies. *See also Abdulaziz v. Metro. Dade Cnty.*, 741 F.2d 1328 (11th Cir. 1984) (holding that a Saudi national was entitled to diplomatic immunity from a counterclaim, even though he had not been granted diplomatic status at either the time-of-filing of his original claim or the time-of-filing of the counterclaims against him); *Doe v. Roman Catholic Diocese of*

33

The Ninth and Fifth Circuits have reached similar results. In *Wolf v. Banco Nacional de Mexico, S.A.*, 739 F.2d 1458 (9th Cir. 1984), the plaintiff sued Banco Nacional de Mexico (Banamex), a bank that—like JTB—was private at the time-of-filing, alleging violation of federal securities law. *Id.* at 1460 ("That statute [the FSIA] would not have protected Banamex, as a publicly held bank, in the early stages of this suit"). After the lawsuit was filed, however, the government of Mexico nationalized Banamex. *Id.* Several months after the bank was nationalized, Banamex raised FSIA immunity as an organ of Mexico, filing a motion to stay enforcement of a judgment that had already been rendered against it. *Id.* The Fifth Circuit concluded that Mexico's *post-filing* nationalization of Banamex rendered it an agency/instrumentality of Mexico under the FSIA, though no immunity was warranted due to the commercial activity exception. *Id.*

Similarly, in *Callejo v. Bancomer, S.A.*, 764 F.2d 1101 (5th Cir. 1985), the Fifth Circuit concluded that Mexico's post-filing nationalization of another bank, Bancomer, rendered it "an agency or instrumentality" of Mexico within the meaning of the FSIA. *Id.* at 1106. Because of Mexico's post-filing nationalization of Ban-

---

*Galveston-Houston*, 408 F. Supp. 2d 272 (S.D. Tex. 2005) (holding that Pope Benedict XVI was entitled to head-of-state immunity, even though he was not yet the Vatican's head-of-state at the time plaintiffs filed suit against him).

comer, it "would ordinarily be entitled to immunity from the jurisdiction of Ameri-
can courts under the FSIA." *Id*. As in *Wolf*, however, the court concluded that the
commercial activity exception applied but the act of state doctrine nonetheless pro-
hibited exercising jurisdiction over Bancomer. *Id*. at 1125–26. Under both *Wolf* and
*Callejo*, therefore, a foreign sovereign's post-filing act of assuming control over the
assets of a bank rendered that bank an organ of the sovereign entitled to immunity
unless an exception applies.

This Court's decision in *Abrams v. Société Nationale des Chemins de Fer
Francais*, 389 F.3d 61 (2d Cir. 2004) (per curiam), is not to the contrary. There,
plaintiffs were Holocaust victims who sued an organ of France, the French national
railroad (SNCF), alleging that by transporting individuals to Nazi camps, it commit-
ted federal offenses. *Id.* at 62. The SNCF was a public entity, like the Central Bank,
which was "charged with performing a public service" and it "ha[d] no shares and
no shareholders…." *Abrams v. Société Nationale des Chemins de fer Francais*, 175
F. Supp. 2d 423, 425 (E.D.N.Y. 2001). Thus, *Abrams*—like this case—did not in-
volve the FSIA's majority-shares clause; it involved the FSIA's organ clause.

The *Abrams* plaintiffs argued that the SNCF was not entitled to FSIA immun-
ity as an organ of France because the FSIA did not apply to conduct that took place
during World War II, well before the FSIA was enacted. *Abrams*, 389 F.3d at 433.

35

This Court rejected the plaintiffs' time-of-misconduct standard for determining immunity under the FSIA's organ clause, holding that such immunity does not hinge upon some arbitrary time period such as time-of-wrongdoing. *Id*. at 64. This Court stated, "[w]hile SNCF was predominantly owned by civilians during World War II, it is *now wholly owned by the French government* and, as we have previously ruled, is an 'agent' or 'instrumentality' of France under the FSIA." *Id*. (emphasis added). What mattered for purposes of the organ clause, in other words, was that the French railroad was "*now wholly owned*" by the foreign state. *Id*. (emphasis added). The same is true here. JTB's assets are "now wholly owned" by the Central Bank, an organ of Lebanon.

In reaching its conclusion, the *Abrams* court expressly relied upon the Supreme Court's then-recently minted decision in *Republic of Austria v. Altmann*, 541 U.S. 677 (2004), which held that the FSIA's organ clause extends immunity to pre-FSIA conduct, reasoning that the "FSIA's overall structure strongly supports th[e] conclusion" that immunity under the organ clause should apply "regardless of when the underlying conduct occurred." *Id*. at 698. Extending the FSIA's organ-clause immunity to *pre-filing* acts was necessary, concluded *Altmann*, because it was most consistent with the *purposes of the FSIA*, which "established a comprehensive framework for resolving any claim of sovereign immunity." *Id*. at 699 (emphasis added).

The rationale of this Court in *Abrams* and the Supreme Court in *Altmann*, therefore, is that ascertaining whether an entity is entitled to FSIA immunity under the organ clause is determined by reference to the *purposes of the FSIA*, not by reference to some arbitrary "time," such as the time-of-tort or the time-of-filing.

Finally, while the district court cited *Abrams* for the proposition that *Dole Food* holds "unequivocally that an entity's status as an instrumentality of a foreign state should be determined at the time of the filing of the complaint," SPA-16–17, the quotation provided by the district court appears in a *parenthetical* in *Abrams* which summarized *Dole*. It is axiomatic that language in a parenthetical summarizing *another court*'s decision is not a holding and may well be an inaccurate summarization of the other court's holding. *See In re MDL-731 Tax Refund Litig.*, 989 F.2d 1290, 1298 (2d Cir. 1993) ("What appellants label….as a 'holding'…is actually a parenthetical description of a decision of [another court]."); *see also Reeve Aleutian Airways, Inc. v. United States*, 982 F.2d 594, 600 n.5 (D.C. Cir. 1993); *Gross v. Winter*, 876 F.2d 165, 171 n.10 (D.C. Cir. 1989) (other Circuit court's parenthetical describing Supreme Court holding "misstates the Supreme court's holding in that case"); *Barnes v. Thompson*, 58 F.3d 971, 984 n.5 (4th Cir. 1995) (Murnaghan, J., concurring in the judgment) (parenthetical describing court's *own precedent* is dicta and inaccurate); *Valley Eng'rs Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1056 (9th Cir. 1998) (same).

37

Finally, the district court's conflation of the "organ" clause of 28 U.S.C. § 1603(b)(2) and the "majority shares" clause is unavailing. *See* 28 U.S.C. § 1603(b)(2) ("An 'agency or instrumentality of a foreign state' means an entity… which is an organ of a foreign state or political subdivision thereof, **or** a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof….") (emphasis added). While both clauses use the word "is"— i.e., "is owned" versus "is an organ"—there is no logical reason why they must both be construed to impose a time-of-filing rule. The word "is" in the organ clause could speak to a variety of situations, including at the time of the alleged wrongdoing, the time of the filing, or the time the immunity is raised.

As the Supreme Court has recognized, "identical language may convey varying content when used in different statutes, sometimes even in different provisions of the same statute." *Yates v. United States*, 574 U.S. 528, 537 (2015) (collecting cases). This is because, as observed in *Atl. Cleaners & Dryers v. United States*, 286 U.S. 427, 433 (1932), "[m]ost words have different shades of meaning, and consequently may be variously construed, not only when they occur in different statutes, but *when used more than once in the same statute or even in the same section*." (emphasis added). "When the subject-matter to which the words refer is not the same in the several places where they are used, or the conditions are different…the meaning may well vary *to meet the purposes of the law*, to be arrived at by a consideration

of the language to which those purposes are expressed, and of the circumstances under which the language was employed." *Id*. (emphasis added).

Accordingly, whether an entity "is" an organ of a foreign state may *not* require a time-of-filing rule, even though determining whether an entity "is" owned by a foreign state does, pursuant to *Dole Food*. Pragmatically, for example, ascertaining whether the "majority of shares or other ownership interest" in an entity "is owned" by a foreign state—much like ascertaining an individual's domicile for diversity jurisdiction—is inherently fluid, absent a fixed standard such as a time-of-filing rule. Corporations have shares and these shares often change hands. A foreign state may own a majority of shares in the corporation one day, and the next day be a minority shareholder, or no shareholder at all. In these fluid situations—determining where an individual "is" domiciled for purposes of diversity jurisdiction or whether a majority of shares of a corporation "is" owned by a foreign state, a time-of-filing rule makes sense and prevents potential manipulation of the courts' subject-matter jurisdiction.

The same pragmatic need, however, does not exist for the FSIA's organ clause. Whether an entity "is" an "organ of a foreign state" does *not* need to be fixed by a particular standard, such as a time-of-filing rule. A sovereign's central bank, for example, "is" unquestionably "an organ of a foreign state" at all times, without fluctuation. *Masinexportimport*, 706 F.2d at 414; *EM Ltd.*, 800 F.3d at 82–83; *NML*

39

*Capital*, 652 F.3d at 188. Given this reality, there is not only no *need* to adopt a fixed time, such as a time-of-filing rule, but such a fixed rule *undermines the FSIA's purpose* of extending comity to other sovereigns.

