# 21-2019

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

❖◆❖

ROBERT BARTLETT, *et al.*,

*Plaintiffs-Appellees,*

—against—

DR. MUHAMMAD BAASIRI,

*Movant-Appellant,*

JAMMAL TRUST BANK SAL,

*Defendant-Appellant.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFFS-APPELLEES

MICHAEL RADINE
GARY M. OSEN
DINA GIELCHINSKY
AARON SCHLANGER
OSEN LLC
190 Moore Street, Suite 272
Hackensack, New Jersey 07601
(201) 265-6400

*Attorneys for Plaintiffs-Appellees*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................... 1

STATEMENT OF THE ISSUES ............................................................. 4

STATEMENT OF THE CASE ............................................................... 5

   I.    Background ................................................................ 5

   II.   The Motions at Issue ................................................... 8

   III.  The Decision Below ..................................................... 12

JURISDICTIONAL STATEMENT ...................................................... 14

STANDARD OF REVIEW ................................................................. 15

SUMMARY OF ARGUMENT ............................................................ 16

ARGUMENT ..................................................................................... 23

   I.    *Dole Food* Makes Clear That Appellants Do Not Enjoy
       Sovereign Immunity in This Case. .............................. 23

      A.    The District Court Correctly Held that Appellants Are Not
            Entitled to Sovereign Immunity Because JTB Was a
            Privately-Owned Bank at the Time of Filing. ...................... 23

      B.    The Supreme Court's Time-of-Filing Holding in *Dole Food*
            Was Not "Dicta." ................................................................. 25

      C.    *Dole Food*'s Time-of-Filing Rule Squarely Applies to
            Assertions of Sovereign Immunity Raised Under the
            FSIA. .................................................................................. 30

      D.    Appellants' Attempts to Cabin *Dole Food* Based on the
            Purported "Purposes" of the FSIA Are Unavailing. ............. 39

         1.    Dole Food's Time-of-Filing Rule Is Not Limited to Pre-
              Filing Privatizations. ........................................................ 41

2.    Dole Food's Time-of-Filing Rule Is Not Limited to
      Instrumentalities that Are Majority-Owned by Foreign
      States. ..................................................................................44

II.   The District Court Properly Exercised Its Discretion in Denying
      Dr. Baasiri's Motion to Substitute Himself for JTB. ................52

   A. The District Court Correctly Assessed that Even *if* JTB's
      Interests Had Transferred to Dr. Baasiri, Substitution Is
      Inappropriate in This Case. ................................................52

   B. Dr. Baasiri's Purported Status as the "Real Party in
      Interest" Does Not Alter *Dole Foods* or Require
      Substitution. ........................................................................56

CONCLUSION .........................................................................................64

ii

# TABLE OF AUTHORITIES

## Cases

*Abrams v. Société Nationale des Chemins de Fer Francais*,
  332 F.3d 173 (2d Cir. 2003) ................................................. 48

*Abrams v. Société Nationale Des Chemins De Fer Francais*,
  389 F.3d 61(2d Cir. 2004) ............................................. *passim*

*Advanced Mktg. Grp., Inc., v. Bus. Payment Sys., LLC*,
  269 F.R.D. 355 (S.D.N.Y. 2010) ........................................ 53

*Allied Fid. Ins. Co. v. Cont'l Illinois Nat. Bank & Tr. Co. of Chicago*,
  677 F. Supp. 562 (N.D. Ill. 1988) ...................................... 63

*Ashraf-Hassan v. Embassy of France in the U.S.*,
  40 F. Supp. 3d 94 (D.D.C. 2014) ....................................... 43

*Ashraf-Hassan v. Embassy of France in the U.S.*,
  610 F. App'x 3 (D.C. Cir. 2015) ........................................ 43

*Beers v. Arkansas*,
  61 U.S. (20 How.) 527 (1857) .......................................... 33

*Bennett v. Islamic Republic of Iran*,
  618 F.3d 19 (D.C. Cir. 2010) ........................................... 47

*Brown v. Gardner*,
  513 U.S. 115 (1994) .................................................... 45

*Callejo v. Bancomer, S.A.*,
  764 F.2d 1101 (5th Cir. 1985) ......................................... 34

*Carr v. Alta Verde Indus., Inc.*,
  931 F.2d 1055 (5th Cir. 1991) ......................................... 36

*CIT, Inc. v. 170 Willow St. Assocs.*,
  No. 93-cv-1201-CSH, 1997 WL 528163
  (S.D.N.Y. Aug. 26, 1997) ........................................... 36, 37

*Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*,
527 U.S. 666 (1999) ............................................................... 33

*Connectu LLC v. Zuckerberg*,
522 F.3d 82 (1st Cir. 2008) ................................................... 35

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
932 F.3d 126 (3d Cir. 2019) .................................................. 39

*Dole Food Co. v. Patrickson*,
538 U.S. 468 (2003) ...................................................... *passim*

*Drexel Burnham Lambert Grp. Inc. v. Galadari*,
12 F.3d 317 (2d Cir. 1993) ........................................ 60, 61, 62

*ELCA Enterprises, Inc. v. Sisco Equip. Rental & Sales, Inc.*,
53 F.3d 186 (8th Cir. 1995) .......................................... 15, 57

*Eur. Cmty. v. RJR Nabisco, Inc.*,
764 F.3d 129 (2d Cir. 2014) ............................... 21, 27, 41, 58

*F.D.I.C. v. Wrapwell Corp.*,
922 F. Supp. 913 (S.D.N.Y. 1996) ........................................ 63

*Filler v. Hanvit Bank*,
378 F.3d 213 (2d Cir. 2004) .................................................. 42

*Finanz AG Zurich v. Banco Economico S.A.*,
192 F.3d 240 (2d Cir. 1999) .................................................. 59

*Ford Motor Co. v. United States*,
688 F.3d 1319 (Fed. Cir. 2012) ............................................ 38

*Freeport-McMoRan, Inc. v. K N Energy, Inc.*,
498 U.S. 426 (1991) ...................................................... 57, 58

*Freund v. Republic of France*,
592 F. Supp. 2d 540 (S.D.N.Y. 2008) ........................... 27, 32, 50

*Freund v. Societe Nationale des Chemins de fer Francais*,
391 F. App'x 939 (2d Cir. 2010) .......................................... 27

iv

*Green v. Hininger*,
    557 F. App'x 773 (10th Cir. 2014) ........................................................ 14

*Grupo Dataflux v. Atlas Glob. Grp., L.P.*,
    541 U.S. 567 (2004) ...........................................................20, 35, 37, 41

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*,
    484 U.S. 49 (1987) ................................................................................. 36

*Hong Kong Deposit & Guar. Co. v. Hibdon*,
    602 F. Supp. 1378 (S.D.N.Y. 1985) ................................................ 61, 64

*In re Chalasani*,
    92 F.3d 1300 (2d Cir. 1996) ............................................................ 16, 53

*In re Pub. Serv. Co. of New Hampshire*,
    879 F.2d 987 (1st Cir. 1989) ................................................................ 14

*Iowa Tribe of Kan. & Neb. v. Salazar*,
    607 F.3d 1225 (10th Cir. 2010) ....................................................... 33, 38

*Kaplan v. Lebanese Canadian Bank, SAL*,
    999 F.3d 842 (2d Cir. 2021) ................................................................... 6

*Keene Corp. v. United States*,
    508 U.S. 200 (1993) ........................................................................ 20, 24

*Kirschenbaum v. 650 Fifth Ave. & Related Properties*,
    830 F.3d 107 (2d Cir. 2016) ................................................................. 19

*Klein ex rel. Qlik Tech., Inc. v. Qlik Tech., Inc.*,
    906 F.3d 215 (2d Cir. 2018) ................................................................. 30

*Kulawy v. United States*,
    917 F.2d 729 (2d Cir. 1990) ................................................................. 38

*Massachusetts v. United States*,
    333 U.S. 611 (1948) .............................................................................. 29

*Maysonet-Robles v. Cabrero*,
    323 F.3d 43 (1st Cir. 2003) .................................................................. 33

*Navarro Savings Ass'n v. Lee*,
    446 U.S. 458 (1980) ............................................................................ 61

*New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*,
    101 F.3d 1492 (3d Cir. 1996) ...................................................... 21, 37

*Nuveen Mun. Tr. ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.*,
    692 F.3d 283 (3d Cir. 2012) ................................................. 33, 36, 37

*Ocean Line Holdings Ltd. v. China Nat. Chartering Corp.*,
    578 F. Supp. 2d 621 (S.D.N.Y. 2008) .......................................... 27

*Oliver American Trading Co., Inc. v. Government of the United States of Mexico*,
    5 F.2d 659 (2d Cir. 1924) ............................................................... 34

*Olympia Exp., Inc. v. Linee Aeree Italiane, S.P.A.*,
    509 F.3d 347 (7th Cir. 2007) .......................................... 19, 22, 28, 42

*Organic Cow, LLC v. Ctr. For New England Dairy Compact Rsch.*,
    335 F.3d 66 (2d Cir. 2003) .............................................................. 15

*Orient Min. Co. v. Bank of China*,
    506 F.3d 980 (10th Cir. 2007) ....................................................... 28

*R.R. Co. v. Alabama*,
    101 U.S. 832 (1879) ........................................................................ 33

*Republic of Austria v. Altmann*,
    541 U.S. 677 (2004) ....................................................... 3, 18, 26, 35

*RJR Nabisco, Inc. v. Eur. Cmty.*,
    579 U.S. 325 (2016) ........................................................................ 21

*Rubin v. Islamic Republic of Iran*,
    138 S. Ct. 816 (2018) ................................................................. 19, 27

*Samantar v. Yousuf*,
    560 U.S. 305 (2010) ................................................................. *passim*

*San Filippo v. U.S. Tr. Co. of New York*,
  737 F.2d 246 (2d Cir. 1984) .................................................................. 14

*Schooner Exchange v. McFaddon*,
  7 Cranch 116 (1812) ............................................................................ 43

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  597 B.R. 466 (Bankr. S.D.N.Y. 2019) .................................................. 36

*Spear Mktg., Inc. v. BancorpSouth Bank*,
  791 F.3d 586 (5th Cir. 2015) ................................................... 20, 35, 37

*St. Paul Mercury Indem. Co. v. Red Cab Co.*,
  303 U.S. 283 (1938) .............................................................................. 57

*TIG Ins. Co. v. Republic of Argentina*,
  967 F.3d 778 (D.C. Cir. 2020) ...................................................... *passim*

*U.S. Fid. & Guar. Co. v. Exec. Ins. Co.*,
  893 F.2d 517 (2d Cir. 1990) ................................................................. 63

*United States v. Brennan*,
  650 F.3d 65 (2d Cir. 2011) ................................................................... 30

*United States v. Pangang Grp. Co., Ltd.*,
  6 F.4th 946 (9th Cir. 2021) ............................................................ 28, 32

*United States v. Title Ins. & Tr. Co.*,
  265 U.S. 472 (1924) .............................................................................. 30

*USX Corp. v. Adriatic Ins. Co.*,
  345 F.3d 190 (3d Cir. 2003) ........................................................... 28, 44

*Wolf v. Banco Nacional de Mexico, S.A.*,
  739 F.2d 1458 (9th Cir. 1984) .............................................................. 34

*Yousuf v. Samantar*,
  552 F.3d 371 (4th Cir. 2009) ......................................................... 22, 28

vii

## Statutes

18 U.S.C. § 2333(a) ................................................................ 1

18 U.S.C. § 2333(d) ................................................................ 1

28 U.S.C. § 1603(b) ........................................................ *passim*

Justice Against Sponsors of Terrorism Act, Pub. L. 114-222, 130 Stat. 852 (2016) ................................................................... 5

## Rules

Fed. R. Civ. P. 12(b)(2) .......................................................... 7

Fed. R. Civ. P. 12(b)(6) .......................................................... 7

Fed. R. Civ. P. 25(c) ................................................. 15, 16, 53

## PRELIMINARY STATEMENT

The Supreme Court has unequivocally held that when assessing claims of sovereign immunity under the Foreign Sovereign Immunities Act, "instrumentality status is determined at the time of the filing of the complaint." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 480 (2003). When Plaintiffs-Appellees ("Plaintiffs") sued Appellant Jammal Trust Bank ("JTB") on January 1, 2019, under the Anti-Terrorism Act, 18 U.S.C. § 2333(a) and (d), it was a privately-owned Lebanese commercial bank. Almost nine months later, on August 29, 2019, the U.S. Treasury Department designated JTB as a Specially Designated Global Terrorist ("SDGT"). As a result of that designation, JTB's banking operations were crippled, and it was placed into liquidation by Lebanon's Central Bank.