Here, the Central Bank, acting through its Liquidator-agent, is liquidating JTB pursuant to Lebanese law. This liquidation process—like the liquidation process of the States and federal agencies such as the FDIC—is a quintessential *sovereign undertaking*, an exercise of Lebanon's police power that is carried out in accordance with a carefully conceived, statutory scheme. *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994) (federal agencies such as Federal Savings and Loan Insurance Corporation enjoy sovereign immunity unless waived); *Nat'l Trust for Historic Pres. in U.S. v. FDIC*, 21 F.3d 469, 470 (D.C. Cir. 1994) (FDIC is entitled to immunity from suit). The liquidation of JTB is not a "commercial activity" and Plaintiffs have not asserted otherwise; it is a *sovereign process*.[8] Because there is no fluidity in the Central Bank's status as an "organ" of the State of Lebanon, there is no pragmatic need to impose a time-of-filing rule on the FSIA's organ clause.

_____

[8] Indeed, as this Court has repeatedly observed, actions that "function[] similarly" to a bankruptcy proceeding, involving the "equitable, orderly, and systematic" disbursement of assets of a business entity, are sovereign acts that trigger the invocation of international comity. *See Banco Economico*, 192 F.3d at 243, 246; *Cunard S.S. Co. v. Salen Reefer Serv. AB*, 773 F.2d 452, 458 (2d Cir. 1985); *Allstate Life Ins. Co. v. Linter Grp. Ltd.*, 994 F.2d 996, 998–1000 (2d Cir. 1993). Because of these precedents, the Appellants moved to dismiss based on international comity, but this was denied. SPA-24.

40

## II.    The District Court Erred in Denying the Motion to Substitute

Under Rule 25(c), "If an *interest is transferred*, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." Fed. R. Civ. P. 25(c) (emphasis added). Here, the district court concluded that "[t]he primary consideration is whether substitution will expedite and simplify the action." SPA-4 (internal quotation marks omitted). Appellants do not deny the importance of expedition/simplification, but the *first* consideration is not expedition; it is—as the text of Rule 25(c) makes clear—whether the requisite "interest" has been "transferred." Fed. R. Civ. P. 25(c).

In support of its position that expedition is the "primary consideration" in a motion to substitute, the district court cited several district court cases from the Southern District of New York. SPA-3. Yet all of these cases involve situations in which a transfer of interest unquestionably had occurred, and those cases then proceed to determine whether—given such a transfer—allowing substitution would expedite/simplify the litigation. Here, by contrast, the district court refused to rule "whether the requisite transfer of interest has occurred" because it "agree[d] with Plaintiffs' further contention that substitution here would complicate the proceedings and unfairly frustrate Plaintiffs' ability to obtain a judgment against the party they properly sued: JTB." SPA-4. It reached this conclusion—that substitution

41

would not lead to efficiency/simplification—because it believed Appellants' "arguments for dismissal are meritless whether they are asserted by JTB or Dr. Baasiri." *Id*.

Thus, the district court's denial of the substitution motion is entitled to no deference because it hinged upon an erroneous *legal* conclusion that *Dole Food*'s time-of-filing rule rendered substitution a waste of time. The district court's reliance on *Dole Food* in rejecting substitution thus applied "*law* to facts" and this Court should review the ruling *de novo*. *Organic Cow, LLC v. Ctr. for New England Dairy Compact Rsch.*, 335 F.3d 66, 71 (2d Cir. 2003) (cleaned up).

Moreover, by putting the "expedition" cart before the "transfer of interest" horse, the district court committed legal error. It is undisputed that JTB's interests have been transferred, by operation of Lebanese law, to the Central Bank. Law 110, JA-972 art. 17 ¶ 2; Baasiri Decl. JA-959, JA-961 ¶¶ 25, 45. While Plaintiffs have contended that the Central Bank and its Liquidator-agent are "not JTB's successor and…he does not *control* JTB's assets outside of Lebanon—i.e., the $8 million in a New York account frozen [by the Department of Treasury's Office of Foreign Assets Control] by U.S. law[,]" SPA-4 (emphasis added), this does *not dispute* that under Lebanese law, JTB's *interests*—all of them, wherever located—have been transferred to the Central Bank. Law 110, JA-972 art. 17 ¶ 2; Baasiri Decl. JA-959, JA-961 ¶¶ 25, 45. That the Central Bank may not *control* some of JTB's assets (because

42

they are frozen by OFAC) does not dispute that the *legal interests* in all of JTB's assets have been *transferred* to the Central Bank by operation of Lebanese law. It is the *transfer* of an interest that matters for purposes of a motion for substitution, not who may *control* the interest so transferred. *See* Black's Law Dictionary (11th ed. 2019) (defining "transfer" as "[a]ny mode of disposing of or parting with an asset or an interest in an asset"); *id*. (defining "control" as "[t]o exercise power or influence over").

Indeed, it makes no sense for the district court to grant the Liquidator-agent's Rule 24(a) motion to intervene as of right while simultaneously evading the issue of a transfer of interest under Rule 25(c). The district court acknowledged that "by operation of Lebanese law, Dr. Baasiri is charged with disposing of *all of JTB's assets*" and that "Plaintiffs seek to recover from those assets in this lawsuit." SPA-8. In making these statements, the district court oddly cited two cases of this Court, *Finanz AG Zurich v. Banco Economico S.A.*, 192 F.3d 240, 245 (2d Cir. 1999) and *Drexel Burnham Lambert Group, Inc. v. Galadari*, 12 F.3d 317, 327-28 (2d Cir. 1993), which support Appellants' motion for *substitution*, not intervention. *See* SPA-8–9.

In *Banco Economico*, 192 F.3d 240 at 245, plaintiff sued a private bank in New York state court, alleging that it defaulted on a note. *Id*. at 244. The defendant-bank removed the action to federal court and asserted that the "liquidator, who was

appointed by the Central Bank [of Brazil], was the real party in interest and was an 'agency or instrumentality of a foreign state'" under the FSIA. *Banco Economico*, 192 F.3d at 244.

This Court agreed, concluding that the foreign Liquidator's status as the "real party in interest," entitled to FSIA immunity, was "supported by the record," because "Brazil's Central Bank appoints the liquidator and decrees an extrajudicial liquidation pursuant to Brazilian law. The duly-appointed liquidator is required to act 'in the interest of public economy, private savings, and national security' when fulfilling his duties. The liquidator also represents the bankrupt's estate in court and can file suit on the estate's behalf." *Id.* (internal citation omitted).

The same facts are present here. The Central Bank and its Liquidator-agent are undertaking an extrajudicial liquidation pursuant to Lebanese law. JTB's assets have been transferred to the Central Bank and the Central Bank's Liquidator-agent is required to carry out the liquidation priorities established by Lebanese law. JA-972 art. 17 ¶¶ 2, 8. Baasiri Decl. JA-960 ¶¶ 30, 32. Indeed, unlike in *Banco Economico*, in which the bank raised the "real party in interest" argument on behalf of the Brazilian liquidator, here the Liquidator has, in his official capacity, taken the affirmative step of seeking both intervention and substitution to defend the Central Bank's legal interests in JTB's assets.

Similarly, in *Galadari*, 12 F.3d 317, this Court agreed that a Dubai Liquida-
tion Committee was the "real party in interest" entitled to FSIA immunity. The case
involved two lawsuits—the first in federal court and the second in state court—that
were ultimately consolidated in federal court. In the first suit, the plaintiff, Drexel,
sued a private citizen of Dubai (Galadari) and a partnership he managed, seeking
recovery on a note. *Id*. at 320. *Five days after the lawsuit was filed*, the Emirate of
Dubai, United Arab Emirates ("the Emirate") established a Liquidation Committee
by royal decree, to wind up the business affairs and liquidate the assets of Galadari.
*Id*. at 320. The Liquidation Committee then answered the complaint, "on behalf of
Galadari and Commodities." *Id*.

The district court eventually entered a stay, giving plaintiffs an opportunity to
present their claims to the Liquidation Committee. Several months later, the Dubai
Liquidation Committee denied plaintiffs' claims. *Id*. at 322. Thereafter, the district
court vacated its stay, concluding that the Dubai liquidation process had been fun-
damentally unfair. *Id*. It then denied the Liquidation Committee's motion, "conclud-
ing that the Committee…had implicitly *waived* foreign sovereign immunity
'[b]ecause the Committee involuntarily intervened as the real party in interest in both
federal and state proceedings and filed responsive pleading[s] without preserving its
right to sovereign immunity'…." *Id*. (quotations omitted).

On appeal, this Court stated: "[t]he district court correctly concluded that in-sofar as the…complaints assert claims directly against the Emirate and *the Commit-tee as an instrumentality of the Emirate*, the FSIA provides the sole basis for subject matter jurisdiction in United States courts." *Id.* at 324 (emphasis added). It noted that the "parties do not dispute that the [Liquidation] Committee is an 'agency or instrumentality' of the Emirate" as defined by the FSIA. *Id.* It then concluded that the Liquidation Committee had not waived its FSIA immunity, and that the Com-mittee was the "real party in interest" over the assets that had been transferred to it by royal decree. *Id.* at 327–28.

In *Galadari*, as here, a sovereign-appointed liquidator asserted that it was the "real party in interest" in a suit affecting assets subject to liquidation. In both cases, the sovereign-appointed liquidator(s) asserted sovereign immunity under the FSIA. In both cases, the sovereign's liquidation began *after the lawsuit was filed*. *See Gala-dari*, 12 F.3d at 320 (liquidation committee established five days after lawsuit was filed).