JTB argues that although it only entered state-supervised liquidation after Plaintiffs filed their complaint, it is nevertheless entitled to immunity under the Foreign Sovereign Immunities Act ("FSIA"). According to JTB, the Central Bank of Lebanon, through its agent, the intervenor and co-appellant Dr. Muhammad Baasiri, is the

1

real party in interest and is immune as an instrumentality of Lebanon, pursuant to section 1603(b) of the FSIA.[1]

But because controlling Supreme Court precedent forecloses immunity premised on post-filing events, Appellants' entire brief constitutes a tortured effort at obscuration. In the most charitable view, it reflects creative lawyering, but given *Dole Food*'s well-settled and dispositive precedent on the controlling question of law, Appellants' grounds for appeal border on an abuse of the judicial process.

Their leading argument is that *Dole Food*'s time-of-filing holding—which this Court called "unequivocal"—is in fact mere dicta. They also argue the time-of-filing rule is limited to diversity or removed cases involving state law, although *Dole Food* was interpreting the FSIA statute, not the diversity or removal statutes. Finally, Appellants argue that the "purposes" of the FSIA require limiting *Dole Food* to its precise facts. As shown below, court after court, including this one, have rejected these arguments, and recognized that *Dole Food*'s holding means what it says.

---

[1]    Plaintiffs have never named Dr. Baasiri, the Central Bank of Lebanon, or any sovereign entity as a defendant in this case.

2

Indeed, although they fill their brief with case law, Appellants do not cite a single case stating that *Dole Food*'s time-of-filing rule is dicta or does not apply to the FSIA, or that the FSIA's purposes limit the rule's application in any of the ways they urge. Most of Appellants' cases are entirely inapposite because they do not relate to the FSIA (many of them are vastly older than the 1976 statute or the 2003 *Dole Food* decision) or do not relate to the time-of-filing rule. Some cases they misconstrue, and some are contrary to Second Circuit law—one was retracted by its own circuit *because* of *Dole Food*. And much of Appellants' case law is included only to support propositions not at issue in this appeal, such as whether central banks are considered instrumentalities, whether they can operate through agents, whether a liquidator is in some cases a real party in interest, and so on.

Appellants' few relevant cases include three precedential decisions that specifically recognize that *Dole Food*'s time-of-filing rule is binding and applicable to the FSIA, but Appellants simply ignore or reject that recognition. These cases are two Supreme Court decisions, *Republic of Austria v. Altmann*, 541 U.S. 677, 698 (2004) and *Samantar v. Yousuf*, 560 U.S. 305, 322 n.17 (2010), and this Court's decision in *Abrams v.*

3

*Société Nationale Des Chemins De Fer Francais*, 389 F.3d 61, 64 (2d Cir. 2004). Appellants simply ignore the relevant language in the Supreme Court cases and suggest this Court's summary of *Dole Food*'s time-of-filing rule in *Abrams* is "inaccurate." Br. at 37.

The result is a frivolous appeal, supported by a brief that goes to absurd lengths to sidestep well-settled and controlling law. This Court should reject it.

## STATEMENT OF THE ISSUES

1.     Whether the district court correctly applied the Supreme Court's holding that "instrumentality status is determined at the time of the filing of the complaint" to conclude that JTB was not entitled to sovereign immunity because it was a privately-owned bank, and Dr. Baasiri was not an interested party, at the time Plaintiffs filed their complaint against it.

2.     Whether the district court properly applied its discretion in declining to substitute Dr. Baasiri for JTB because it would not expedite or simplify the case.

# STATEMENT OF THE CASE

## I.   Background

Plaintiffs are former U.S. military service members who were wounded, and the families of U.S. service members who were killed or wounded, in hundreds of horrific terrorist attacks in Iraq from 2004 through 2011. These attacks were jointly committed by the Foreign Terrorist Organizations ("FTOs") Hezbollah and Iran's Islamic Revolutionary Guard Corps ("IRGC"), along with their Iraqi proxy terror cells.

On January 1, 2019, Plaintiffs brought suit against 11 Lebanese banks, including JTB, under the ATA as amended by the Justice Against Sponsors of Terrorism Act ("JASTA"). Plaintiffs alleged that these private commercial banks aided and abetted (in addition to other theories of liability) the attacks by laundering billions of dollars for Hezbollah for more than a decade. Plaintiffs amended the complaint on August 2, 2019, for unrelated reasons.

On August 29, 2019, the Treasury Department designated JTB as an SDGT for largely the same reasons Plaintiffs alleged in their amended

5

complaint for JTB's liability. In its announcement of JTB's designation,

Treasury explained:

> "Treasury is targeting Jammal Trust Bank and its subsidiaries for brazenly enabling Hizballah's financial activities. Corrupt financial institutions like Jammal Trust are a direct threat to the integrity of the Lebanese financial system. Jammal Trust provides support and services to Hizballah's Executive Council and the Martyrs Foundation, which funnels money to the families of suicide bombers …."

> Jammal Trust knowingly facilitates the banking activities of U.S.-designated entities openly affiliated with Hizballah.… Hizballah has used accounts at Jammal Trust to pay its operatives and their families, and Jammal Trust has actively attempted to conceal its banking relationship with numerous wholly owned Martyrs Foundation subsidiaries…. Such a scheme is representative of the deep coordination between Hizballah and Jammal Trust, which dates back to at least the mid-2000s and which spans many of the bank's branches in Lebanon.

JA-881-82 (quoting the Under Secretary for Terrorism and Financial

Intelligence).[2]

As a result of the designation, which effectively cut off JTB's ability

to transact business in U.S. dollars, JTB went into liquidation on

September 27, 2019, under the auspices of Lebanon's Central Bank.

---

[2]    The "Martyrs Foundation" is the same entity supporting JASTA liability against another Lebanese bank (and *Bartlett* Defendant) Lebanese Canadian Bank in *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 849 (2d Cir. 2021).

However, JTB did not substantively raise this fact to the district court or Plaintiffs when the liquidation occurred or for nearly an entire year thereafter (despite continuing to actively litigate the case through two eminent law firms). On January 31, 2020, four months after it went into liquidation, it filed a motion to dismiss the suit on Rule 12(b)(2) and 12(b)(6) grounds,[3] separately from the other Defendants.[4] It fully briefed the motion, with no suggestion that JTB's liquidation provided a basis for dismissal; in fact it did not mention the liquidation at all, except in the signature block, which stated that White & Case LLP and, in the reply brief, White & Case and Baker Hostetler LLP, were "Counsel for Defendant Jammal Trust Bank SAL (in liquidation)." No. 19-cv-7, ECF Nos. 134-1, 135.

On August 31, 2020, the district court held oral argument on all Defendants' motions to dismiss. JTB's counsel mentioned the liquidation but did not suggest that was a basis for dismissal or that the Court lacked subject matter jurisdiction over it. The next day, however, JTB's counsel

---

[3] Under the lower court's bundling rule, JTB served its opening brief on Plaintiffs on November 1, 2019, also after it began the liquidation process.

[4] The other Defendants filed a joint motion to dismiss on similar grounds, calling themselves the "Moving Defendants"; JTB was previously included in that joint defense group, but was apparently expelled upon being designated an SDGT.

filed a letter on behalf of the bank and Dr. Baasiri, a non-party who was not previously mentioned in the case, requesting a pre-motion conference announcing the now nearly year-old liquidation and stating their intent to move for (1) substitution or, in the alternative, intervention, and (2) dismissal, premised on Dr. Baasiri's asserted sovereign immunity, or international comity, or because Plaintiffs' claims were not redressable as to JTB.

## II.   The Motions at Issue

On December 30, 2020, JTB and Dr. Baasiri filed a joint motion for the types of relief largely presented in their pre-motion conference letter: (1) substitution of Dr. Baasiri for JTB or his intervention, and (2) dismissal on the grounds that Plaintiffs' claims were not redressable as to JTB, that JTB enjoyed Dr. Baasiri's alleged sovereign immunity from suit, and in deference to the Lebanese liquidation proceedings under international comity.

In support of their motions, Dr. Baasiri submitted two declarations describing the liquidation process. He declared that liquidations "typically take two to five years to conclude," after which point JTB will no longer exist or have a successor entity. JA-961-63, ¶¶ 41, 43, 48, 57.

And, to show that Plaintiffs' claims against JTB were not redressable, Dr. Baasiri declared that Plaintiffs' claims would not be recognized in the liquidation. JA-960, 963, ¶¶ 35, 56 (specifically, that claims of non-depositors such as Plaintiffs "will not be recognized" by the liquidator if, *inter alia*, "there is no surplus from which to pay them," and "[b]ecause JTB's liabilities exceed its assets, there is no surplus to pay any judgment in plaintiffs' favor"). He also revealed that JTB has approximately $8 million in its correspondent account at Standard Chartered Bank in New York, which had been and remains frozen by operation of the SDGT designation. JA-958-59, ¶¶ 10, 20.

Plaintiffs opposed the motion, largely on the grounds discussed below. Plaintiffs also noted the unusual nature of JTB, an SDGT designated for its willing assistance to Hezbollah, asking a U.S. court to dismiss the ATA claims of U.S. citizens injured by Hezbollah, in deference to a liquidation governed by a central bank accused by U.S. officials of financing Hezbollah in "attacks against the U.S." *See, e.g.*, JA-1153-55 ("Current and former U.S. and allied officials …. said the central bank has been pivotal in financing the U.S.-designated terror group Hezbollah, including attacks against the U.S. and its allies," and noted

9

"the central bank's long-serving governor and government regulators['] tie[s] to Hezbollah.").