Under these facts, the parties in *Galadari* did not even dispute that the Dubai Liquidation Committee was an agency/instrumentality of Dubai under the FSIA's organ clause. *Id.* at 324. They fought instead over whether FSIA immunity had been waived or the Act's commercial activity exception applied. *Id.* Given that these is-

sues were of jurisdictional significance, this Court had a duty to state its disagreement if it believed the Liquidation Committee did not qualify as an organ of Dubai. It did not disagree, however, and indeed analyzed whether the Liquidation Committee had waived its sovereign immunity or the Act's commercial activities exception applied. None of this analysis would have been proper if this Court did not agree that sovereign immunity applied to the Liquidation Committee as an organ of Dubai.

The district court below attempted to distinguish *Galadari* by asserting that the Dubai Liquidation Committee was the "successor to a provisional board…established by the government of Dubai" *prior to* filing of the lawsuit. SPA-17 (citing *Galadari*, 12 F.3d at 320). Thus, under this reasoning, because the Liquidation Committee was viewed as a "successor" to "Provisional Board," the board's existence *before suit was filed* meant that *Galadari* was harmonious with *Dole Food*'s time-of-filing rule.

The district court was wrong. The district court quoted *Galadari* but omitted two critical words—"of directors"—which make clear that the Dubai Provisional Board—the entity formed *before* suit was filed—was a *board of directors*, *not a liquidation committee*. *See* SPA-17. The Provisional Board was created by a royal decree in 1983 and "was established to perform two distinct functions: (a) to act in place of the original board of directors in the day-to-day general management of the insolvent Union Bank, and (b) to act as custodian of the non-banking businesses of

A.W. Galadari." *Drexel Burnham Lambert Grp., Inc. v. Galadari*, 1987 WL 6164, at *2 (S.D.N.Y. Jan. 29, 1987). Under the authority of the 1983 decree "the Provisional Board imposed a moratorium, freezing all liabilities, and began the liquidation of Mr. Galadari's assets." *Id*. Unfortunately, however, the Provisional Board's authority to conduct a liquidation—as opposed to merely manage the day-to-day operations as custodian—were cast into doubt by litigation by Galadari's creditors. *Id*. at *3 ("[T]he moratorium of creditor actions established in connection with Decree No. 5 was in danger of collapsing as certain claimants sought to pursue legal remedies for their own benefit, without regard to a fair distribution of the available asset to all creditors. In particular…actions taken by [a large creditor]…indicat[ed] that the moratorium was no longer effective.").

Because the Provisional Board's authority to effectuate a *liquidation*—as opposed to temporary custodial *management*—was in doubt, the Emirate of Dubai issued a second decree creating a true Liquidation Committee that was expressly authorized to "wind up Mr. Galadari's business affairs and to administer the Galadari assets to ensure equitable distribution to all creditors of the estate." *Id.* at *4. The liquidation of Galadari's assets was thus initiated *after* suit was filed, as in this case. *Galadari*, 12 F.3d at 320.

Thus, while the Liquidation Committee was "the successor" to the Provisional Board, it was *not the same legal entity* and it had much broader powers. The *Galadari* Court made the distinction between the Provisional Board of Directors and the Liquidation Committee abundantly clear: "[w]e have noted that the decree which established the [Liquidation] Committee appears to be Dubai's *first attempt* to frame an insolvency law." *Galadari*, 12 F.3d at 320 (emphasis added) (citing *Drexel II*, 777 F.2d at 881). The Provisional Board, by contrast, was a provisional board *of directors*, meaning that it was a temporary management team lacking authority to conduct a liquidation. The district court's attempt to conflate the Provisional Board with the Liquidation Committee, therefore, is unconvincing. *See* SPA-17–18

The district court also weakly attempted to distinguish *Galadari* because it was decided in 1993, "a decade before *Dole Food*" and that "to the extent they are inconsistent, [the court] must follow *Dole Food*." SPA-18, n.5. But this, too, is incorrect because as elaborated *infra* Section I.A, *Dole Food*'s time-of-filing statements are dicta and, even if not, were applied in a context that is materially distinguishable on both procedural and substantive grounds.

Under both *Banco Economico* and *Galadari*, therefore, the Liquidator is the "real party in interest" in this litigation. Indeed, courts routinely hold that sovereign-appointed liquidators—whether foreign or domestic—are the real party in interest in suits filed against the entity undergoing liquidation, even

49

when liquidation is begun *after* suit is filed. *See, e.g.*, *U.S. Fid. & Guaranty Co. v. Exec. Ins. Co.*, 893 F.2d 517, 517 n.1 (2d Cir. 1990) (New York liquidation bureau is real party in interest in suit against insurance company undergoing liquidation); *Wrapwell*, 922 F. Supp. at 917 (FDIC as bank receiver is real party in interest in suit against bank); *Fabe*, 784 F. Supp. at 450 (S.D. Ohio 1991) ("[O]nce [a corporation] was ordered into liquidation, the real party in interest in this action became, not the corporation, but the liquidators of the corporation appointed by the Supreme Court of Bermuda."); *Allied Fid. Ins. Co.*, 677 F. Supp. at 563 ("[B]ecause [the corporation] is now in liquidation, [the corporation's] liquidator…is the real party in interest"); *Hong Kong Deposit & Guar. Co. Ltd. v. Hibdon*, 602 F. Supp. 1378, 1382 (S.D.N.Y. 1985) (Hong Kong liquidator is real party in interest). The same is true here. Yet the district court refused to even consider if the Liquidator-agent is the "real party in interest" to this suit and denied Appellants' substitution motion based on the time-of-filing rule discussed in *Dole Food*. SPA-16–18.

Because Lebanese law indisputably transferred all interest in JTB's assets to the Central Bank, the Liquidator-agent is now the real party in interest to this suit, the district court's denial of the motion for substitution was legal error.

## CONCLUSION

For the foregoing reasons, the Court should reverse the district court's denial

of the motion to substitute as well as its denial of the motion to dismiss based on

sovereign immunity.

Dated: October 27, 2021          Respectfully submitted,

                          /s/ David B. Rivkin, Jr.
DAVID B. RIVKIN, JR.
ELIZABETH FOLEY
MARK W. DELAQUIL
KENDALL E. WANGSGARD
BAKERHOSTETLER LLP
Washington Square, Suite 1100
1050 Connecticut Ave., N.W.
Washington, D.C. 20036
(202) 861-1731
drivkin@bakerlaw.com

*Counsel for
Movant-Appellant and
Defendant-Appellant*

51

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing complies with the length limitations of Fed. R. App. P. 32(a)(7) because it is 12,382 words. It complies with the typeface and type-style requirements of Rule 32(a)(5) and Rule 32(a)(6) because it is printed in 14-point Times New Roman font, a proportionally spaced face with serifs.


 /s/ David B. Rivkin, Jr.

## CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2021, a true and correct copy of the fore-going was filed via the Court's CM/ECF system and served via electronic filing upon all counsel of record in this case.

  /s/ David B. Rivkin, Jr.

# SPECIAL APPENDIX

# TABLE OF CONTENTS

PAGE

Memorandum and Order, filed August 6, 2021 . . . . . . . . . . . . . . . . . . . . . . .  SPA-1

28 U.SC. § 1603 Definitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  SPA-25

**SPA-1**

Clerk's Office
Filed Date:  8/6/21

U.S. DISTRICT COURT
EASTERN DISTRICT OF
NEW YORK
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
ROBERT BARTLETT, et al.,

                        Plaintiffs,

      -against-

SOCIÉTÉ GÉNÉRALE DE BANQUE AU
LIBAN SAL, et al.,

                      Defendants.
------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
19-CV-00007 (CBA) (TAM)

**AMON, United States District Judge:**

Plaintiffs brought this case under the Anti-Terrorism Act, as amended by the Justice Against Sponsors of Terrorism Act ("JASTA"), against a group of Lebanese banking institutions. I previously granted in part and denied in part a motion to dismiss brought by all Defendants for lack of personal jurisdiction and failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). Presently before the Court is Defendant Jammal Trust Bank ("JTB") and proposed intervenor Dr. Muhammad Baasiri's (collectively, "Moving Defendants'") Motion to Substitute, Intervene, and Dismiss. For the reasons stated below, the motion is DENIED in part and GRANTED in part.

**BACKGROUND**

I assume the parties' familiarity with the facts, which are set forth more fully in the Memorandum and Order denying the previous motion to dismiss. (See ECF Docket Entry ("D.E.") # 163.) In short, Plaintiffs or their family members are United States service members who were allegedly injured in a series of terror attacks perpetrated by Hezbollah in Iraq between 2004 and 2011. Defendants are Lebanese banks that Plaintiffs allege provided financial services to

1

SPA-2

Hezbollah and Hezbollah affiliates. Hezbollah is an entity dedicated to religiously inspired terrorism, and in 1997 was designated by the United States as a Foreign Terrorist Organization. Plaintiffs allege that Defendants knowingly provided Hezbollah with financial services, including access to the U.S. financial system through correspondent bank accounts in New York, and facilitated Hezbollah's terrorist attacks by enabling the organization's operational funding.