Indeed, JTB argued that relieving an SDGT of having to answer for its role in the murder and maiming of hundreds of Americans and injuring their family members (and thereby denying Plaintiffs access to its $8 million frozen in New York) was "not contrary to U.S. policy but in *furtherance* thereof."[5] SPA-23-24 (quoting JTB Mem. in Supp. Mot. to Dismiss, No. 19-cv-7, ECF No. 182, at 38). JTB reasoned that its liquidation "punishes JTB in the most severe manner possible, effectuating the United States' policy of punishing facilitators of terrorist acts," as "Lebanese liquidation law mandated that JTB cease all banking operations, its assets are now being liquidated under the direction and control of the Liquidator and Central Bank, and its shareholders have

---

[5]     Plaintiffs also suggested the Central Bank of Lebanon might not administer a fair enough liquidation to satisfy international comity given its endemic corruption, including multiple, ongoing criminal investigations into its governor. *See, e.g.*, JA-1139, 1142, 1145, 1147-49, 1153-59 ("Lebanon's Central Bank Fuels Corruption, Extremism Concerns"), 1163, 1178-80, 1189-93. In an eyebrow-raising response, Appellants argued that "There Is No 'Corruption Exception' to the Doctrine of International Comity." JTB Reply Mem., No. 19-cv-7, ECF No. 185, at 5. *See also* SPA-22 n.6.  Deference to a corrupt system cannot possibly be in furtherance of U.S. public policy.

10

lost all equity." JTB Mem. at 38.[6] That "punishment" includes "prioritizing" depositors, Br. at 31, which, according to the U.S. Treasury Department, include senior Hezbollah officials and entities. As shown below in Section I.D, Plaintiffs disagree that it is in furtherance of U.S. policy for Hezbollah officials and U.S.-designated entities to recover JTB assets instead of Plaintiffs.

Plaintiffs also noted the substitution and intervention motions were untimely. Appellants had made the motions nearly a year after JTB entered state-supervised liquidation. Appellants' counsel stated that communications with Dr. Baasiri were hampered because Dr. Baasiri "had to flee numerous times" to "a mountainous region" during Lebanon's ongoing "civil war." JA-954. Plaintiffs noted, however, that JTB "in liquidation" continued actively litigating the matter during the intervening year without raising its purported immunity at all.

---

[6]     As the District Court explained, Appellants "focus on the wrong policy interest in arguing that dismissing this case would further 'the United States' policy of punishing facilitators of terrorist acts,'" because "JASTA evinces not only a generalized policy of punishing terrorists, but a specific policy of providing a procedurally privileged domestic forum where victims of terrorist attacks may seek justice for the injuries they suffered." SPA-24.

## III. The Decision Below

The district court denied all of Appellants' requested relief, except granting Dr. Baasiri's motion to intervene as of right, which he presented as an alternative to substitution. The district court correctly denied dismissal based on foreign sovereign immunity because the Supreme Court in *Dole Food* held "instrumentality status [must] be determined at the time suit is filed," and "[i]t is undisputed that JTB lacked instrumentality status 'at the time suit [was] filed.'" SPA-16 (quoting *Dole Food*, 538 U.S. at 478).

The district court rejected JTB's comity argument because, "[w]hen the Second Circuit has sanctioned comity-based abstention, it has done so on the understanding that the plaintiffs may pursue their claims in the foreign forum," and Appellants "do not contend that Plaintiffs would be able to pursue their ATA claims against JTB in Lebanon." SPA-20-21. Specifically, Appellants "have not shown that Lebanon would permit Plaintiffs to pursue the claims they bring here." *Id.* at 21. *See also id.* at 21-22 (explaining that "a complex claim brought pursuant to U.S. law" is not equivalent to "a promissory note in a foreign bankruptcy proceeding").

12

The district court rejected the argument that "mid-suit insolvency [would] render Plaintiffs' injuries non-redressable." SPA-12-13. That argument "would have the Court assess standing based on the likelihood that a defendant will actually satisfy a money judgment"; however, "[t]he relevant question is whether the requested judgment—assuming that judgment is satisfied—would redress Plaintiffs' injuries," and "[t]here is no dispute here that a satisfied money judgment would redress Plaintiffs' injuries." SPA-13.

Finally, the district court denied the motion for substitution, explaining that even where an interest is transferred from a party to a non-party, the "[t]he primary consideration in deciding a motion pursuant to Rule 25(c) is whether substitution will expedite and simplify the action." SPA-4. The district court found that substitution would "complicate the proceedings and unfairly frustrate Plaintiffs' ability to obtain a judgment against the party they properly sued: JTB," as well as complicating discovery. SPA-4-5. The district court then noted that Appellants' "only argument that substitution would simplify this case is that "'it is legally more direct and appropriate to permit the Liquidator to raise the sovereignty-based defenses of sovereign immunity and

international comity,'" but those "arguments for dismissal are meritless whether they are asserted by JTB or Dr. Baasiri." SPA-4.

Despite facing settled law, Appellants brought this appeal, and sought (and received) a stay of discovery in the case below as to JTB given this appeal.

## JURISDICTIONAL STATEMENT

Plaintiffs do not oppose this Court's jurisdiction but note that the appeal is substantively frivolous. As Appellants' cited case states (Br. at 2-3), a "nonfrivolous claim of absolute immunity … makes the district court's denial of summary judgment appealable under the 'collateral final order' doctrine…." *San Filippo v. U.S. Tr. Co. of New York*, 737 F.2d 246, 248 (2d Cir. 1984). As explained below, this appeal is frivolous because it is directly contrary to settled law set forth in *Dole Food. See, e.g., Green v. Hininger*, 557 F. App'x 773, 777 (10th Cir. 2014) ("We find that this appeal is frivolous" because appellant's "arguments are contrary to settled law …."). *See also In re Pub. Serv. Co. of New Hampshire*, 879 F.2d 987, 990 (1st Cir. 1989) (assessing costs where the opposed "principles of law are well known").

This applies equally to this Court's "pendent jurisdiction" over Appellants' appeal of the denial of substitution, which they admit "hinge[s] upon the district court's belief that *Dole Food* rendered Appellants' sovereign immunity motion 'meritless.'" Br. at 3.

## STANDARD OF REVIEW

Appellants misstate the standard of review for a denial of substitution. Denying substitution is discretionary under Rule 25(c), and thus reviewed for abuse of discretion. "Substitution of a successor in interest … under Rule 25(c) is generally within the sound discretion of the trial court." *Organic Cow, LLC v. Ctr. For New England Dairy Compact Rsch.*, 335 F.3d 66, 71 (2d Cir. 2003) (citation omitted). *See also ELCA Enterprises, Inc. v. Sisco Equip. Rental & Sales, Inc.*, 53 F.3d 186, 190 (8th Cir. 1995) ("We review district court determinations regarding substitution for an abuse of discretion.").

Appellants erroneously argue instead that this Court must apply a mixed *de novo*/clear error standard for reviewing a "determination of 'whether an entity is a transferee of interest' so as to warrant an exercise of such discretion." Br. at 9 (quoting *Organic Cow*, 335 F.3d at 71). Furthermore, they argue that this Court "should review the

[substitution] ruling *de novo*" because the district court found that substitution would not simplify matters because Appellants' only contrary argument was negated after the district court denied the motion to dismiss. *Id.*

However, as explained further in below in Section II.A, actually determining whether an entity is a transferee of interest is only required for *granting* substitution, not denying it as the district court did here. A district court "may" deny substitution even where an interest is transferred, but may not grant substitution where it is not. Fed. R. Civ. P. 25(c). *See In re Chalasani*, 92 F.3d 1300, 1312 (2d Cir. 1996) ("Although granting substitution of one party in litigation for another under Rule 25(c) is a discretionary matter for the trial court, such discretion may not be abused by allowing substitution in the absence of a transfer of interest.") (citation omitted). Finally, the failure of Appellants' arguments for dismissal does not render the district court's substitution decision non-discretionary or subject to *de novo* review.

## SUMMARY OF ARGUMENT

As detailed below, Appellants' grounds for appeal are at best an exercise in misdirection and are arguably an abuse of the judicial process.

The district court correctly observed that in *Dole Food* the Supreme Court held that "instrumentality status [must] be determined at the time suit is filed." SPA-16 (quoting *Dole Food*, 538 U.S. at 478). The Supreme Court has repeatedly reaffirmed this decision, as has this Court and every circuit to consider it. Accordingly, controlling Supreme Court precedent forecloses Appellants' assertion that JTB's entry into state-supervised liquidation months after this lawsuit was commenced bestows sovereign immunity upon it under the FSIA.

Appellants make three arguments to avoid the application of the time-of-filing rule: (1) that it is mere dicta, and if it is not dicta, then (2) it does not apply to non-removed, federal question cases and, if it does apply to federal question cases, (3) it is limited to the precise facts of *Dole Food*. Each of these arguments is wrong.

First, the time-of-filing rule in *Dole Food* is binding precedent. One of the two questions on which the Supreme Court granted certiorari in that case was the specific question of when "a corporation's instrumentality status is defined," 538 U.S. at 471, and it summarized its answer to that question by stating: "we *hold* second that instrumentality status is determined at the time of the filing of the

17

complaint." *Id.* at 480 (emphasis added). Nevertheless, Appellants ignore the certiorari order and argue that the Supreme Court's description of its decision as a "holding" was only an "offhand reference." Br. at 16-20. They further argue that because it is one of two holdings in the case, it is "unnecessary" to the decision and thus dicta (without explaining why that would not be true of the other holding, instead).

Yet, the Supreme Court has repeatedly reaffirmed this "offhand reference." For example, the Court reiterated that "[i]n *Dole Food*, … we held that whether an entity qualifies as an 'instrumentality' of a 'foreign state' for purposes of the FSIA's grant of immunity depends on the relationship between the entity and the state at the time suit is brought rather than when the conduct occurred." *Altmann*, 541 U.S. at 698. *See also Samantar*, 560 U.S. at 322 n.17 ("[I]nstrumentality status [must] be determined at the time suit is filed") (quoting *Dole Food*, 538 U.S. at 478).

Similarly, this Court described *Dole Food* as "*holding unequivocally that an entity's status as an instrumentality of a foreign state should be 'determined at the time of the filing of the complaint*'" *Abrams*, 389 F.3d at 64 (quoting *Dole Food*, 538 U.S. at 478) (emphasis added). And, more recently, it explained that "[b]ecause jurisdiction 'depends upon the state

18

of things at the time ... the action [is] brought,' an entity's agency or instrumentality status under the FSIA 'is determined at the time of the filing of the complaint,' ...." *Kirschenbaum v. 650 Fifth Ave. & Related Properties*, 830 F.3d 107, 126 (2d Cir. 2016), *abrogated on other grounds by Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816 (2018) (quoting *Dole Food*, 538 U.S. at 478).

Other circuits agree. For example, the Seventh Circuit explained that in *Dole Food*, "the Supreme Court had held that whether the defendant is a foreign state within the meaning of the Foreign Sovereign Immunities Act is to be determined on the basis of the facts in existence when the suit was filed." *Olympia Exp., Inc. v. Linee Aeree Italiane, S.P.A.*, 509 F.3d 347, 349 (7th Cir. 2007). In fact, as shown below, no circuit has even suggested the time-of-filing holding is dicta.