Plaintiffs filed their complaint on January 1, 2019. Approximately nine months later, Defendant JTB was designated by the United States government as a Specially Designated Global Terrorist ("SDGT"). Authorities froze the bank's assets—including at least $8 million in a New York bank account. In September 2019, JTB sought liquidation and was placed in receivership pursuant to Article 17 of Law 110 of Lebanese law. Lebanon's Central Bank confirmed a liquidator, Dr. Baasiri, who is statutorily charged with overseeing JTB's liquidation under the supervision and control of the Lebanese Central Bank. The Lebanese Central Bank is a public entity established under Lebanese law.

The liquidator must prioritize JTB's depositors in disbursing its assets. Plaintiffs are not depositors. As non-depositors, they may submit claims to the liquidator; but those claims will not be paid if there is no surplus after the bank's depositors have been paid. Moving Defendants anticipate that in JTB's liquidation there will be no surplus. Specifically, they expect JTB's assets to pay about 90% of depositors, with the remainder to be paid by the Lebanese Government. If Plaintiffs were to obtain a judgment and sought to submit a claim to the liquidator based upon that judgment, they would need to obtain recognition of the judgment by a Lebanese court before the bank's liquidation was complete. A typical Lebanese bank liquidation takes approximately two to five years.

2

SPA-3

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of a complaint for "lack of subject-matter jurisdiction." A motion to dismiss for lack of standing is properly brought under Rule 12(b)(1) because a party must have standing in order to invoke a court's power to adjudicate cases under Article III of the United States Constitution. See McCrory v. Adm'r of Fed. Emergency Mgmt. Agency, 600 F. App'x 807, 808 (2d Cir. 2015) (citing Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)). "Because standing is challenged on the basis of the pleadings, [the Court] accept[s] as true all material allegations of the complaint, and must construe the complaint in favor of the [plaintiff]." Connecticut v. Physicians Health Servs. of Conn., Inc., 287 F.3d 110, 114 (2d Cir. 2002) (citation and internal quotation marks omitted). To survive a motion to dismiss for lack of Article III standing, a plaintiff must allege facts that, when accepted as true, "affirmatively and plausibly suggest that it has standing to sue." Amidax Trading Grp. v. S.W.I.F.T. SCRL, 671 F.3d 140, 145 (2d Cir. 2011).

## DISCUSSION

### I.    Motion to Substitute

Moving Defendants first move to substitute Dr. Baasiri for JTB pursuant to Federal Rule of Civil Procedure 25(c). That Rule provides for substitution upon transfer of interest: "If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." "Substitution of a successor in interest . . . under Rule 25(c) is generally within the sound discretion of the trial court." Organic Cow, LLC v. Ctr. for New Eng. Dairy Compact Research, 335 F.3d 66, 71 (2d Cir. 2003) (quoting Prop-Jets, Inc. v. Chandler, 575 F.2d 1322, 1324 (10th Cir. 1978)). The "primary consideration" is "whether substitution will expedite and simplify the action."

3

Advanced Mktg. Grp., Inc., v. Bus. Payment Sys., LLC, 269 F.R.D. 355, 359 (S.D.N.Y. 2010)
(internal quotation marks omitted) (quoting Taberna Capital Mgmt. v. Jaggi, 1:08-CV-11355
(DLC), 2010 WL 1424002 at *2 (S.D.N.Y. Apr. 9, 2010)).   When substitution would cause
complications in discovery, this may prejudice the non-moving party such that substitution should
be denied.  See Potvin v. Speedway LLC, 891 F.3d 410, 416 (1st Cir. 2018); Fashion G5 LLC v.
Anstalt, No. 1:14-cv-5719-GHW, 2016 WL 7009043, at *3 (S.D.N.Y. Nov. 29, 2016) (denying
substitution which would "impede plaintiff's ability to take discovery").   Substitution is
inappropriate where it "would serve only to add duration, costs, and complexity to an action ...
[and] would prolong rather than bring the litigation nearer to its conclusion." Advanced Mktg.
Grp., 269 F.R.D. at 359.

Moving Defendants argue that a transfer of interest has occurred, because JTB's assets and
rights are now controlled by the Central Bank of Lebanon and its liquidator.  Plaintiffs dispute that
there has been a sufficient transfer of interest.  They argue that Dr. Baasiri is not JTB's successor
and that he does not control JTB's assets outside of Lebanon—i.e., the $8 million in a New York
account frozen by U.S. law.  I need not decide, however, whether the requisite transfer of interest
has occurred because I agree with Plaintiffs' further contention that substitution here would
complicate the proceedings and unfairly frustrate Plaintiffs' ability to obtain a judgment against
the party they properly sued: JTB.  "The primary consideration in deciding a motion pursuant to
Rule 25(c) is whether substitution will expedite and simplify the action." Id.  Defendants' only
argument that substitution would simplify this case is that "it is legally more direct and appropriate
to permit the Liquidator to raise the sovereignty-based defenses of sovereign immunity and
international comity." (D.E. # 185 at 23-24 (emphasis omitted).)  But as discussed infra, those
arguments for dismissal are meritless whether they are asserted by JTB or Dr. Baasiri.

4

**SPA-5**

Removing JTB from this case would also needlessly complicate discovery.  See Fashion G5, 2016 WL 7009043, at *3; cf. SEC v. Collector's Coffee Inc., 451 F. Supp. 3d 294, 298 (S.D.N.Y. 2020) (granting substitution where "[t]here has been no suggestion . . . that the Dodgers will not be amenable to discovery as a nonparty through the Rule 45 subpoena process").  Removing JTB from this case would force Plaintiffs to seek third-party discovery from the bank rather than through the rules providing for automatic discovery from parties, e.g., Fed. R. Civ. P. 26.  (D.E. # 187 ("Opp'n") at 20.)  Clearing those procedural hurdles could prove especially challenging given JTB's ongoing liquidation in a distant country which, as JTB tells it, "has been in a political and economic crisis since 2019."  (D.E. # 182 ("Def. Br.") at 1.)  Indeed, JTB has been unable to communicate with its own counsel—making it all the more doubtful that the bank would readily provide third-party discovery.  (D.E. # 186 ¶ 3 ("I have never communicated with any individuals at JTB, as JTB has ceased operations pursuant to Lebanese liquidation law . . . .").)

In sum, Plaintiffs would be prejudiced by JTB's removal from this case, and Moving Defendants have identified no prejudice from JTB remaining in this case.  The motion for substitution is denied.[1]

**II.        Motion to Intervene**

Dr. Baasiri alternatively moves to intervene, either of right or permissively, pursuant to Rule 24 of the Federal Rules of Civil Procedure.  Plaintiffs oppose this motion on the merits, and also contend that the motion is procedurally defective because Dr. Baasiri has not first brought a petition pursuant to Chapter 15 of the United States Bankruptcy Code.

---

[1] Because I conclude that substitution would be inappropriate on the merits, I need not address Plaintiffs' alternate argument to deny substitution based on the application of Chapter 15 of the Bankruptcy Code.

**SPA-6**

**A. A Chapter 15 Petition is Not Required for Dr. Baasiri to Intervene**

Congress created Chapter 15 of the Bankruptcy Code through the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. 11 U.S.C. § 1501 <u>et seq</u>. The statute adopts, nearly in its entirety, the Model Law on Cross-Border Insolvency promulgated in 1997 by the United Nations Commission on International Trade Law. H.R. Rep. No. 109–31(1), at 105 <u>reprinted in</u> 2005 U.S.C.C.A.N. 88, 169 (2005). "Chapter 15 addressed a persistent problem in cross-border liquidations: creditors would initiate multiple bankruptcy proceedings to recover assets from a debtor in jurisdictions other than the site of the principal liquidation." <u>Trikona Advisers Ltd. v. Chugh</u>, 846 F.3d 22, 30 (2d Cir. 2017). That situation "caused administrative inefficiency and also allowed creditors to bypass the priority restraints of the main bankruptcy proceeding and attempt to recover more than their fair share of the debtor's assets." <u>Id.</u> To redress these inefficiencies and debtor windfalls, Chapter 15 establishes a process by which a foreign representative of a debtor may petition a United States court and receive permission to pursue or participate in United States court proceedings in an effort to harmonize the transnational bankruptcies. <u>See generally</u> 11 U.S.C. §§ 1509, 1515, 1517.

By its own terms, Chapter 15 applies only in limited circumstances. Plaintiffs assert that Chapter 15 applies here because this is a case in which "assistance is [being] sought in the United States by a foreign court or a foreign representative in connection with a foreign proceeding." <u>Id.</u> § 1501(b)(1). The decision of the Second Circuit in <u>Trikona Advisers</u> undermines this claim. 846 F.3d at 30. The district court in that case had given preclusive effect to the judgment of a Cayman Islands wind-up proceeding. <u>Id.</u> at 29. The plaintiff argued that the district court was precluded by Chapter 15 from applying collateral estoppel to that proceeding. <u>Id.</u> The Second Circuit rejected the argument: "the requirements of Chapter 15

# SPA-7

[did] not apply," because no party was "seeking the assistance of the district court in enforcing or administering a foreign liquidation proceeding." Id. at 30.  Accordingly, to decide whether "assistance is sought . . . in connection with a foreign proceeding," 11 U.S.C. § 1501(b)(1), requires asking whether Dr. Baasiri, through his intervention, seeks assistance "in enforcing or administering a foreign liquidation proceeding," Trikona Advisers, 846 F.3d at 30.