Undaunted, Appellants argue that the time-of-filing rule "does not apply to federal-question cases that have not been removed." Br. at 20 (capitalizations omitted). They contend that the time-of-filing rule is generally understood as limited to diversity jurisdiction cases—but because *Dole Food* was a removed case, not a diversity case, then the Supreme Court must have meant to extend it to removed cases and no

19

further. But *Dole Food* was interpreting the language of the FSIA (specifically, 28 U.S.C. § 1603(b)), not the removal statute, and expressly premised its holding on the fact that instrumentalities are defined in the FSIA using the present tense: "Construing § 1603(b) so that the present tense has real significance is consistent with the 'longstanding principle that "the jurisdiction of the Court depends upon the state of things at the time of the action brought."'" 538 U.S. at 478 (quoting *Keene Corp. v. United States,* 508 U.S. 200, 207 (1993)).

Appellants' cases discussing the time-of-filing rule, on the other hand, do *not* relate to the FSIA. Moreover, even outside the FSIA context, courts have rejected JTB's argument—for example, JTB argues that *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 574 (2004), limits the time-of-filing rule to diversity cases. But the Fifth Circuit noted that "nothing in [*Grupo Dataflux*] suggests that the rule is not equally applicable to federal question cases." *Spear Mktg., Inc. v. BancorpSouth Bank*, 791 F.3d 586, 592-93 (5th Cir. 2015) (footnote omitted). As shown below, several of Appellants' cases are not just irrelevant but are contrary to the law in this Circuit for the time-of-filing propositions they *do* support—and one was rejected by the circuit that issued it, *because of*

20

*Dole Food. See infra* at 37 (discussing *New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492 (3d Cir. 1996)).

Appellants also argue that the "purposes" of the FSIA require limiting *Dole Food*'s time of filing rule such that it only applies to entities which *cease* being instrumentalities *before* suit is filed or to instrumentalities that are majority-owned by foreign states, rather than to those that are organs. But *Dole Food* suggests no such limitations, and those limitations have been repeatedly rejected by other courts, including this one; Appellants cite no cases holding otherwise. Courts have even rejected the interpretation of the FSIA's purposes that Appellants urge here.

For example, this Court applied *Dole Food*'s time-of-filing rule to a post-filing change in status in deciding that the European Community's post-filing incorporation into the European Union did not alter jurisdiction "as the court's subject matter jurisdiction and a party's instrumentality status for purposes of § 1603 are both determined at the time when the complaint is filed." *Eur. Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 129, 143 n.15 (2d Cir. 2014), *rev'd and remanded on other grounds*, 579 U.S. 325 (2016). The Seventh Circuit came to the same

conclusion in *Olympia Exp.*, and the D.C. Circuit in *TIG Ins. Co. v. Republic of Argentina* explained that a contrary view would contravene the purposes of the FSIA by incentivizing "gamesmanship" from foreign states by nationalizing assets that come under suit. 967 F.3d 778, 785 (D.C. Cir. 2020).

Appellants' argument that *Dole Food*'s application of the time of filing rule to the FSIA does not apply to state organs is refuted by the fact that the statute describes both organs and majority-owned entities in the present tense: "[an instrumentality is an entity] which *is* an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest *is* owned by a foreign state or political subdivision thereof …." § 1603(b)(2) (emphasis added). Appellants are therefore relegated to the assertion that the word "is" means different things in the same sentence, a position rejected by a number of courts, including as to § 1603(b)(2) itself in *Yousuf v. Samantar*, 552 F.3d 371, 381 (4th Cir. 2009), *aff'd and remanded*, 560 U.S. 305 (2010).

Finally, having articulated no remotely plausible basis for asserting sovereign immunity in the teeth of unambiguous Supreme Court precedent, Appellants urge this Court to find that the district court

22

"committed legal error" in denying its motion to substitute Dr. Baasiri for JTB pursuant to Rule 25(c) because it did not make a factual determination that an interest transferred before considering expedition. But the district court assumed *arguendo* that the interest had transferred; making a factual determination that it had is only required for *granting* substitution, not denying it. The district court clearly stated that *even if there was a transfer of interest*, it would deny substitution.

As with the entirety of their brief, this final rhetorical detour is intended solely to deflect from the glaring central defect of the appeal: JTB was a privately-owned commercial bank under its own control when it was sued, and *Dole Food* therefore precludes its assertion of sovereign immunity.

## ARGUMENT

I. *Dole Food* Makes Clear That Appellants Do Not Enjoy Sovereign Immunity in This Case.

  A. The District Court Correctly Held that Appellants Are Not Entitled to Sovereign Immunity Because JTB Was a Privately-Owned Bank at the Time of Filing.

Notwithstanding Appellants' suggestion that Plaintiffs brought suit "against an organ of the State of Lebanon," Br. at 10, it is undisputed that JTB was a privately-owned Lebanese commercial bank when

Plaintiffs filed suit against it (and Plaintiffs have never named Dr. Baasiri or the Central Bank of Lebanon in a pleading). It now purports to be under the control of Dr. Baasiri, who was appointed an agent for the Central Bank of Lebanon to conduct the liquidation, but, as the district court explained, the Supreme Court held that "instrumentality status [must] be determined at the time suit is filed." SPA-16 (quoting *Dole Food*, 538 U.S. at 478).

In making that decision, the Supreme Court was interpreting 28 U.S.C. § 1603(b), which reads in relevant part:

> An "agency or instrumentality of a foreign state" means any entity[] (1) which is a separate legal person, corporate or otherwise, and (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof ....

Specifically, the Court held that "the plain text of this provision, because it is expressed in the present tense, requires that instrumentality status be determined at the time suit is filed." *Dole Food*, 538 U.S. at 478. The Court explained that "[c]onstruing § 1603(b) so that the present tense has real significance is consistent with the 'longstanding principle that "the jurisdiction of the Court depends upon the state of things at the time of the action brought."'" *Id.* (quoting *Keene Corp.,* 508 U.S. at 207). As

24

detailed below, the Supreme Court has repeatedly reaffirmed this decision, and this Court and others have repeatedly acknowledged that holding and have applied it in a variety of scenarios.

Appellants challenge *Dole Food*'s time-of-filing holding on three grounds: that it (1) was mere dicta; (2) only applies in diversity or removed cases; and (3) is limited to the specific facts of that case. As shown below, all three of these assertions are unsupportable.

### B.    The Supreme Court's Time-of-Filing Holding in *Dole Food* Was Not "Dicta."

Appellants' opening argument is that *Dole Food*'s time-of-filing holding was mere dicta. Br. at 16-20. However, the Supreme Court granted certiorari on "two questions" in that case—"whether a corporate subsidiary can claim instrumentality status where the foreign state" owns it indirectly, and when "a corporation's instrumentality status is defined." 538 U.S. at 471. After analyzing the two questions at length, the Court summarized its two holdings: "For these reasons, we hold first that a foreign state must itself own a majority of the shares of a corporation …. and we hold second that instrumentality status is determined at the time of the filing of the complaint." *Id.* at 480.

Appellants ignore the fact that the Court granted certiorari to the time of filing question,[7] and dismiss the Court's description of its conclusion as its "holding" as an "offhand reference."

Yet, the Supreme Court has repeatedly reaffirmed its holding. A year later in *Altmann*, the Court noted that "[i]n *Dole Food*, for example, we held that whether an entity qualifies as an 'instrumentality' of a 'foreign state' for purposes of the FSIA's grant of immunity depends on the relationship between the entity and the state at the time suit is brought rather than when the conduct occurred." *Altmann*, 541 U.S. at 698 (citation shortened). *See also Samantar*, 560 U.S. at 322 n.17 ("[I]nstrumentality status [must] be determined at the time suit is filed") (quoting *Dole Food*, 538 U.S. at 478). Although Appellants cite *Altmann* and *Samantar* in their brief, they simply ignore those cases' affirmation of *Dole Food*'s time-of-filing rule.

As noted above, this Court itself described *Dole Food* as "*holding unequivocally* that an entity's status as an instrumentality of a foreign

---

[7]     Despite disregarding this grant of certiorari, Appellants ask this Court to infer from the fact that the *Dole Food* petitioners did *not* seek certiorari over the Ninth Circuit's determination that they did not qualify as "organs" of Israel that the Supreme Court's time-of-filing rule does not apply to organs. Br. at 17. That erroneous argument is discussed below in Section I.D, but Plaintiffs note that, for Appellants, certiorari orders only matter for what they do *not* state.

26

state should be 'determined at the time of the filing of the complaint.'" *Abrams*, 389 F.3d at 64 (quoting *Dole Food*, 538 U.S. at 480). More recently, this Court explained that "[b]ecause jurisdiction 'depends upon the state of things at the time ... the action [is] brought,' an entity's agency or instrumentality status under the FSIA 'is determined at the time of the filing of the complaint,' ...." *Kirschenbaum*, 830 F.3d at 126 (quoting *Dole Food*, 538 U.S. at 478). *See also Eur. Cmty.*, 764 F.3d at 143 n.15 (applying the time of filing rule from *Dole Food*).[8]

In fact, Appellants do not cite a single case that characterizes *Dole Food*'s time-of-filing holding as dicta. Of the Second Circuit cases listed above, Appellants only address *Abrams*, but dismiss its description of *Dole Food* because it was enclosed in parentheses. Like Appellants' dismissal of *Dole Food*'s summary of its "holding" as an "offhand reference," that argument is not worth addressing further, except to note

---

[8] The rule is also recognized among the district courts in this Circuit. *See, e.g.*, *Freund v. Republic of France*, 592 F. Supp. 2d 540, 553 (S.D.N.Y. 2008), *aff'd sub nom. Freund v. Societe Nationale des Chemins de fer Francais*, 391 F. App'x 939 (2d Cir. 2010) ("When determining immunity under the FSIA, the court looks to the entity's form at the time the complaint was filed, not the time of the alleged wrongdoing."); *Ocean Line Holdings Ltd. v. China Nat. Chartering Corp.*, 578 F. Supp. 2d 621, 626 (S.D.N.Y. 2008) ("instrumentality status is determined at the time suit is filed").

that the relevant language in this Circuit's decisions in *Kirschenbaum* and *Eur. Cmty.* is not in parentheses.

Other circuits have also applied *Dole Food*'s time-of-filing holding. For example, the Seventh Circuit explained that in *Dole Food*, "the Supreme Court had held that whether the defendant is a foreign state within the meaning of the Foreign Sovereign Immunities Act is to be determined on the basis of the facts in existence when the suit was filed." *Olympia Exp., Inc.*, 509 F.3d at 349. So did the Third Circuit, *USX Corp. v. Adriatic Ins. Co.*, 345 F.3d 190, 208 n.16 (3d Cir. 2003) ("we are holding that [defendant] was an organ when USX sued it and it removed the case and its status at that time is what matters"); the Fourth Circuit, *see Yousuf*, 552 F.3d at 381; the Ninth Circuit, *see United States v. Pangang Grp. Co., Ltd.*, 6 F.4th 946, 957 (9th Cir. 2021) ("[*Dole Food*] held that, because subsection (b)(2) 'is expressed in the present tense,' it 'requires that instrumentality status be determined at the time suit *is filed*.'"); the Tenth Circuit, *Orient Min. Co. v. Bank of China*, 506 F.3d 980, 992 n.16 (10th Cir. 2007); and the D.C. Circuit, *see TIG Ins. Co.*, 967 F.3d at 783 ("[*Dole Food*] held that the 'plain text ... requires that instrumentality status be determined at the time suit is filed' because the text 'is

28

expressed in the present tense'"). Other such cases abound; again, Plaintiffs have not seen, and Appellants have not identified, any case holding otherwise.