      The strictures of Chapter 15 are inapplicable here because Dr. Baasiri's motion cannot be fairly characterized as an attempt to enforce or administer a foreign liquidation proceeding. Plainly he does not seek to "enforce" the Lebanese proceeding—for example, to "seek the assistance of [this Court] in enforcing any judgment of the [Lebanese] court." Id. at 31 n.2.  Nor is his motion to intervene an attempt to "administer" the Lebanese liquidation in this Court—for example, to seek a stay of this action pursuant to Lebanese liquidation law. E.g., United States v. J.A. Jones Constr. Grp., LLC, 333 B.R. 637, 638-39 (E.D.N.Y. 2007) (declining to grant an indefinite "stay of this action in accordance with Canadian bankruptcy law" where movant had not commenced a Chapter 15 proceeding); Orchard Enter. NY, Inc. v. Megabop Records Ltd., No. 9-cv-9607, 2011 WL 832881, at *2-3 (S.D.N.Y. Mar. 4, 2011) (same, where movant sought stay pursuant to English law).   Rather, Dr. Baasiri seeks principally to intervene so that he may assert directly the sovereign immunity–related defenses which JTB could assert only indirectly.

      Chapter 15 was created to address situations in which "creditors would initiate multiple bankruptcy proceedings to recover assets from a debtor in jurisdictions other than the site of the principal liquidation." Trikona Advisers, 846 F.3d at 30.  This is not a bankruptcy proceeding. Plaintiffs' reading would bring within Chapter 15's ambit any case involving a party undergoing a foreign bankruptcy—even where the intervenor did not seek to enforce any aspect of the foreign proceeding or to administer that proceeding in the United States court.  Should Dr.

Baasiri ever seek to enforce or administer the Lebanese liquidation in this Court without first

making a Chapter 15 petition, Plaintiffs are free to renew their objection at that time.

**B.  Dr. Baasiri May Intervene of Right.**

Dr. Baasiri moves in the alternative to intervene pursuant to Federal Rule of Civil

Procedure 24(a).  That Rule provides for "Intervention of Right":

> On timely motion, the court must permit anyone to intervene who:
>
> (1) is given an unconditional right to intervene by a federal statute;
>
> or
>
> (2) claims an interest relating to the property or transaction that is
> the subject of the action, and is so situated that disposing of the
> action as a practical matter impair or impede the movant's
> ability to protect its interest, unless existing parties adequately
> represent that interest.

Fed. R. Civ. P. 24(a).  In considering a motion to intervene, courts "accept as true non-

conclusory allegations of the motion." SEC v. Callahan, 2 F. Supp. 3d 427, 436 (E.D.N.Y.

2014).  Courts construe Rule 24(a)(2) liberally. Davis v. Smith, 431 F.Supp. 1206, 1209

(S.D.N.Y. 1977), aff'd, 607 F.2d 535 (2d Cir. 1978); see 7C Fed. Prac. & Proc. Civ. (Wright &

Miller) § 1904 (3d ed.).

Dr. Baasiri is entitled to intervention of right.  First, he "claims an interest relating to the

property or transaction that is the subject of the action." Fed. R. Civ. P. 24(a).  Specifically, by

operation of Lebanese law, Dr. Baasiri is charged with disposing of all of JTB's assets.  Plaintiffs

seek to recover from those assets in this lawsuit.  Dr. Baasiri therefore has an interest in the

outcome of this litigation.  The Second Circuit has repeatedly recognized that a liquidator has an

interest in a suit brought against the entity undergoing liquidation. Finanz AG Zurich v. Banco

Economico S.A., 192 F.3d 240, 245 (2d Cir. 1999); Drexel Burnham Lambert Grp. Inc. v.

8

SPA-9

Galadari, 12 F.3d 317, 327-28 (2d Cir. 1993).

Because Lebanese law requires Dr. Baasiri to prioritize the claims of JTB's depositors, "disposing of the action may as a practical matter impair or impede [Dr. Baasiri's] ability to protect [his] interest." Fed. R. Civ. P. 24(a). If Plaintiffs can recover damages from JTB—and if their doing so involves a prolonged litigation requiring substantial legal defense costs—Dr. Baasiri's ability to disburse JTB's assets to its depositors may be impeded. See In re Reliance Grp. Holdings, Inc. Sec. Litig., No. 00-CV-4653 (TPG), 2004 WL 601973, at *1 (S.D.N.Y. Feb. 24, 2004) (granting intervention by liquidator of insurance company); In re $6,871,042.36, 217 F. Supp. 3d 84, 94 (D.D.C. 2016) (granting intervention of right because "this action threatens to impair the Liquidator's interest in the resolution of its claim to the [funds at issue].").

Dr. Baasiri's interest also may be inadequately represented by other parties in this litigation, including JTB. See Fed. R. Civ. P. 24(a). His status vis a vis the government of Lebanon differs from that of JTB, enabling him to make different arguments. Moreover, JTB's and Dr. Baasiri's legal interests diverge to the extent that only Dr. Baasiri is statutorily charged with disbursing the assets with priority to JTB's depositors. And since entering liquidation, JTB is no longer an ongoing banking concern—a status with practical effects that may lead to inadequate representation; for example, counsel for Moving Defendants has averred that he has "never communicated with any individuals at JTB, as JTB has ceased operations pursuant to Lebanese liquidation law and there is no one with whom I could communicate relating to this matter." (D.E. # 186 ¶ 3.) The foregoing satisfies Dr. Baasiri's "minimal" burden as to the adequacy of representation. Trbovich v. United Mine Workers of Am., 404 U.S. 528, 538 n.10 (1972).

Plaintiffs lastly argue that the motion to intervene is untimely. Moving Defendants first raised these arguments in September 2020, nearly a year after Dr. Baasiri was appointed

SPA-10

liquidator.  But this is not, as Plaintiffs contend, a case in which Dr. Baasiri "hid in the tall grass" until the timing was most advantageous to emerge and file the motion.  Mastercard Int'l Inc. v. FIFA, No. 06-cv-3036 (LAP), 2006 WL 3065598, at *2 (S.D.N.Y. Sept. 26, 2006), aff'd sub nom. Mastercard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc., 471 F.3d 377 (2d Cir 2006).  Moving Defendants' counsel began identifying potential bases for dismissal after taking over from JTB's prior counsel in January 2020.  Counsel faced communications challenges due to severe civil strife in Lebanon, which forced their client to retreat into a mountainous region where he could not easily be reached.  Even if their delay in bringing this motion ordinarily would be untimely, these are "unusual circumstances militating for" a finding of timeliness.  Floyd v. City of New York, 770 F.3d 1051, 1058 (2d Cir. 2014).

Crucially, Plaintiffs have failed to articulate any plausible prejudice that they would suffer from granting Dr. Baasiri's motion to intervene.  See Farmland Dairies v. Comm'r of N.Y. Dep't of Agric., 847 F.2d 1038, 1044 (2d Cir. 1988).[2]  The motion to intervene is granted.

### III.    Motion to Dismiss

Moving Defendants raise three arguments for dismissal: (1) that Plaintiffs lack standing to sue; (2) that the claims are barred by sovereign immunity, either under the Foreign Sovereign Immunities Act ("FSIA") or the sovereign immunity provision of the Anti-Terrorism Act, 18 U.S.C. § 2337(2); and (3) that I should exercise my discretion to dismiss the action against Moving Defendants in the interests of international comity.  I consider each argument in turn.

---

[2] Nor would Dr. Baasiri's intervention apparently require Plaintiffs to conduct additional motions practice, as the parties have already briefed his motion to dismiss.  Plaintiffs contend that they are prejudiced by having to address motions to dismiss "piecemeal."  (Opp'n at 26.)  But they can hardly complain now, having prevailed on Dr. Baasiri's motion to dismiss as is discussed infra.

### A. JTB's Post-Filing Insolvency Does Not Deprive Plaintiffs of Standing.

Moving Defendants' first argument is that Plaintiffs lack constitutional standing to sue. Under Article III of the United States Constitution, federal courts are courts of limited jurisdiction and may hear only "cases or controversies." U.S. Const. Art. III. "The case-or-controversy limitation on our jurisdiction . . . manifests in three distinct legal inquiries: standing, mootness, and ripeness." Klein v. Qlik Techs., Inc., 906 F.3d 215, 221 (2d Cir. 2018). The standing inquiry requires plaintiff to have suffered an injury in fact, which is fairly traceable to the conduct alleged and is likely to be redressed by the judgment sought. Lujan v. Defs. of Wildlife, 504 U.S. 555, 559-61 (1992). A corollary to these requirements is that courts may not issue advisory opinions. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101 (1998). The bar of establishing redressability is real, though not especially high: even "an award of nominal damages by itself can redress a past injury." Uzuegbunam v. Preczewski, 141 S. Ct. 792, 796 (2021).