But Appellants argue that the time-of-filing holding is dicta because it is the "second" of two independent yet dispositive bases for rejecting dismissal, suggesting that whichever holding is physically placed first on the page constitutes a binding holding, and the other is dicta. In support, Appellants cite the "Supreme Court's longstanding rule" on alternative holdings set forth in *Massachusetts v. United States*, 333 U.S. 611, 623 (1948), Br. at 20 n.4, but that case comes to the opposite conclusion.

In *Massachusetts*, the Supreme Court explained that in a case "which might have been decided on either of two independent grounds" such that "it cannot be said that the judgment rested on the one ground or claim more than the other," then "the adjudication is effective for both." 333 U.S. at 623. Appellants argue that *Massachusetts*'s requirement that "decision on both [issues] was *necessary to a judgment*" means both holdings must be necessary *together*. Br. at 20 n.4. But "necessary" means each decision is "independent[ly]" dispositive of the

29

appeal. One dispositive holding does not render the other unnecessary (and if it did, which holding would control?). Indeed, the *Massachusetts* Court's cited case states: "where there are two grounds, upon either of which an appellate court may rest its decision, and it adopts both, 'the ruling on neither is obiter, but each is the judgment of the court, and of equal validity with the other.'" *United States v. Title Ins. & Tr. Co.*, 265 U.S. 472, 486 (1924) (internal citation omitted).

Appellants' cited cases affirm this rule (or are wholly irrelevant). *See, e.g.*, *Klein ex rel. Qlik Tech., Inc. v. Qlik Tech., Inc.*, 906 F.3d 215, 227 n.7 (2d Cir. 2018) (debating with dissent whether a prior statement was a binding "alternative holding" or in fact did "not even enter into consideration"); *United States v. Brennan*, 650 F.3d 65, 140, 144 (2d Cir. 2011) (Raggi, J., concurring) (cautioning that statements on a doctrine "not before us" are dicta) (internal quotation marks and citation omitted).

### C. *Dole Food*'s Time-of-Filing Rule Squarely Applies to Assertions of Sovereign Immunity Raised Under the FSIA.

Appellants argue that time-of-filing rule "does not apply to federal-question cases that have not been removed." Br. at 20. Appellants reason that because *Dole Food* found the time-of-filing rule "'well-settled' in the context of *diversity jurisdiction*," it must be limited to that context; but

because *Dole Food* is not a diversity case, they are compelled to argue that the Supreme Court must have meant to extend it to *removed* cases that "involved state-law claims that could not have been originally filed in federal court under diversity jurisdiction," but no further. *Id.* at 21.[9] And because *Dole Food* says no such thing, they are compelled to argue that the Supreme Court's observation that it would be "anomalous" to apply the rule to diversity suits but not removed cases meant, *sub silentio*, that it should *only* apply in those two contexts.

But *Dole Food* was not interpreting the removal statute; it was interpreting the FSIA. It premised its holding that the time-of-filing rule applies to cases involving instrumentalities on the "plain language" of § 1603(b), which defined instrumentalities in the present tense: "Construing § 1603(b) so that the present tense has real significance is consistent with the 'longstanding principle that "the jurisdiction of the Court depends upon the state of things at the time of the action brought."'" 538 U.S. at 478 (quoting *Keene Corp.,* 508 U.S. at 207). The

---

[9]     Even the Supreme Court's reference to the time-of-filing rule's use in diversity cases was only "for example," 538 U.S. at 478—words Appellants excise to support their limited reading.

31

Court only discussed the removal statute to note that it incorporates the FSIA's definitions by reference. *Id.*[10]

Incredibly, Appellants claim that "[w]hen sovereign immunity is claimed in a non-removed federal-question case (as here), the Supreme Court and lower federal courts have *uniformly* concluded that time-of-filing is not dispositive of sovereign-immunity questions." Br. at 23-24 (emphasis added). The opposite is true. Far from "concluding" the rule is not dispositive, courts have explicitly recognized *Dole Food*'s time-of-filing rule's application to sovereign immunity issues in non-removed, federal question cases. *See, e.g.*, *Abrams* (jurisdiction under 28 U.S.C. § 1331 (federal question), as noted in the lower court decision, 175 F. Supp. 2d 423, 433 (E.D.N.Y. 2001)); *Kirschenbaum* (FSIA); *TIG Ins.* (attachment under the FSIA); *Samantar* (Torture Victims Protect Act and Alien Tort Statute); *Pangang* (Economic Espionage Act); *Freund* (FSIA). Courts have also cited the rule in non-removed federal cases not involving sovereign immunity. *See, e.g.*, *Nuveen Mun. Tr. ex rel. Nuveen*

---

[10]     Appellants even suggestively move the phrase "[t]o be entitled to removal under § 1441(d)" into their quote of the Court's holding. Br. at 18.

*High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.*, 692 F.3d 283, 300 (3d Cir. 2012) (28 U.S.C. § 1334(b) (bankruptcy)).

With two exceptions discussed below, none of Appellants' other cases on this issue even involve or construe the FSIA (and the two exceptions do not involve the time-of-filing rule). Appellants argue that "[i]n a long string of cases," courts "have unanimously refused to apply the time-of-filing rule because it would run contrary to the fundamental tenants [*sic*] of sovereign immunity," Br. at 24, but (setting aside whether their characterization of the cases is accurate) those cases involve sovereign immunity in contexts outside the FSIA. *See Maysonet-Robles v. Cabrero*, 323 F.3d 43 (1st Cir. 2003) (immunity under the Eleventh Amendment); *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999) (same); *Iowa Tribe of Kan. & Neb. v. Salazar*, 607 F.3d 1225, 1233 (10th Cir. 2010) (immunity under the Quiet Title Act); *Beers v. Arkansas*, 61 U.S. (20 How.) 527, 529 (1857) (the general "principle" that a "sovereign cannot be sued in its own courts"); *R.R. Co. v. Alabama*, 101 U.S. 832 (1879) (unstated, but seemingly the same). Only one of these cases even involved a *foreign* sovereign, *Oliver American Trading Co., Inc. v. Government of the*

*United States of Mexico*, 5 F.2d 659 (2d Cir. 1924), but that case was decided 50 years before the FSIA was enacted and nearly 80 years before *Dole Food* was decided.[11]

The two exceptions which do raise the FSIA, do not raise the time-of-filing rule *at all*. Appellants point out that *Wolf v. Banco Nacional de Mexico, S.A.*, 739 F.2d 1458 (9th Cir. 1984), and *Callejo v. Bancomer, S.A.*, 764 F.2d 1101 (5th Cir. 1985), acknowledge post-filing nationalizations. But these cases do not reject or even mention the time-of-filing rule—which is not particularly surprising, as they **pre-date** *Dole Food.* Instead, they reject assertions of sovereign immunity by reference to the FSIA's commercial activities exception. Appellants point out that the cases recognized the defendants as instrumentalities even though they were nationalized post-filing—but whether Dr. Baasiri or the Central Bank of Lebanon may now qualify as an instrumentality is not at issue here, only whether "[t]he relationship between" JTB "and the

---

11    Appellants likewise ask this Court to ignore the FSIA (the very statute on which their sovereign immunity claim is predicated) by arguing that, "[a]s the *Oliver Trading* court realized, these other immunity doctrines consider time-of-filing to be irrelevant. In such cases, what matters is whether the sovereign has waived its sovereign immunity, or whether an exception to immunity applies." Br. at 33 n.7. The argument as to other immunities is self-evidently irrelevant to interpreting the FSIA.

state" should be determined at the time of filing. *Altmann*, 541 U.S. at 698.

Appellants argue the Supreme Court recognized the time-of-filing rule's limitation to diversity cases in *Grupo Dataflux*, 541 U.S. at 571. Br. at 22. But *Grupo Dataflux* does not suggest any limitation to the rule—nor, again, does it relate to the FSIA or suggest *Dole Food* erred in applying the rule to the FSIA.

Indeed, Appellants goes so far as to claim that "[l]ower courts *uniformly* have concluded that 'the *Grupo Dataflux* Court explicitly restricted the time-of-filing rule to *diversity* cases,'" Br. at 22-23 (quoting *Connectu LLC v. Zuckerberg*, 522 F.3d 82, 92 (1st Cir. 2008)).[12] Again, that is irrelevant to the Supreme Court's construction of the FSIA's text (and, indeed, *Connectu* is not an FSIA case)—but Appellants' assertion is not even true *outside* of the FSIA context. For example, the Fifth Circuit rejected a nearly identical argument, noting that "nothing in [*Grupo Dataflux*] suggests that the rule is not equally applicable to federal question cases." *Spear Mktg., Inc.*, 791 F.3d at 592-93 (footnote

---

[12]    Of course, this assertion would mean *Grupo Dataflux* would exclude even non-diverse removed cases, despite coming after *Dole Food*, further rendering Appellants' view of these cases untenable.

omitted). Courts often cite *Grupo Datalux* and *Dole Food* together, such as in support of the proposition that "Supreme Court precedent is clear that the date of filing is the date when subject matter jurisdiction is assessed." *Nuveen*, 692 F.3d at 300 (a bankruptcy case).

Other decisions have also rejected the argument that the time-of-filing rule does not apply to non-removed federal question cases. The Fifth Circuit explained that "*all* questions of subject matter jurisdiction except mootness" are "determined as of the date of the filing of the complaint, and subsequent events do not deprive the court of jurisdiction." *Carr v. Alta Verde Indus., Inc.*, 931 F.2d 1055, 1061 (5th Cir. 1991) (emphasis added). *See also Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 69 (1987) (Scalia, J., concurring) (applying the time-of-filing rule to an alleged violation of a federal statute); *CIT, Inc. v. 170 Willow St. Assocs.*, No. 93-cv-1201-CSH, 1997 WL 528163, at *7 (S.D.N.Y. Aug. 26, 1997) (explaining that "while this rule may trace its origins to the diversity context, courts have applied it in resolving other jurisdictional disputes," and citing cases); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 597 B.R. 466, 481 (Bankr. S.D.N.Y. 2019) ("the time-of-filing rule is not limited to diversity

36

jurisdiction and applies generally in determining the existence of federal jurisdiction").