Defendants argue that Plaintiffs lack standing because their claims against JTB are not redressable. They assert that JTB would be unable to pay any judgment due to its insolvency, so there is no use in proceeding with this case. The reasons why JTB could not pay differ for its U.S. and Lebanese assets. The U.S. assets—$8 million in a New York bank account—are currently frozen because of JTB's designation as an SDGT. Their disposition is within the discretion of United States government officials, which Moving Defendants contend is too speculative to confer standing. The Lebanese assets would be unavailable because they are being liquidated to JTB's depositors; and there is no surplus from which Plaintiffs could be paid. Because JTB could not pay, the argument goes, Plaintiffs' claims are not likely to be redressed by a money judgment.

In Mission Product Holdings, Inc. v. Tempnology, LLC, 139 S. Ct. 1652 (2019), the Supreme Court rejected the argument that a case had become moot when a "bankruptcy estate has

recently distributed all of [the defendant's] assets" and the plaintiff would "be unable to convert any judgment in its favor to hard cash." Id. at 1661. The Court observed that "courts often adjudicate disputes whose 'practical impact' is unsure at best, as when 'a defendant is insolvent.'" Id. (quoting Chafin v. Chafin, 568 U. S. 165, 175 (2013)). "For better or worse, nothing so shows a continuing stake in a dispute's outcome as a demand for dollars and cents." Id. at 1660. Because mootness and standing are distinct inquiries, Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 189 (2000), Tempnology does not automatically dispose of the arguments here. But courts have "an independent obligation to determine that standing exists," Summers v. Earth Island Inst., 555 U.S. 488, (2009), and so the Supreme Court's sanctioning of cases "whose practical impact is unsure at best" implicitly recognizes that the potential inability to satisfy a judgment does not defeat standing. Tempnology, 139 S. Ct. at 1661; see Wells Fargo Equip. Fin., Inc. v. Titan Leasing, Inc., 768 F.3d 741, 742 (7th Cir. 2014) ("[T]he doubtful collectability of a judgment does not affect federal subject-matter jurisdiction."). Further, the standing inquiry is "focused on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." Davis v. FEC, 554 U.S. 724, 734 (2008) (emphasis added); see also In re SunEdison, Inc. No. 16-10992, 2019 WL 2572250, at *10 (Bankr. S.D.N.Y. June 21, 2019). If the ongoing mootness inquiry cares not about a defendant's mid-suit insolvency, then the temporally antecedent standing inquiry should likewise disregard a defendant's pecuniary state. See Choi's Beer Shop, LLC v. PNC Merchant Servs. Co., L.P., ___ F. App'x ___, 2021 WL 1235704, at *2 (2d Cir. Apr. 2, 2021) ("[Defendant]'s postcomplaint actions . . . are relevant to determining whether [Plaintiff]'s claims later became moot, but they have no bearing on whether the complaint was adequate to begin with.").

Under the foregoing principles, JTB's mid-suit insolvency does not render Plaintiffs'

injuries non-redressable.   In essence, Moving Defendants urge the adoption of a "de facto redressability" requirement.   That is, they would have the Court assess standing based on the likelihood that a defendant will actually satisfy a money judgment.   That is not the relevant question.   The relevant question is whether the requested judgment—assuming that judgment is satisfied—would redress Plaintiffs' injuries.   There is no dispute here that a satisfied money judgment would redress Plaintiffs' injuries.[3]

For similar reasons, I reject Moving Defendants' argument that any judgment of liability against them would be an advisory opinion.   Plaintiffs seek a judgment that Moving Defendants are liable under JASTA for acts allegedly committed in the past, and for which a judgment of money damages could redress Plaintiffs' injuries.   Such a judgment would not be advisory.

To the extent it is appropriate to consider the likelihood that Defendants will actually satisfy any judgment, Moving Defendants' arguments are too speculative to warrant dismissal.   By JTB's own admission, its liquidation will likely not be completed for several years.   And the liquidation might not disburse the $8 million which is frozen in the United States by government order.   Plaintiffs contend that they could attach JTB's U.S. assets pursuant to the Terrorism Risk Insurance Act ("TRIA"), a statute which "authorizes plaintiffs holding a judgment against a terrorist party to attach blocked assets of the terrorist party or any agency or instrumentality of the terrorist party." Calderon-Cardona v. Bank of N.Y. Mellon, 770 F.3d 993, 998-99 (2d Cir. 2014). Although it is premature to determine whether TRIA would apply to any hypothetical judgment, see id. at 1000 (assessing the statute's applicability based on the facts "[a]t the time the judgment

---

[3] This distinction between the effect of a satisfied judgment and the de facto likelihood of a judgment being satisfied also explains why this case is not, as Moving Defendants contend, one in which redress depends largely on policy decisions yet to be made by government officials.   Here, the "policy decisions" which Moving Defendants postulate would not bar Plaintiffs from obtaining relief through a money judgment, but are rather exogenous hurdles to satisfying a money judgment.   There is no dispute that money would redress Plaintiffs' injuries.

13

. . . was entered"), the possibility of its application is sufficient to confer standing on plaintiffs. <u>Tempnology</u>, 139 S. Ct. at 1660 ("If there is <u>any</u> chance of money changing hands, [the] suit remains live." (emphasis added)).

Moving Defendants cite several out-of-circuit cases for the proposition that seeking a money judgment does not necessarily confer standing. None of those cases is binding on me, and each is distinguishable. Most of the cases cited involve the same fact pattern: a plaintiff challenged a signage regulation which barred the plaintiff from posting an advertisement; but the injury was not redressable because the proposed advertisement would have been barred by other regulations which the plaintiff did not challenge. <u>See</u> <u>Midwest Media Prop., LLC v. Symmes Township</u>, 503 F.3d 456, 461 (6th Cir. 2007); <u>KH Outdoor, LLC v. Clay County</u>, 482 F.3d 1299, 1303 (11th Cir. 2007); <u>Int'l Outdoor, Inc. v. City of Troy</u>, 361 F. Supp. 3d 713, 719 (E.D. Mich. 2019). Because of those additional unchallenged regulations, the plaintiffs' injuries would not have been redressed by a judgment invalidating the one challenged regulation (<u>i.e.</u>, they still could not post their advertisements). The same is not true here. If Plaintiffs ultimately obtain a money judgment against Moving Defendants that is satisfied, that will redress their claims.

Even further afield is <u>ASARCO Inc. v. Kadish</u>, 490 U.S. 605, 614-15 (1989). That case involved the question of whether taxpayers had standing to challenge a statute on the basis that invalidating the statute would redound to their benefit in the form of lower taxes. The Court held that even if the statute were invalidated and the state's treasuries increased, it was unpredictable how the state would use those funds. <u>Id.</u> at 615. The case did not involve a claim between private parties for statutory damages. Here, if Plaintiffs receive a money judgment, they would be entitled to that damages award. Although the administration of JTB's liquidation might make it difficult for Plaintiffs to convert any judgment into cash, their situation would be unlike that of the plaintiffs

14

in Kadish, who sought a judgment that would not legally entitle them to any money at all.

### B. Sovereign Immunity

#### a. Foreign Sovereign Immunities Act

Moving Defendants next claim that they are immune from suit pursuant to the Foreign Sovereign Immunities Act. "Under the Act, a foreign state is presumptively immune from the jurisdiction of United States courts; unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state." Saudi Arabia v. Nelson, 507 U.S. 349, 355 (1993). The FSIA provides immunity to foreign states as well as to any "agency or instrumentality" of a foreign state. 28 U.S.C. § 1603(a); 28 U.S.C. § 1604. The FSIA defines "agency or instrumentality" as an entity:

> (1) which is a separate legal person, corporate or otherwise, and
>
> (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and
>
> (3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (e) of this title, nor created under the laws of any third country.

28 U.S.C. § 1603(b). Moving Defendants claim that they qualify as an "agency or instrumentality" of Lebanon because JTB's liquidation is carried out under the supervision and control of the Central Bank of Lebanon. Plaintiffs contend that the FSIA provides no immunity here under Dole Food Co. v. Patrickson, 538 U.S. 468 (2003), which directs courts to evaluate instrumentality status at the time a lawsuit is filed; JTB is only alleged to have come under government control many months after this lawsuit was filed.

In Dole Food, the Supreme Court considered "whether a corporation's instrumentality status is defined as of the time an alleged tort or other actionable wrong occurred or, on the other

15

hand, at the time suit is filed." 538 U.S. at 471. The defendant in Dole Food asserted immunity as an entity whose majority "shares or other ownership interest is owned by a foreign state or political subdivision thereof." 28 U.S.C. § 1603(b)(2). The plaintiffs disputed that the defendants could assert sovereign immunity because the defendants' shares were not government-owned—and they thus lacked instrumentality status–when the lawsuit was filed. The Court agreed: because "the plain text of this provision" is "expressed in the present tense . . . instrumentality status [must] be determined at the time suit is filed." 538 U.S. at 478. The Court grounded its holding in "the longstanding principle that 'the jurisdiction of the Court depends upon the state of things at the time of the action brought.'" Id. (quoting Keene Corp. v. United States, 508 U.S. 200, 207 (1993)).

Dole Food thus militates toward denying Moving Defendants' motion under the FSIA. It is undisputed that JTB lacked instrumentality status "at the time suit [was] filed." Id. at 478. Nonetheless, Moving Defendants attempt to avoid the holding of Dole Food by urging a cabined reading of the Court's opinion. They characterize that case as being limited to the following underlined portion of 28 U.S.C. § 1603(b), defining a foreign agency or instrumentality as an entity "which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof." Because Moving Defendants assert instrumentality status based on the non-underlined portion of the foregoing, they say that Dole Food is of no moment here.