Appellants' remaining cases are even farther afield. For example, Appellants twice cite *New Rock Asset Partners, L.P.*, 101 F.3d 1492 (decided seven years before *Dole Food*), for the proposition that the time-of-filing rule is generally not applied in federal question cases but omit the fact that the case has been heavily criticized—*including by the circuit court that issued it*: "Although we once declined to apply the time of filing rule in a federal question case, *New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492 (3d Cir.1996), subsequent Supreme Court decisions demonstrate the continuing vitality of the rule." *Nuveen*, 692 F.3d at 294 (citing *Grupo Dataflux* and *Dole Food*). *See also Spear Mktg.*, 791 F.3d at 593 (holding that *New Rock* "stands for [a] *very* limited proposition" which is "in the minority" and which "we firmly rejected"); *CIT*, 1997 WL 528163, at *6 ("I find this reasoning [in *New Rock*] to be flawed in several respects.").

Appellants likewise rely on *Iowa Tribe* for the proposition that the "'time-of-filing rule has been applied only rarely to federal question cases,'" Br. at 22 (citation omitted), but omit that the Tenth Circuit

explicitly "recognize[d] … that this opinion puts us at odds" with this Circuit as well as the Third, Fifth, and Ninth Circuits, which apply the time of filing rule for waivers of sovereign immunity. 607 F.3d 1225, 1236 & n.8 (10th Cir. 2010) (citing, *inter alia*, *Kulawy v. United States*, 917 F.2d 729, 733-34 (2d Cir. 1990)). *See also Ford Motor Co. v. United States*, 688 F.3d 1319, 1325-26 & n.1 (Fed. Cir. 2012) (recognizing this split and distinguishing *Iowa Tribe*, *ConnectU*, and other cases cited by Appellants). Again, none of these cases construes the statutory text of the FSIA and therefore none of them discusses the Supreme Court's holding in *Dole Food.*

Finally, Appellants claim the time-of-filing rule is limited to diversity and removed cases because such cases "could be easily manipulated," whereas Appellants assure the Court "such manipulation cannot occur with federal-question cases." Br. at 23. But, as the D.C. and Third Circuits have explained, shifting from time-of-filing to some later time in the sovereign immunity context "'unnecessarily leaves room for manipulation' …. A time-of-filing rule avoids such gamesmanship by ensuring that post-filing maneuvering by foreign sovereigns will not affect the result." *TIG Ins. Co.*, 967 F.3d at 785 (D.C. Cir. 2020) (quoting

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126, 150 (3d Cir. 2019)). Even Appellants later concede that when "determining … whether a majority of shares of a corporation 'is' owned by a foreign state, a time-of-filing rule makes sense and prevents potential manipulation of the courts' subject-matter jurisdiction." Br. at 39. It stands to reason a sovereign could place a privately-owned entity under the supervision of an "organ" so as to avoid suit, as well.

### D. Appellants' Attempts to Cabin *Dole Food* Based on the Purported "Purposes" of the FSIA Are Unavailing.

Appellants argue that the "purposes" of the FSIA require limiting *Dole Food*'s time of filing rule to its precise facts, where the corporations at issue claimed they were majority-owned by Israel at the time the alleged tort occurred, but had been privatized by the time the plaintiffs filed suit. Appellants argue the Court's resulting time of filing rule should thus apply only to instrumentalities (1) that *ceased* being sovereign before filing, not those that *became* sovereign after filing, and (2) a majority of whose shares are owned by a foreign state, but not "organs" like the Central Bank of Lebanon. Neither limitation is even suggested by *Dole Food*, and subsequent case law has only held the opposite.

Appellants support their atextual argument by arguing that "FSIA immunity … reflects the principle that sovereigns are entitled to immunity from suit as a gesture of comity and respect for their independence and dignity." Br. at 28. Appellants argue that the Court would not risk "insult[ing] the dignity of the foreign state" if it limited the time-of-filing rule to entities that were *no longer* sovereign by the time of filing (rather than those that *become* sovereign post-filing) and to state-owned corporations, rather than organs (Appellants appear to suggest permitting suits against organs would impermissibly implicate a sovereign's "police powers" or even its "military service"). *Id.* at 28-31, 40.

These arguments are unavailing. The Supreme Court did not suggest the decision was limited to its specific facts, as made clear from its summary of its holdings; indeed, as noted above, this Court described *Dole Food* as "*holding unequivocally* that an entity's status as an instrumentality of a foreign state should be 'determined at the time of the filing of the complaint.'" *Abrams*, 389 F.3d at 64 (quoting *Dole Food*, 538 U.S. at 480). *See also* SPA-16-17 (noting same). That alone should be sufficient, *see TIG Ins. Co.*, 967 F.3d at 785 ("The lack of textual basis for Argentina's proffered time-of-writ rule suffices to reject it."), but, as

40

shown further below, Appellants' urged reading does not even comport with the FSIA's purposes. Thus, although Appellants complain that the district court "did not even mention" their urged "purposes" of the FSIA, Br. at 11, the district court correctly applied binding law, as it must.

### 1. *Dole Food*'s Time-of-Filing Rule Is Not Limited to Pre-Filing Privatizations.

Nothing in *Dole Food* suggests it is limited to pre-filing privatization, rather than post-filing nationalization. As the district court pointed out, *Dole Food* "grounded that rule in the longstanding jurisdictional time-of-filing rule, under which post-filing changes to 'the condition of the party' are irrelevant in assessing jurisdiction." SPA-17 n.4 (quoting *Grupo Dataflux*, 541 U.S. at 574). The rule does not distinguish between events occurring before versus after filing. This Court cited *Dole Food* in holding that the European Community's *post-filing* incorporation into the European Union did not alter jurisdiction "as the court's subject matter jurisdiction and a party's instrumentality status for purposes of § 1603 are both determined at the time when the complaint is filed." *Eur. Cmty.*, 764 F.3d at 143 n.15. And although Appellants argue that *Dole Food* meant to reach only entities after foreign states "severed ties," Br. 28-29, post-filing privatization does not

41

*restore* jurisdiction. *See Filler v. Hanvit Bank*, 378 F.3d 213, 216 (2d Cir. 2004) (assessing a defendant bank's instrumentality status "[a]t the time of the filing of the complaint" despite its sale "to a private entity" "[s]ince the filing of the actions").

Similarly, the Seventh Circuit explicitly rejected the suggestion *Dole Food* is limited to a pre-filing change in status:

> The specific question in *Dole* was whether the Act applied to a company that had ceased to be a "foreign state" before it was sued rather than, as in our case, after. But the Court based its decision on the familiar rule—emphatically reaffirmed after *Dole,* in *Grupo Dataflux v. Atlas Global Group, L.P.,* 541 U.S. 567 (2004)—that jurisdiction is determined by the facts that exist when the suit is filed. 538 U.S. at 478. It would be a big surprise to discover that the Court has changed its mind and now thinks that jurisdiction under the Foreign Sovereign Immunities Act is determined when a party demands a jury trial—in this case, demands it years after the suit was first removed to federal district court under section 1441(d).

*Olympia Exp.*, 509 F.3d at 349. *See also* SPA-17 n.4 (citing additional cases).

The D.C. Circuit explained that conferring immunity on a post-filing nationalization (there, post-filing of a writ of attachment) would in fact contradict the purposes of the FSIA:

> [T]he broader purpose of the FSIA further confirms that the time-of-filing rule is the better reading. Congress enacted the FSIA to "protect the rights of both foreign states and

42

litigants in United States courts." 28 U.S.C. § 1602. Congress cannot have intended a rule that would allow a foreign sovereign unilaterally to thwart an otherwise valid attachment simply by removing property from the market or otherwise pausing commercial activity after a creditor files suit. Were we to adopt Argentina's time-of-writ rule, foreign sovereigns would have every incentive to halt any commercial use of a property as soon as a creditor sought to attach it, and to draw out proceedings to delay the issuance of a writ until it had been able to do so. As the Third Circuit has explained, "[N]arrowing the temporal inquiry to the day the writ is executed unnecessarily leaves room for manipulation," for instance by "allow[ing] parties to avoid execution by freezing assets or otherwise ceasing commercial use." *Crystallex*, 932 F.3d at 150. A time-of-filing rule avoids such gamesmanship by ensuring that post-filing maneuvering by foreign sovereigns will not affect the result.

*TIG Ins.*, 967 F.3d at 785.[13]

---

[13]    This analysis answers Appellants' invitation to this Court to "[i]magine a lawsuit" against a private owner of a vessel, where "[a]fter the lawsuit is filed, a foreign sovereign seizes the vessel, converting it into military service." Br. at 31. Appellants seem to suggest that would rob a U.S. court of jurisdiction, citing *Schooner Exchange v. McFaddon*, 7 Cranch 116 (1812). Furthermore, this case is doubly irrelevant: both because it was decided 164 years before the FSIA was enacted (and nearly 200 years before *Dole Food*) and because it does not implicate time of filing— the "emperor of France and king of Italy" had already seized the vessel when the plaintiffs filed suit to attach it. 7 Cranch at 118. *See Ashraf-Hassan v. Embassy of France in the U.S.*, 40 F. Supp. 3d 94, 103 (D.D.C. 2014), *aff'd*, 610 F. App'x 3 (D.C. Cir. 2015) ("This decision significantly pre-dates the FSIA, and any implied immunities that it purported to create have long since been superseded by the provisions of the FSIA and related legislation ….").

43

2.    **Dole Food's Time-of-Filing Rule Is Not Limited to Instrumentalities that Are Majority-Owned by Foreign States.**

*Dole Food* never suggests that the time of filing rule only applies to corporations that are majority-owned by foreign states and not to "organs" of foreign states. Indeed, in *Eur. Cmty.*, this Court applied *Dole Food* to the European Community, having explicitly found it was an organ. Likewise, Appellants argue that *Abrams*, "like this case—did not involve the FSIA's majority-shares clause; it involved the FSIA's organ clause," Br. at 35, but that decision affirmed that *Dole Food* "unequivocally" held "that an entity's status should be 'determined at the time of the filing of the complaint'" *Abrams*, 389 F.3d at 64. Other cases have done the same. *See USX*, 345 F.3d at 208.

*Dole Food*'s application of the time-of-filing rule to the FSIA is premised, as Appellants admit, on the fact that the definition of "instrumentality" is given in the present tense: "We think the plain text of this provision, because it is expressed in the present tense, requires that instrumentality status be determined at the time suit is filed." *Dole Food*, 538 U.S. at 478. As shown above, that provision describes both organs *and* majority-owned entities in the present tense: "[an

44

instrumentality is an entity] which *is* an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest *is* owned by a foreign state or political subdivision thereof ...." § 1603(b)(2).

This language compels Appellants to invite this Court to believe that:

> While both clauses use the word 'is' … there is no logical reason why they must both be construed to impose a time-of-filing rule. The word 'is' in the organ clause could speak to a variety of situations, including at the time of the alleged wrongdoing, the time of the filing, or the time the immunity is raised.

Br. at 38. To buttress this wildly implausible reading of the statute, Appellants then point to cases that raise the possibility that the same word can have different meanings when used twice in a statute; but here the same word occurs *in the same sentence*: "[T]here is a presumption that a given term is used to mean the same thing throughout a statute, a presumption surely at its most vigorous when a term is repeated within a given sentence." *Brown v. Gardner*, 513 U.S. 115, 118 (1994).