Nothing in the Court's opinion nor in the cases that have followed supports Moving Defendants' strained reading of Dole Food. The Court expressly endeavored to answer the broader question of "whether a corporation's instrumentality status is defined as of the time an alleged tort or other actionable wrong occurred or, on the other hand, at the time suit is filed." 538 U.S. at 471. The Second Circuit has characterized Dole Food as "holding unequivocally that an entity's

16

status as an instrumentality of a foreign state should be 'determined at the time of the filing of the complaint.'" Abrams v. Societe Nationale des Chemins de Fer Francais, 389 F.3d 61, 64 (2d Cir. 2004) (quoting id. at 480). That characterization makes sense in light of the Court's reasoning, which focused on the plain text of the statute being "expressed in the present tense." 538 U.S. at 478. Just "like the 'ownership interest' clause at issue in Dole Food, the clause immediately preceding it"—which Moving Defendants rely upon here—"is also expressed in the present tense." Yousuf v. Samantar, 552 F.3d 371, 382 (4th Cir. 2009).[4]

Moving Defendants rely on Drexel Burnham Lambert Grp. Inc. v. Galadari, 12 F.3d 317 (2d Cir. 1993), in which the Second Circuit affirmed that one of the defendants—a government-created committee—was an instrumentality entitled to FSIA immunity. But the timing of when instrumentality status should be assessed was not raised in that case. Indeed, "the parties [did] not dispute that the Committee [was] an 'agency or instrumentality' of the Emirate." Galidari, 12 F.3d at 324 (quoting 28 U.S.C. § 1603). Galidari is also distinguishable on its facts. The committee found to have instrumentality status there was not analogous to Moving Defendants here. That committee was "the successor to a provisional board . . . established by the government of Dubai." Id. at 320. After the lawsuit was filed the committee immediately began participating—filing an answer on behalf of the non-governmental defendants in liquidation. Id. The committee had thus existed as a government-created provisional board when the lawsuit was filed, and immediately

---

[4] I recognize that this case involves a defendant claiming it has attained post-filing instrumentality status, whereas Dole Food involved a defendant who claimed instrumentality status at the time of the tortious conduct. But Dole Food announced a clear rule: that instrumentality status is determined at the time of a lawsuit's filing. The Court grounded that rule in the longstanding jurisdictional time-of-filing rule, under which post-filing changes to "the condition of the party" are irrelevant in assessing jurisdiction. Grupo Dataflux v. Atlas Glob. Grp., L.P., 541 U.S. 567, 574 (2004) (quoting Conolly v. Taylor, 27 U.S. 556, 565 (1829)); Freeport-McMoRan, Inc. v. K N Energy, Inc., 498 U.S. 426, 428 (1991). Accordingly, courts have rejected the argument that a "post-filing change" can confer instrumentality status on a defendant who was not under sovereign control when the lawsuit was filed. In re Air Cargo Shipping Servs. Antitrust Litig., No. MD 06-1775 (JG) (VVP), 2008 WL 5958061, at *39-40 (E.D.N.Y. Sept. 26, 2008), report and recommendation adopted 2009 WL 3443405, aff'd on other grounds 697 F.3d 154 (2d Cir. 2012); Biton v. Palestinian Interim Self-Gov't Auth., 510 F. Supp. 2d 144, 147 (D.D.C. 2007).

began participating in the case.  The same is not true here.  JTB only entered liquidation approximately nine months after this lawsuit was filed.  At the time of filing, JTB was a solvent, private bank.[5]

Because Moving Defendants were not an agency or instrumentality of a foreign state at the time this suit was filed, their motion to dismiss based on sovereign immunity under the FSIA is denied.

**b.  Anti-Terrorism Act**

Moving Defendants next argue that the claims against them should be dismissed under the separate sovereign immunity provision of the ATA:

> No action shall be maintained under section 2333 of this title against . . . a foreign state, an agency of a foreign state, or an officer or employee of a foreign state or an agency thereof acting within his or her official capacity or under color of legal authority.

18 U.S.C. § 2337(2).  Moving Defendants contend, however, that the ATA should be construed consistent with the FSIA.  Accepting this invitation to treat the ATA as coextensive with the FSIA, Plaintiffs do not distinguish between the two in their opposition papers.  (See Opp'n at 13-15.) Moving Defendants likewise do not make distinct arguments for the two statutes in their reply; the ATA provision is mentioned only fleetingly.  (D.E. # 185 at 12.)

The Supreme Court has stated that "the Foreign Sovereign Immunities Act 'provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country.'"  OBB Personenverkehr v. Sachs, 577 U.S. 27, 30-31 (2015) (quoting Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 434 (1989)).  Mindful of this guidance to "decide claims of sovereign immunity in conformity with [FSIA's] principles," Republic of Austria v. Altmann, 541

---

[5] In addition to having not directly confronted the issue presented here and being factually distinguishable, Galadari was decided a decade before Dole Food; to the extent they are inconsistent, I must follow Dole Food.

U.S. 677, 691 (2004), courts have regarded "an assertion of sovereign immunity under the ATA as being functionally equivalent to an assertion of sovereign immunity under the FSIA." <u>Ungar v. Palestinian Liberation Org.</u>, 402 F.3d 274, 283 (1st Cir. 2005) (internal citation omitted); <u>e.g., Sokolow v. Palestine Liberation Org.</u>, 583 F. Supp. 2d. 451, 457 (S.D.N.Y. 2008) ("The ATA's exclusion, of foreign states and governmental actors from its coverage, is consistent with, and to be applied in accordance with, the ordinary sovereign immunity principles codified in the FSIA."), <u>vacated on different grounds sub nom. Waldman v. Palestinian Liberation Org.</u>, 835 F.3d 317 (2d Cir. 2016). Moving Defendants have offered no reason to construe the ATA's sovereign immunity provision as being more expansive than the FSIA's. Their motion to dismiss pursuant to the ATA's sovereign immunity provision is accordingly denied.

### C. International Comity

Moving Defendants finally move for dismissal pursuant to international comity. They argue that allowing Plaintiffs' suit to move forward will undermine the Lebanese liquidation of JTB and the single, orderly proceeding it provides for disposition of claims against it. This suit will also, they say, inevitably create conflict with a foreign sovereign's policy choices about prioritization of claim payment, potentially creating diplomatic and other tensions.

"American courts have long recognized the particular need to extend comity to foreign bankruptcy proceedings." <u>Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.</u>, 825 F.2d 709, 713 (2d Cir. 1987). That is because deferring to a foreign bankruptcy proceeding "enables the assets of a debtor to be dispersed in an equitable, orderly, and systematic manner, rather than in a haphazard, erratic or piecemeal fashion." <u>Cunard S.S. Co. Ltd. v. Salen Reefer Servs. AB</u>, 773 F.2d 452, 457 (2d Cir. 1985). So although the "extension or denial of comity is within the court's discretion." <u>Allstate Life Ins. Co. v. Linter Grp. Ltd.</u>, 994 F.2d 996, 999 (2d Cir. 1993), the existence of foreign

bankruptcy proceedings "generally requires the dismissal of parallel district court actions." Royal
& Sun All. Ins. Co. of Can. v. Century Int'l Arms Inc., 466 F.3d 88, 92-93 (2d Cir. 2006). Courts
will afford comity to foreign bankruptcies only if those proceedings do not "violate the laws or
public policy of the United States," Banco Economico, 192 F.3d at 246, and if "the foreign court
abides by 'fundamental standards of procedural fairness,'" Allstate, 994 F.2d at 999 (quoting
Cunard, 773 F.2d at 457).

Outside the bankruptcy context there is no general preference favoring abstention—just the
opposite: given the district courts' "virtually unflagging obligation . . . to exercise the jurisdiction
given them," Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976),
"[t]he task of a district court evaluating a request for dismissal based on a parallel foreign
proceeding is not to articulate a justification for the exercise of jurisdiction, but rather to determine
whether exceptional circumstances exist that justify the surrender of that jurisdiction." Royal, 66
F.3d at 93 (emphasis in original). Courts "should be guided by the principles upon which
international comity is based: the proper respect for litigation in and the courts of a sovereign
nation, fairness to litigants, and judicial efficiency." Id.

### 1. The Lebanese Liquidation Would Not Provide an Adequate, Parallel Forum for Plaintiffs to Pursue Their Claims.

When the Second Circuit has sanctioned comity-based abstention, it has done so on the
understanding that the plaintiffs may pursue their claims in the foreign forum. See Banco
Economico, 192 F.3d at 244 ("It is undisputed that [Plaintiff] filed a timely claim to recover the
value of the promissory notes in the Brazilian liquidation"); Allstate, 994 F.2d at 1000 ("[T]here
is no indication that appellants would be prejudiced if they are required to maintain their actions
in Australia."); Cunard, 772 F.3d at 459 ("[T]here is no indication that Cunard will be prejudiced
or treated unjustly if it were to participate in the Swedish bankruptcy proceedings."). Courts

therefore determine whether there exists "a parallel action in an adequate foreign jurisdiction" before abstaining due to international comity. Royal, 466 F.3d at 95-96 ("The existence of a parallel action in an adequate foreign jurisdiction must be the beginning, not the end, of a district court's determination of whether abstention is appropriate."); JP Morgan Chase Bank v. Altos Hornos de Mex., S.A. de C.V., 412 F.3d 418, 424 (2d Cir. 2005); see Bigio v. Coca-Cola Co. 448 F.3d 176, 178 (2d Cir. 2006). That remains true where the foreign proceedings are bankruptcy proceedings. See Royal, 466 F.3d at 92-93.