Moreover, this precise argument has been repeatedly rejected. As the district court pointed out, SPA-17, the Fourth Circuit held in a decision applying *Dole Food* (and affirmed by the Supreme Court):

45

Samantar argues that *Dole Food* does not apply here because the Court was construing language that applied exclusively to corporations… [But,] like the "ownership interest" clause at issue in *Dole Food,* the clause immediately preceding it is also expressed in the present tense. Under section 1603(b)(2), an entity can be an "agency or instrumentality of a foreign state" only if that entity "*is* an organ of a foreign state or political subdivision thereof." 28 U.S.C. § 1603(b)(2) (emphasis added). Samantar's interpretation would require us to bypass the plain text of the statute in favor of a reading at odds with *Dole Food.* We see nothing in the statute suggesting that, if Congress intended individual foreign officials to be covered by the FSIA in the first place, it likewise intended to treat individuals differently than any other entity qualifying as an "agency or instrumentality" or depart from the principle that jurisdiction hinges on "the state of things at the time of the action" only in the case of individuals. *Dole Food,* 538 U.S. at 478 (internal quotation marks omitted).

*Samantar*, 552 F.3d at 382 (some citations omitted or shortened).

Finally, there is no reason to assume that the first "is" refers to anything other than time of filing. In *TIG Ins.*, Argentina argued that the phrase "used for a commercial activity" in section 1610 of the FSIA should be read "with an implicit 'is,'" and that the word "is" should be interpreted to mean the present moment, and not the time of filing. 967 F.3d at 782. The D.C. Circuit disagreed: "Argentina does not support its further contention that what counts as the present time for purposes of that assessment is the moment the court would issue its writ. A statute's use of the present tense ordinarily refers to the time the suit is filed, not the

46

time the court rules." *Id.* at 783. The Circuit also cited with approval the

concurring opinion in *Bennett v. Islamic Republic of Iran*, which came to

the same conclusion, citing *Dole Food* and other cases. 618 F.3d 19, 26

(D.C. Cir. 2010) (Garland, J., concurring).

The paucity of Appellants' argument is made clear from their

attempt to contort *Abrams* and *Altmann* to show that "the purposes of

the FSIA" override the time-of-filing rule for organs, Br. at 36—even

though, as shown above, both cases specifically endorse that rule, citing

*Dole Food.* Specifically, Appellants contend that, under *Abrams*, the

FSIA applies when a defendant is an organ "*now*," but where "now"

means some undefined time after filing: "What mattered for purposes of

the organ clause, in other words, was that the [defendant] French

railroad was '*now wholly owned*' by the foreign state. The same is true

here. JTB's assets are 'now wholly owned' by the Central Bank, an organ

of Lebanon." *Id.*[14] Appellants then argue that *Abrams* relied on

*Altmann*'s conclusion that the "purposes of the FSIA" required

"[e]xtending the FSIA's organ-clause immunity to *pre-filing* acts" to

---

[14]    It is far from clear that the Central Bank "owns" the $8 million frozen by the
U.S. Treasury Department as a result of JTB's designation.

47

suggest that timing is simply not an element of the FSIA at all. *Id.* Appellants thus conclude: "The rationale of this Court in *Abrams* and the Supreme Court in *Altmann*, therefore, is that ascertaining whether an entity is entitled to FSIA immunity under the organ clause is determined by reference to the *purposes of the FSIA*, not by reference to some arbitrary 'time,' such as the time-of-tort or the time-of-filing." *Id.* at 37.

In *Abrams*, however, "now" referred to the time of filing, not the moment the defendant moved to dismiss the case or this Court decided the appeal. There, Holocaust victims sued the French railroad "SNCF" for "knowingly transporting thousands to death camps during World War II." *Abrams*, 389 F.3d at 64. SNCF claimed immunity under the FSIA because it was nationalized by France after World War II, *but before the plaintiffs filed suit against it*, as this Court explained in a 2003 decision: "It is undisputed that SNCF is now—and was at the time the complaint was filed … wholly-owned by the French government," *Abrams v. Société Nationale des Chemins de Fer Francais*, 332 F.3d 173, 180 (2d Cir. 2003) (referencing 28 U.S.C. § 1603(b)).

In that 2003 decision, this Court had declined to hold that the FSIA (enacted in 1976) applied retroactively. *Id.* After the Supreme Court held

in *Altmann* that it did, the case returned to this Court on the question of whether the FSIA would apply retroactively where the defendant was not a sovereign entity at the time of wrongdoing (in *Altmann*, the defendant state-owned art gallery was an instrumentality at all times). This Court, citing *Dole Food* as "holding unequivocally that an entity's status as an instrumentality of a foreign state should be 'determined at the time of the filing of the complaint,'" held that the SNCF enjoyed sovereign immunity because (1) the FSIA applies retroactively and (2) it was an instrumentality at the time of filing, when that status is determined. 389 F.3d at 64.

Faced with this Court's application of *Dole Food* in *Abrams*, Appellants argue that this Court simply did not mean it, excoriating the district court for citing *Abrams* because "the quotation provided by the district court appears in a *parenthetical* in *Abrams* which summarized *Dole*. It is axiomatic that language in a parenthetical summarizing *another court*'s decision is not a holding and may well be an inaccurate summarization of the other court's holding." Br. at 37. Of course, that "summarization" is this Court's understanding of *Dole Food*, repeated in *Kirschenbaum* and every other court to review *Dole Food*. *See also*

49

*Freund* 592 F. Supp. 2d at 553 (reciting *Abrams*'s recitation of the time-of-filing rule).

Finally, Appellants' repeated demands that this Court show respect to Lebanon and defer to its liquidation of an SDGT itself belies their "purposes" argument. Appellants assert that having to answer to Hezbollah's American victims for JTB's alleged aiding and abetting of that terrorist organization impermissibly offends Lebanon and wastes Lebanon's money in litigation fees. Appellants call the lawsuit "a patent insult" to Lebanon's dignity and "particularly offensive to Lebanon." Br. at 30-31.

Appellants explain that this suit is so offensive "because JTB's assets are insufficient to pay the guarantee to which depositors are statutorily entitled," and that "[t]his lawsuit, involving many millions of dollars of potential liability, has (and will continue to) interrupt Lebanon's orderly, statutory liquidation process, potentially upend Lebanon's prioritization of depositors' claims, and cost the Central Bank (and thus the Lebanese public) a good deal of money to litigate," and that

50

not dismissing JTB would mean "embroiling it in expensive and protracted litigation." *Id.* at 29-31.[15]

JTB's *support for Hezbollah* should be offensive to Lebanon, and those depositors Appellants insist are "entitled" to compensation before Plaintiffs include—according to the U.S. Treasury Department—senior members of Hezbollah and its Martyrs Foundation and Al-Qard al-Hassan entities (both designated as SDGTs in 2007). *See* JA-882 ("Hizballah has used accounts at Jammal Trust to pay its operatives and their families," and "[w]hen opening purportedly 'personal accounts' at Jammal Trust, Al-Qard al-Hassan officials clearly identified themselves to Jammal Trust as senior members of the terrorist group. Jammal Trust then facilitated these accounts to be used to conduct business on Al-Qard al-Hassan's behalf."). The Central Bank appears complicit in paying off Hezbollah depositors. *See* JA-1157 (noting "central-bank records … showing it allowed known Hezbollah accounts at a Lebanese private bank to operate even after being directed by the U.S. to shut them down").

---

[15]    The Court is left to ponder how "orderly" of a liquidation Dr. Baasiri can conduct while hiding in a "mountainous region" due to Lebanon's "civil war." JA-954.

Moreover, having openly stated that the liquidator has no intention of honoring any judgment issued by a U.S. court in this case, JA-960, 963, ¶¶ 35, 56, Appellants are under no obligation, financial or otherwise, to litigate this case if they find it too burdensome to do so. Aside from the $8 million frozen in New York, Appellants presumably suffers no risk in simply defaulting. As the district court observed, Appellants' "redressability argument—that any eventual judgment in this case will wholly fail to redress Plaintiffs' injuries—belies the notion that allowing this case to proceed would hamper the ongoing liquidation, let alone upend the 'amicable working relationship' between the United States and Lebanon." SPA-24.

## II. The District Court Properly Exercised Its Discretion in Denying Dr. Baasiri's Motion to Substitute Himself for JTB.

### A. The District Court Correctly Assessed that Even *if* JTB's Interests Had Transferred to Dr. Baasiri, Substitution Is Inappropriate in This Case.

Appellants argue that the district court "committed legal error" in denying their motion to substitute Dr. Baasiri for JTB pursuant to Rule 25(c) because it did not definitively determine whether JTB's relevant interests transferred to Dr. Baasiri. Br. at 42. The argument is untenable.

52

The substitution rule reads: "If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." Fed. R. Civ. P. 25(c). Thus, as explained in the Standard of Review section above, *if* an interest is transferred, the district court "may" continue the action against the original party or may order the transferee's substitution for it. The choice is placed at the district court's discretion.

The district court correctly explained that, where an interest *has* transferred, "[t]he 'primary consideration'" in exercising that discretion "is 'whether substitution will expedite and simplify the action.'" SPA-3-4 (quoting *Advanced Mktg. Grp., Inc., v. Bus. Payment Sys., LLC*, 269 F.R.D. 355, 359 (S.D.N.Y. 2010)). It is where an interest has *not* transferred that a district court has no choice—it must deny substitution. *See Chalasani*, 92 F.3d at 1312 ("Although granting substitution of one party in litigation for another under Rule 25(c) is a discretionary matter for the trial court, such discretion may not be abused by allowing substitution in the absence of a transfer of interest.") (citation omitted).

53

The district court found that even if JTB's relevant interests were transferred, removing JTB would "complicate the proceedings and unfairly frustrate Plaintiffs' ability to obtain a judgment against the party they properly sued: JTB." SPA-4. Furthermore, it "would also needlessly complicate discovery" by removing JTB from "the rules providing for automatic discovery from parties." SPA-5. JTB's "only argument" that substitution would simplify matters was that "'it is legally more direct and appropriate to permit the Liquidator to raise the sovereignty-based defenses of sovereign immunity and international comity'"—but the district court had already correctly held that "those arguments for dismissal are meritless whether they are asserted by JTB or Dr. Baasiri." SPA-4.[16] Finally, while substitution would prejudice Plaintiffs, the Appellants "have identified no prejudice from JTB remaining in this case." SPA-5.

Appellants do not "deny the importance of expedition/non-simplification," but argue that the district court "committed legal error" by considering those factors before determining "whether the requisite

---

[16]    Of course, by Appellants' logic, it would "simplify" matters to substitute in anyone Plaintiffs do not have a claim against, and then dismiss them from the case.

'interest' has been 'transferred'" (what they call "putting the 'expedition' cart before the 'transfer of interest' horse"). Br. at 41-42. They assert that "it makes no sense for the district court to grant the Liquidator-agent's Rule 24(a) motion to intervene as of right," premised on the transfer of interest, "while simultaneously evading the issue of a transfer of interest under Rule 25(c)." *Id.* at 43. Finally, they discount all the cases the district court relied on because they involved "situations in which a transfer of interest unquestionably had occurred." *Id.* at 41.