Moving Defendants do not contend that Plaintiffs would be able to pursue their ATA claims against JTB in Lebanon. Whatever the merits of Lebanon's liquidation law, Moving Defendants have not shown that it (or any other Lebanese law) offers Plaintiffs the ability to assert claims against JTB for having aided and abetted terrorist attacks. This is thus a case in which deferring to the foreign proceeding "threatens the very enforceability of" Plaintiffs' claims. Banco Economico, 192 F.3d at 244. When courts defer to foreign bankruptcy proceedings, the plaintiff is typically seeking a predetermined sum. E.g., id. at 242 ("[Plaintiff] sought to recover on certain promissory notes allegedly guaranteed by the defendant . . . currently subject to an extrajudicial liquidation in Brazil . . . ."). Although a tort claimant is in some sense a creditor, see In re Viking Offshore (USA), 405 B.R. 434 (Bankr. S.D. Tex. 2008) (dismissing based on international comity where Netherlands bankruptcy proceedings would permit plaintiffs to pursue their claim for tortious conversion), Moving Defendants have not shown that Lebanon would permit Plaintiffs to pursue the claims they bring here. They state that creditors "may register their debts in the inventory for such pro rata payment." (D.E. # 185 at 8.) But Plaintiffs have no "debts" to "register." Rather, they have a complex claim brought pursuant to U.S. law that may involve substantial discovery spanning years of underlying facts. This is not a case of a creditor who can

21

simply collect on a promissory note in a foreign bankruptcy proceeding.

Moving Defendants further argue that the law does not require that the foreign bankruptcy be completely "parallel." (Id. at 7). For this proposition they cite to two cases approving of comity-based abstention where the U.S. case was not itself a bankruptcy proceeding. (Id. (first citing Banco Economico, 192 F.3d at 242 (contract suit); and then citing Allstate, 994 F.2d at 999-1000 (securities suit))). But in each of those cases, the court expressly noted that the Plaintiffs would be able to pursue their claims as part of the foreign proceeding. Allstate, 994 F.2d at 1000 ("[T]here is no indication that appellants would be prejudiced if they are required to maintain their actions in Australia."); Banco Economico, 192 F.3d at 249 (plaintiff "received actual notice of the Brazilian proceeding . . . and subsequently filed a timely claim"). Moving Defendants must show that the foreign proceeding provides an adequate and sufficiently parallel forum such that abstention would not "threaten[] the very enforceability of" Plaintiffs' claims. Banco Economico, 192 F.3d at 244. They have not done so.[6]

### 2. Abstention Would Contravene the Laws and Public Policy of the United States.

Abstaining due to international comity would also be improper because it would violate the "public policy of the United States." Id. at 246. JASTA evinces a strong policy of holding accountable in United States courts those who enable terrorist attacks. The statute allows plaintiffs to recover treble damages and "the cost of the suit, including attorney's fees." 18 U.S.C. § 2333(a). The stated purpose of JASTA is to provide "the broadest possible basis" for liability:

> The purpose of this Act is to provide civil litigants with the broadest possible basis, consistent with the Constitution of the United States, to seek relief against persons, entities, and foreign countries . . . that have provided material support . . . to foreign organizations or

---

[6] Plaintiffs further argue that the Lebanese liquidation process would be inadequate because Lebanon is a jurisdiction controlled by Hezbollah—the proverbial fox guarding the henhouse. Moving Defendants contend that there is no "corruption exception" to international comity. I need not reach and do not rely on Plaintiffs' corruption arguments, given the separate bases for denying the motion.

persons that engage in terrorist activities against the United States.

18 U.S.C. § 2333 Statutory Notes (emphasis added).  The legislative history of the ATA confirms

the strong public policy of providing recourse to victims of foreign terrorist attacks in United States

courts, notwithstanding that the relevant events may have occurred abroad.  See 138 Cong. Rec.

S17254–01, S17260 ("[T]he first and best remedy is to bring these terrorists to justice in our courts

of law.") (statement of Sen. Grassley) (emphasis added); see also Statement by President George

H.W. Bush Upon Signing S. 1569, 1992 U.S.C.C.A.N. 3942, 1992 WL 475753 (Oct. 29, 1992) ("I

am pleased that the bill explicitly authorizes an American national to file suit in the United States

for the recovery of treble damages against the perpetrators of international terrorism.") (emphasis

added); 136 Cong. Rec. S4568–01 at S4593 ("With the enactment of this legislation, we set an

example to the world of how the United States legal system deals with terrorists.") (Statement of

Sen. Grassley).[7]  As the Honorable Charles P. Sifton once explained, "the legislative history as

well as the language of the statute demonstrate that the ATA was designed to give American

nationals broad remedies in a procedurally privileged U.S. forum."  Goldberg v. UBS AG, 660 F.

Supp. 2d 410, 422 (E.D.N.Y. 2009).  Foreclosing Plaintiffs' claims against JTB would run afoul

of the strong public policy of enabling American terrorism victims to pursue their claims in

American courts.

Moving Defendants lastly argue that because "JTB's liquidation was precipitated by [the

United States] designating it as an SDGT," that liquidation "is not contrary to U.S. policy but in

---

[7] Plaintiffs also raise the venue provision of the ATA, which states that a "district court shall not dismiss any action brought under section 2333 of this title on the grounds of the inconvenience or inappropriateness of the forum chosen, unless," inter alia, "that foreign court is significantly more convenient and appropriate [and] offers a remedy which is substantially the same as the one available in the courts of the United States." 18 U.S.C. § 2334(d). Although I agree with Moving Defendants that this provision appears to concern forum non conveniens motions rather than comity motions, it further reflects the strength of the United States policy to ensure that victims of terrorism receive relief in American courts. See also 28 U.S.C. § 1605A (disallowing the foreign sovereign immunity defense in cases alleging terrorist acts).

SPA-24

furtherance thereof." (Def. Br. at 38.) But declining to dismiss this proceeding will not unduly impede the Lebanese liquidation. Apart from gesturing at the possibility of incurring litigation costs, Moving Defendants have offered no reason to believe that the Lebanese proceeding will not continue apace. Further, Moving Defendants focus on the wrong policy interest in arguing that dismissing this case would further "the United States' policy of punishing facilitators of terrorist acts." As discussed, JASTA evinces not only a generalized policy of punishing terrorists, but a specific policy of providing a procedurally privileged domestic forum where victims of terrorist attacks may seek justice for the injuries they suffered.

\*    \*    \*

In sum, comity-based dismissal would be inappropriate because the Lebanese liquidation does not provide an adequate parallel proceeding, and abstention would violate this country's public policy. Indeed, Moving Defendants' redressability argument—that any eventual judgment in this case will wholly fail to redress Plaintiffs' injuries—belies the notion that allowing this case to proceed would hamper the ongoing liquidation, let alone upend the "amicable working relationships" between the United States and Lebanon. Altos Hornos, 412 F.3d at 423.

## CONCLUSION

For the foregoing reasons, the motion to substitute is DENIED, the motion to intervene is GRANTED, and the motion to dismiss is DENIED. The Clerk of Court is respectfully directed to enter Muhammad Baasiri as a defendant in this case.


SO ORDERED.

Dated: August 6, 2021
      Brooklyn, New York          /s/ Carol Bagley Amon
                                      Carol Bagley Amon
                                      United States District Judge

SPA-25

§ 1603. Definitions, 28 USCA § 1603

KeyCite Yellow Flag - Negative Treatment
Proposed Legislation

> United States Code Annotated
>     Title 28. Judiciary and Judicial Procedure (Refs & Annos)
>         Part IV. Jurisdiction and Venue (Refs & Annos)
>             Chapter 97. Jurisdictional Immunities of Foreign States

28 U.S.C.A. § 1603

§ 1603. Definitions

Effective: February 18, 2005
Currentness

For purposes of this chapter--

(a) A "foreign state", except as used in section 1608 of this title, includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b).

(b) An "agency or instrumentality of a foreign state" means any entity--

(1) which is a separate legal person, corporate or otherwise, and

(2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and

(3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (e) of this title, nor created under the laws of any third country.

(c) The "United States" includes all territory and waters, continental or insular, subject to the jurisdiction of the United States.

(d) A "commercial activity" means either a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose.

(e) A "commercial activity carried on in the United States by a foreign state" means commercial activity carried on by such state and having substantial contact with the United States.

**CREDIT(S)**

# SPA-26

**§ 1603. Definitions, 28 USCA § 1603**

---

(Added Pub.L. 94-583, § 4(a), Oct. 21, 1976, 90 Stat. 2892; amended Pub.L. 109-2, § 4(b)(2), Feb. 18, 2005, 119 Stat. 12.)

Notes of Decisions (384)

28 U.S.C.A. § 1603, 28 USCA § 1603
Current through PL 117-51.

---

**End of Document**　　　　　　　　　　　　　　© 2021 Thomson Reuters. No claim to original U.S. Government Works.