But the district court did not "evade" anything—it assumed *arguendo* that the relevant interest *had* transferred. Again, *actually* finding a transfer of interest is only required for *granting* substitution, not denying it. In other words, the district court ruled that *even if there definitively was a transfer of interest*, it would deny substitution.

Appellants also argue that the denial of substitution was reversible error because it rested on the district court's application of *Dole Food*'s time of filing analysis, which they consider dicta or otherwise inapplicable. Those erroneous arguments are addressed above.

**B.      Dr. Baasiri's Purported Status as the "Real Party in Interest" Does Not Alter *Dole Foods* or Require Substitution.**

Appellants argue that the Central Bank of Lebanon (through its agent, Dr. Baasiri) is the real party in interest and that the district court therefore erred in not granting substitution.[17] They reason that courts "routinely hold that sovereign-appointed liquidators—whether foreign or domestic—are the real party in interest in suits filed against the entity undergoing liquidation, even when liquidation is begun *after* suit is filed." Br. at 49-50.

But whether Dr. Baasiri is the real party in interest (or whether that role encompasses the $8 million of JTB's assets frozen in New York[18]) is irrelevant because it does not change the jurisdictional analysis under *Dole Food*, and thus does not affect the substitution analysis. The issue is whether a post-filing transfer of interest can divest a court of

---

[17]      Appellants contend that it "[t]here is no dispute that the Central Bank is now the real party in interest to the claims against JTB." Br. at 1. Plaintiffs do not concede any issues relating to the liquidation process or whether the Central Bank of Lebanon is the real party in interest, but only note that the issue is irrelevant under *Dole Food*.

[18]      Appellants appear to be of two minds as to this asset: On the one hand, they assert JTB's "assets are *entirely controlled* by the Central Bank," Br. at 7 (emphasis added), and that the suit is "against assets owned *and controlled* by the Central Bank," *id.* at 30 (emphasis added); on the other, they argue that the fact "[t]hat the Central Bank may not *control* some of JTB's assets (because they are frozen by OFAC) does not dispute that the *legal interests* in all of JTB's assets have been *transferred* to the Central Bank by operation of Lebanese law," *id.* at 42-43.

subject matter jurisdiction. None of Appellants' cases support that proposition.

On the contrary, the Supreme Court has held that a party's "addition as the real party in interest" to a suit does not destroy jurisdiction where that interest was transferred "[a]fter suit was filed," given that "[w]e have consistently held that if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events." *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991). *See also St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 295 n.27 (1938) ("Change of parties by substitution or by intervention does not oust the jurisdiction."); *ELCA Enterprises, Inc.*, 53 F.3d at 191 ("The rule expressly permits parties to continue in an action, even if they do not remain the real party in interest, as long as the cause of action *itself* survives the transfer to the new party."). In *Freeport-McMoRan*, as here, the purported "real party in interest" "was not an 'indispensable' party at the time the complaint was filed," and "had no interest whatsoever in the outcome … until sometime after the

57

suit was commenced. Our cases require no more than this." 498 U.S. at 428.[19] Dr. Baasiri had no interest in this case when it was filed.

In *Eur. Cmty.*, this Court found that the European Community, one of the predecessor institutions to the European Union, was an organ under the FSIA, entitling it to bring a case under diversity jurisdiction. Subsequent to filing the suit, "the member states dissolved the European Community and incorporated it into the European Union." The Court held this was not grounds for altering the parties or the Court's jurisdictional basis:

> Since this lawsuit was filed, the European Community has been incorporated into the European Union. Despite this change, the European Community remains the relevant entity, as the court's subject matter jurisdiction and a party's instrumentality status for purposes of § 1603 are both determined at the time when the complaint is filed.

*Eur. Cmty.* 764 F.3d at 143 n.15.

Appellants cite a number of cases for the unexceptional proposition that liquidators may in some contexts be the real party in interest but describes them inaccurately so as to suggest a liquidator appointed post-filing might be entitled to dismissal on sovereign immunity grounds.

---

[19]     As explained above, the time of filing rule is not limited to diversity cases.

First, Appellants argue that in *Finanz AG Zurich v. Banco Economico S.A.*, 192 F.3d 240, 244 (2d Cir. 1999), this Court concluded that a defendant Brazilian bank's "foreign Liquidator's status as the 'real party in interest,' entitled to FSIA immunity, was supported by the record …." Br. at 44. But that case involved suit brought *after* the bank entered state-supervised liquidation, and the suggestive addition of the phrase "entitled to FSIA immunity" misrepresents the case. Sovereign immunity never substantively arises except as the basis for removal (the time of filing rule does not arise at all).

In that case, the defendant bank alleged its liquidator was the real party in interest and moved to dismiss in deference to the Brazilian liquidation proceedings under international comity—not sovereign immunity. *See Banco Economico*, 192 F.3d at 242. This Court explained that "we will afford comity to foreign bankruptcies only if those proceedings do not violate the laws or public policy of the United States, and if the foreign court abides by fundamental standards of procedural fairness." *Id.* at 246 (internal quotation marks and citations omitted). The Court found that Brazilian liquidations met those standards and affirmed the dismissal. Although JTB unsuccessfully sought dismissal on

59

comity grounds from the district court, Appellants have not included that issue in their appeal here.

Second, Appellants argue that in *Drexel Burnham Lambert Grp. Inc. v. Galadari*, 12 F.3d 317 (2d Cir. 1993), this Court ordered dismissal of a suit against a state-appointed liquidation committee on sovereign immunity grounds, where the committee was appointed post-filing. But Appellants misstate the facts and holdings of the case. *Galadari* has nothing to do with, and makes no mention of, the time-of-filing rule. It involves the application of two exceptions to sovereign immunity—waiver and the commercial activities exception—to the committee's conduct of the litigation and the liquidation.[20]

Nor could it involve time of filing. As the district court here observed in rejecting this argument below, when the *Galadari* plaintiffs brought suit, the defendant was already under the control of the Emirati government, as the committee was "the successor to a provisional board ... established by the government of Dubai" *before* filing, SPA-17. Appellants admit the "provisional board" was a sovereign entity tasked

---

[20]    Appellants also state that "this Court agreed that a Dubai Liquidation Committee was the 'real party in interest' entitled to FSIA immunity," Br. at 45—but as is evident from the decision, this Court only noted that the district court so found.

with, *inter alia*, "begin[ning] the liquidation of Mr. Galadari's assets" and "day-to-day general management" duties but argues that the "committee" had broader powers or clearer capacity to run the liquidation than did the provisional board, such that the liquidation did not *truly* begin until after filing. Br. at 47-48. But, even if true, it is irrelevant to the question of whether the real party in interest was a sovereign entity before the suit was filed.[21]

Furthermore, the plaintiffs in that case also filed amended complaints that "asserted new claims for relief directly against the Committee and the Emirate," naming them as "successors-in-interest for the liabilities of Galadari." *Galadari*, 12 F.3d at 322-23. It is these complaints the sovereign entities sought to dismiss on immunity grounds. *Id.* at 323. Thus, this Court concluded that, "insofar as the amended and supplemental complaints assert claims *directly* against the

---

[21] Indeed, another of Appellants' cases rejects their attempt to parse the powers between two managing bodies: "In *Navarro*, the Supreme Court unequivocally rejected an approach to the real party in interest question which would require an assessment of the representative's actual powers, in favor of 'the relative simplicity of [the] established principle' that 'a trustee is a real party to the controversy for purposes of diversity jurisdiction when he possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others.'" *Hong Kong Deposit & Guar. Co. v. Hibdon*, 602 F. Supp. 1378, 1382 (S.D.N.Y. 1985) (quoting *Navarro Savings Ass'n v. Lee*, 446 U.S. 458, 461 (1980)).

Emirate and the Committee as an instrumentality of the Emirate, the FSIA provides the sole basis for subject matter jurisdiction in United States courts." *Id.* at 324 (emphasis added). Appellants admit as much, Br. at 46, and yet maintain the case has relevance here, where Plaintiffs sued a privately-owned bank.

In any event, in *Galadari*, this Court ordered dismissal without any suggestion that there was a time-of-filing issue at all. Appellants— previously so eager to write off the Supreme Court's explicit holding and discussion of the time-of-filing rule in *Dole Food* as dicta— simultaneously ask this Court to believe that *Galadari* intended to distinguish the time-of-filing rule *sub silentio* (and ten years *before Dole Food*), because "[n]one" of its "analysis would have been proper" if the time-of-filing rule had negated sovereign immunity. Br. at 46-47.

Appellants also assert that the district court here "weakly attempted to distinguish *Galadari* because it was decided in 1993, 'a decade before *Dole Food*' and that 'to the extent they are inconsistent, [the court] must follow *Dole Food*.'" Br. at 49 (quoting SPA-18, n.5). The distinction is not "weak"—it just does not conform with JTB's unsupported assertion that *Dole Food* is dicta.

Finally, Appellants cite a series of cases that it contends show that liquidators are the real parties in interest—including those appointed post-filing—to support their complaint that the district court impermissibly "refused to even consider if" Dr. Baasiri "is the 'real party in interest" in denying substitution. Br. at 50. Again, the district court declined to grant substitution even *if* an interest was transferred, but Appellants' cases do not alter the substitution analysis in any way.

In *U.S. Fid. & Guar. Co. v. Exec. Ins. Co.*, 893 F.2d 517 (2d Cir. 1990), this Court held that two insurers were obligated to contribute equally to the defense and indemnification of a shared customer; the Court noted in a footnote that one of the insurers assigned the policy to another company, which underwent liquidation in New York, making the New York State Insurance Department the real party in interest. *Id.* at 517 n.1. That finding had no impact whatsoever on the case. In *F.D.I.C. v. Wrapwell Corp.*, 922 F. Supp. 913, 917 (S.D.N.Y. 1996), the FDIC moved to substitute for the *plaintiff*, and the district court, "noting that defendants state no opposition," granted the motion. In *Allied Fid. Ins. Co. v. Cont'l Illinois Nat. Bank & Tr. Co. of Chicago*, 677 F. Supp. 562, 563 (N.D. Ill. 1988), the court found that "this lawsuit should have been

brought in" the name of the liquidator, who was installed *pre-suit*. In *Hong Kong Deposit & Guar. Co.*, 602 F. Supp. at 1381, the liquidator, already installed, brought the suit.

## CONCLUSION

This appeal flies in the face of settled law, makes frivolous arguments, and misconstrues or omits controlling law. The district court's decision should be affirmed.

Dated: January 26, 2022
      Hackensack, NJ

                      Respectfully submitted,

                      /s/ Michael Radine

                      **OSEN LLC**
                      Michael Radine
                      Gary M. Osen
                      Ari Ungar
                      Aaron A. Schlanger
                      Dina Gielchinsky
                      190 Moore Street, Suite 272
                      Hackensack, New Jersey 07601
                      (201) 265-6400

                      *Attorneys for Plaintiffs-Appellees*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements and Type Style Requirements

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 13,418 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Century.

Dated: January 26, 2022

/s/ Michael Radine
*Attorney for Plaintiffs-Appellees*

65