# 21-2019

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆◆

ROBERT BARTLETT, *et al.*,

*Plaintiffs-Appellees,*

—against—

DR. MUHAMMAD BAASIRI,

*Movant-Appellant,*

JAMMAL TRUST BANK SAL,

*Defendant-Appellant.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR MOVANT-APPELLANT
## AND DEFENDANT-APPELLANT

DAVID B. RIVKIN, JR.
ELIZABETH PRICE FOLEY
MARK W. DELAQUIL
KENDALL E. WANGSGARD
BAKER & HOSTETLER LLP
Washington Square
1050 Connecticut Avenue, NW
Suite 1100
Washington, DC 20036
(202) 816-1500

*Attorneys for Movant-Appellant
and Defendant-Appellant*

# **TABLE OF CONTENTS**

**Page**

ARGUMENT ................................................................................ 2

I.    *Dole* is Not Dispositive.................................................................2

II.   Construction of the Organ Clause Must Be Consistent with the
      Restrictive Theory ...................................................................7

III.  Construction of the Organ Clause Must Examine Pre-*Dole* and Pre-
      FSIA Cases ........................................................................10

IV.   Post-*Dole* Cases Support Appellants' Contentions ......................................13

      A.    Post-*Dole* Supreme Court Cases .........................................................13

      B.    Lower Courts' Post-*Dole* Cases ........................................................16

            1.    This Circuit's Post-*Dole* Cases ................................................16

            2.    Other Circuits' Post-*Dole* Cases ............................................21

                  a.    Non-FSIA cases..............................................................21

                  b.    FSIA cases ..................................................................24

V.    Substitution Is Warranted ...............................................................28

CONCLUSION ........................................................................... 29

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abrams v. Société Nationale des Chemins de Fer Francais*,
  389 F.3d 61 (2d Cir. 2004) ..........................................................................17, 18

*Altmann v. Republic of Austria*,
  541 U.S. 677 (2004)....................................................................................*passim*

*Astoria Fed. Sav. & Loan Ass'n v. Solimino*,
  501 U.S. 104 (1991)............................................................................................13

*Atl. Cleaners & Dryers v. United States*,
  286 U.S. 427 (1932)........................................................................................5, 6

*Beers v. Arkansas*,
  61 U.S. (21 How.) 527 (1857) ....................................................................10, 11

*Callejo v. Bancomer, S.A.*,
  764 F.2d 1101 (5th Cir. 1985) ...............................................................2, 12, 13

*Carr v. Alta Verde Industries*,
  931 F.2d 1055 (5th Cir. 1991) ..........................................................................22

*Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*,
  527 U.S. 666 (1999)..........................................................................................10

*Compagnie Noga D'Importation Et D'Exp. S.A. v. Russian Fed'n*,
  361 F.3d 676 (2d Cir. 2004) ..............................................................................16

*Connectu LLC v. Zuckerberg*,
  522 F.3d 82 (1st Cir. 2008)................................................................................21

*Dole Food Co. v. Patrickson*,
  538 U.S. 468 (2003)....................................................................................*passim*

*European Community v. RJR Nabisco, Inc.*,
  764 F.3d 129 (2d Cir. 2014) ..............................................................................19

*FDIC v. Meyer*,
    510 U.S. 471 (1994)............................................................................8

*Filler v. Hanvit Bank*,
    378 F.3d 213 (2d Cir. 2004) ....................................................18, 19

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
    141 S. Ct. 1017 (2021)......................................................................8

*Franchise Tax Bd. of Calif. v. Hyatt*,
    139 S. Ct. 1485, 1493 (2019)........................................................11

*Garb v. Republic of Poland*,
    440 F.3d 579 (2d Cir. 2006) ..........................................................16

*Hollingsworth v. Perry*,
    570 U.S. 693 (2013)........................................................................22

*Kensington Int'l, Ltd. v. Itoua*,
    505 F.3d 147 (2d Cir. 2007) ............................................................9

*Kirschenbaum v. 650 Fifth Ave. & Related Properties*,
    830 F.3d 107 (2d Cir. 2016) ....................................................20, 21

*Lange v. California*,
    141 S. Ct. 2011 (2021)..........................................................3, 4, 14

*Louisville & Nashville R.R. Co. v. Mottley*,
    211 U.S. 149 (1908)..........................................................................1

*In re MDL-731 Tax Refund Litig.*,
    989 F.2d 1290 (2d Cir. 1993) ........................................................14

*Nat'l Tr. for Historic Pres. v. FDIC*,
    21 F.3d 469 (D.C. Cir. 1994) ..........................................................8

*Niz-Chavez v. Garland*,
    141 S. Ct. 1474 (2021)......................................................................4

*Nuveen Municipal Trust v. WithumSmith Brown*,
    692 F.3d 283 (3d Cir. 2012) ....................................................22, 23

*Oliver Am. Trading Co. v. Gov. of the United States of Mexico*,
   5 F.2d 659 (2d Cir. 1924) ...............................................................2, 11

*Olympia Exp., Inc. v. Linee Aeree Italiane, S.P.A.*,
   509 F.3d 347 (7th Cir. 2007) ...............................................................24

*Orient Mineral Co. v. Bank of China*,
   506 F.3d 980 (10th Cir. 2007) ..............................................................24

*Permanent Mission of India to the U.N. v. City of N.Y.*,
   551 U.S. 193 (2007)............................................................................12

*R.R. Co. v. Alabama*,
   101 U.S. 832 (1879).....................................................................10, 11

*Samantar v. Yousuf*,
   560 U.S. 305 (2010).................................................................*passim*

*Saudi Arabia v. Nelson*,
   507 U.S. 349 (1993)........................................................................7, 8

*Spawn v. Western Bank-Westheimer*,
   989 F.2d 830 (5th Cir. 1993) ................................................................8

*Spear Marketing v. BancorpSouth Bank*,
   791 F.3d 586 (5th Cir. 2015) .........................................................21, 22

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998)................................................................................1

*TIG Insurance Co. v. Republic of Argentina*,
   967 F.3d 778 (D.C. Cir. 2020)..............................................................27

*United States v. Pangang Grp. Co.*,
   6 F.4th 946 (9th Cir. 2021)...................................................................24

*USX Corp. v. Adriatic Ins. Co.*,
   345 F.3d 190 (3d Cir. 2003) ...........................................................25, 26

*Valley Eng'rs v. Elec. Eng'g Co.*,
   158 F.3d 1051 (9th Cir. 1998) ..............................................................14

iv

*Verlinden B.V. v. Cent. Bank of Nigeria*,
    461 U.S. 480 (1983).......................................................................................7

*Wolf v. Banco Nacional de Mexico, S.A.*,
    739 F.2d 1458 (9th Cir. 1984) .............................................................2, 12, 13

*Yates v. United States*,
    574 U.S. 528 (2015)........................................................................................5

*Yousuf v. Samantar,*
    552 F.3d 371 (4th Cir. 2009) ...........................................................................24

**Statutes**

28 U.S.C. § 1334(b) ...........................................................................................23

28 U.S.C. § 1602 ..................................................................................................7

28 U.S.C. § 1603(b) ...................................................................................*passim*

28 U.S.C. § 1604 .............................................................................................1, 7

**Other Authority**

The Federalist No. 81 (Alexander Hamilton) ..........................................................11

H.R. Rep. No. 94-1487, 94th Cong., 2d Sess. 8 ...............................................*passim*

*Now*, *Merriam-Webster*...........................................................................................17

The White House, Fact Sheet: Executive Order to Preserve Certain
    Afghanistan Central Bank Assets for the People of Afghanistan
    (Feb. 11, 2022)...................................................................................................19

## INTRODUCTION

"Article III jurisdiction is always an antecedent question" and must exist at all stages of litigation. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998); *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908) (assessing subject-matter jurisdiction for first time in Supreme Court). Shortly after this suit was filed, the assets of Appellant Jammal Trust Bank, SAL ("JTB") were placed under control of the Lebanese Central Bank by operation of Lebanon's liquidation law. The real party in interest thus became the Central Bank, an organ of Lebanon, divesting the federal court of subject-matter jurisdiction under 28 U.S.C. § 1604's admonition that "a foreign state shall be immune from the jurisdiction of the courts of the United States."

Rather than grappling with this fundamental jurisdictional defect, Plaintiffs-Appellees ("Plaintiffs") overread *Dole Food Co. v. Patrickson*, 538 U.S. 468 (2003), which applied a time-of-filing rule in a removal case under the FSIA's majority-shares clause. *Id.* at 478–80. Plaintiffs insist that *Dole also* forecloses consideration of post-filing events for a non-removed case involving immunity under the FSIA's organ clause. If Plaintiffs' position were accepted, a foreign state organ's *post-filing* control over an entity's assets—such as nationalization of banks by a foreign central bank, nationalization of munitions manufacturers by a foreign defense ministry, or any control assumed by a newly created foreign state—would require automatic

denial of sovereign immunity. But this construction of the FSIA's organ clause would conflict with the FSIA's purpose of preserving sovereign immunity for public acts (like Lebanon's liquidation of JTB), pre-existing concepts of sovereignty left intact by the FSIA, as well as the decisions of three courts of appeal[1]—including this Court—that a foreign state organ's *post-filing* control over the assets of a private party may trigger sovereign immunity. For these reasons and those set forth below, this Court should reverse.

## ARGUMENT

### I.    *Dole* is Not Dispositive

Plaintiffs overread *Dole*. *Dole*'s time-of-filing statements are not binding here for at least four reasons: (1) they are based on a different statutory clause (the majority-shares clause); (2) they do not address the effect of *post-filing* developments but only whether foreign-state status should be considered at time-of-wrongdoing versus time-of-filing, JTB Br. 16–19 ECF 43; (3) they have analytical roots in diversity jurisdiction (and removal), which implicates different concerns than this federal-question case, *id.* at 20–27; and (4) they would undermine the FSIA's purposes, if extended to the organ clause, *id.* at 27–40. Rather than address these arguments directly, Plaintiffs double-down on *Dole*, committing three fatal analytical errors.

---

[1] *Callejo v. Bancomer, S.A.*, 764 F.2d 1101 (5th Cir. 1985); *Wolf v. Banco Nacional de Mexico, S.A.*, 739 F.2d 1458 (9th Cir. 1984); *Oliver Am. Trading Co. v. Gov. of the United States of Mexico*, 5 F.2d 659 (2d Cir. 1924).

2

First, Plaintiffs insist that under *Dole*, the court must interpret the verbs in the FSIA's organ clause[2] and its majority-shares clause to refer *only* to time-of-filing, even if the statutory prerequisites for jurisdiction are not present later in the suit. Plaintiffs-Appellees' Br. 39 ("Bartlett Br.") ECF 64. But the "holding" of a case arises from the specific context in which the outcome was dependent, including both the specific statutory provision at issue and the procedural posture in which the issue arises.

As the Supreme Court recently reiterated in *Lange v. California*, 141 S. Ct. 2011 (2021), a broad rule does not control in a subsequent case if material differences exist. In *Lange*, the Court rejected the argument that a prior decision created a "categorial rule" that an arrest warrant is not required when a suspect flees into his home. *Lange*, 141 S. Ct. at 2019. The Court conceded that the previous case "framed [its] holding in broader terms," by stating that a suspect's "act of retreating into her house . . . could not defeat an arrest that had been set in motion in a public place." *Id.* (internal quotation marks omitted). And it acknowledged that in "a number of later decisions," courts had "describe[ed] [the earlier case] in dicta as allowing

---

[2] The relevant portion of the FSIA states:

    (b) An "agency or instrumentality of a foreign state" means any entity—
    (1) which is a separate legal person, corporate or otherwise, and
    (2) which *is an organ of a foreign state* or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof . . . .

28 U.S.C. § 1603(b).

warrantless home entries when police are in hot pursuit of a fugitive or a fleeing suspect." *Id.* (internal quotation marks omitted). However, the broad statements by courts in multiple cases had not specifically addressed whether the rule applied to suspected *misdemeanants*, so no case "had resolved the matter." *Id.*

The same is true here: like *Lange, Dole* uses broad language but analyzes only the question about whether immunity under the majority-shares clause should be determined based on time-of-filing versus time-of-wrongdoing. But *Dole* "said nothing" absolving a court from its duty to ensure that jurisdiction *remains* proper where an event of jurisdictional significance occurs post-filing—in this case, the liquidation of JTB and control over its assets by the Lebanese Central Bank.

Second, even if the only relevant consideration in a majority-shares case like *Dole* was the time of filing, *Dole* still does not answer how courts should interpret the plain language of the FSIA when evaluating continuing jurisdiction under the organ clause. Courts must "afford the law's terms their ordinary meaning," while "exhaust[ing] all the textual and structural clues bearing on that meaning." *Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1480 (2021) (internal quotations omitted). Examining the plain language of Section 1603(b)(2), the term "is" undeniably connotes the present tense. But a present moment can be measured at various times, including the time of filing as well as the present time. Courts can only choose among these possibilities by reference to the specific statutory and procedural context and the

4

FSIA's purposes, which is what *Dole* did. 538 U.S. at 478–80. But *Dole* only addressed the dispute regarding whether the FSIA's definitions applied to the time-of-wrongdoing (past tense) or time-of-filing (present tense). It did not address whether Section 1603(b)(2)'s present-tense language can also apply to the question of the present, *post-filing* status of an entity, as part of the federal court's continuing obligation to assure subject-matter jurisdiction. This Court should apply *Dole*'s framework to determine what the plain language of the organ clause—"is an organ of a foreign state"—means when a Court is determining whether it continues to have jurisdiction under the FSIA.[3] And there is no dispute that the Central Bank, which controls all of JTB's assets under Lebanese law, is an organ of a foreign state.

To the extent this interpretation differs from *Dole*, the Supreme Court has repeatedly held that identical words may be construed differently, even when appearing in the same section of the same statute. *See Yates v. United States*, 574 U.S. 528, 537 (2015) (collecting cases); *see also Atl. Cleaners & Dryers v. United States*, 286 U.S. 427, 433 (1932) ("Most words have different shades of meaning and consequently may be variously construed, not only when they occur in different statutes, but when used more than once in the same statute *or even in the same section*.")

---

[3] Because States use their "organs" virtually exclusively to carry out their public acts and, as described in Section II, the FSIA's primary purpose is to protect public acts from liability, granting greater protection under the organ clause than the majority-shares clause is more consistent with the FSIA's purposes.

(emphasis added). The "natural presumption" that identical words have the same meaning "is not rigid and readily yields whenever there is such variation in the connection in which the words are used as reasonably to warrant the conclusion that they were employed in different parts of the act with different intent." *Atlantic Cleaners*, 286 U.S. at 433. "Where the subject-matter to which the words refer is not the same . . . the meaning may well vary to meet the *purposes of the law* . . . ." *Id.*

Third, contra Plaintiffs' arguments (at 33, 35), pre-*Dole* and pre-FSIA cases are relevant to this Court's analysis because the FSIA codified *pre-existing* concepts of sovereign immunity "first recognized in . . . the landmark case of *The Schooner Exchange v. McFaddon*." H.R. Rep. No. 94-1487, 94th Cong., 2d Sess. 8. When "the Supreme Court [later] began to place less emphasis on whether immunity was supported by the law and practice of nations, and relied instead on the practices and policies of the State Department," the State Department then "adopted the restrictive principle of sovereign immunity in its 'Tate Letter' of 1952." *Id.* Under the "restrictive theory," sovereign immunity is granted to all "public" acts, and the salient question is whether a suit "*relates to a public act* of the foreign state." H.R. Rep. No. 94-1487 at 17 (emphasis added).

"Although the State Department espouse[d] the restrictive principle of immunity" since the Tate Letter, it was inconsistently applied because foreign states "attempt[ed] to bring diplomatic influences to bear upon the State Department's

determination." *Id.* at 7. Thus, a "principal purpose of [the FSIA] is to transfer the determination of sovereign immunity from the executive branch to the judicial branch" by codifying the restrictive theory of sovereign immunity. *Id.* at 7, 14; *accord Saudi Arabia v. Nelson*, 507 U.S. 349, 359–60 (1993).

It is thus axiomatic that under the FSIA, "a foreign state is presumptively immune from the jurisdiction of United States courts; unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state." *Nelson*, 507 U.S. at 355; *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 489 (1983); 28 U.S.C. § 1604. A "public" act, to which sovereign immunity extends, is any act of a foreign state, its agent or instrumentality, that is *not* encompassed within an FSIA exception.

Here, Plaintiffs do not assert that any FSIA exception applies. Accordingly, the only question remaining is whether a foreign state's *post-filing* liquidation of a bank warrants dismissal under the FSIA's organ clause because suit against the bank *relates to* the "public" act of liquidation. As described below, this suit unquestionably does, as explained by the pre-FSIA cases establishing what the FSIA codified. *See infra* § III.

## II. Construction of the Organ Clause Must Be Consistent with the Restrictive Theory

The FSIA's purpose is to grant immunity to public acts, 28 U.S.C. § 1602, so construction of the organ clause must not frustrate that goal. The first question, then,

is whether this lawsuit "*relates to* a public act"[4] of Lebanon. H.R. Rep. No. 94-1487 at 17 (emphasis added). The answer is "yes," because Lebanon's liquidation of JTB's assets is fully controlled by Lebanese law. JTB Br. 5–6, 44. JTB's liquidation, like any other sovereign liquidation, is a quintessentially public undertaking, an exercise of police power.[5] As the Supreme Court held in *Nelson*, "[A] foreign state's exercise of the power of its police has long been understood for purposes of the restrictive theory as peculiarly sovereign in nature." 507 U.S. at 361.

Because this liquidation is a public act, denying FSIA immunity here would undermine the FSIA's purpose of granting immunity for public acts and create friction among sovereigns. The United States would not stand for Lebanon permitting a multi-million-dollar suit against Bank X to move forward after the FDIC began liquidation, because any judgment for plaintiffs would interfere with the U.S.'s statutory scheme. Allowing this suit to proceed will offend Lebanon's dignity by interfering with its orderly, sovereign liquidation process. It drains limited funds available for the Liquidator-agent and interferes with Lebanese law's distribution

---

[4] As the Supreme Court recently held in *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021), "relat[ing] to" is a broad concept, requiring an "affiliation" or relationship "without a causal showing." *Id.* at 1027.

[5] This is why domestic sovereign immunity bars actions against entities undergoing liquidation pursuant to state or federal law. *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *Nat'l Tr. for Historic Pres. v. FDIC*, 21 F.3d 469, 470 (D.C. Cir. 1994); *Spawn v. Western Bank-Westheimer*, 989 F.2d 830, 834 (5th Cir. 1993).

priorities. J.A.961–63. Plaintiffs protest that Lebanon's liquidation scheme places a higher priority on bank customers than tort claimants (at 50–52), but the same is true in a United States bankruptcy proceeding.

Plaintiffs claim *Dole* cannot be "cabin[ed]" by the "'purposes' of the FSIA," Bartlett Br. 39, but entirely evade analysis of those purposes by making statements about the *merits* of Plaintiffs' claims. Bartlett Br. 50–51. They even proclaim to know what "should be offensive to Lebanon." *Id.* at 51. Plaintiffs do not speak for Lebanon; the Central Bank's Liquidator-agent does. JTB Br. 30–31, 44–45. Immunity under the FSIA does not turn on the foreign state's culpability. *See Kensington Int'l, Ltd. v. Itoua*, 505 F.3d 147 (2d Cir. 2007) (Congo's state-run oil company entitled to FSIA immunity). Plaintiffs' wholesale failure to analyze the FSIA's purposes is telling: Plaintiffs have *no arguments* to dispute the proposition that granting sovereign immunity here will further the Act's purposes.[6]

Indeed, applying a time-of-filing rule to the organ clause would be inconsistent with the Act's purposes, particularly impairing the sovereign immunity of *newly-created* sovereign states. In such situations, the organs of such newly created sovereign states, by definition, often would take control of privately held assets,

---

[6] Plaintiffs assert that "manipulation" might occur, Bartlett Br. 38, but only cite majority-share or removed state-law cases while failing to respond to Appellants' arguments debunking that possibility in a non-removed federal question cases. JTB Br. 23.

effectively "nationalizing" them to carry out public purposes. If Plaintiffs' construction of the FSIA is accepted, it will eviscerate sovereign immunity for newly created states—or any existing state whose organ assumes control over a private entity—by denying immunity merely because the foreign sovereign's control occurred post-filing.

## III. Construction of the Organ Clause Must Examine Pre-*Dole* and Pre-FSIA Cases

Second, construction of the organ clause must consider pre-*Dole* and pre-FSIA cases, because FSIA codified customary international law. As discussed above, while construction of the FSIA must start with the Acts' plain language, *Dole* illustrates that any construction must be consistent with the purpose and history of the Act, including consideration of pre-FSIA and (obviously) pre-*Dole* case law. This Court should do the same now with the organ clause, considering that the Supreme Court has rejected a time-of-filing rule in favor of considering *post-filing* events of jurisdictional significance in closely analogous sovereign-immunity contexts. *See Beers v. Arkansas*, 61 U.S. (21 How.) 527 (1857), *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666 (1999) and *R.R. Co. v. Alabama*, 101 U.S. 832 (1879). These cases hold that, given the general sovereign immunity principle that a sovereign cannot be sued without its consent, it may therefore withdraw its consent, even *post-filing*, to defeat jurisdiction.

10

Plaintiffs' only response to these cases is that they "involve sovereign immunity in contexts outside the FSIA." Bartlett Br. 33. But Congress legislated against a well-settled backdrop of sovereign immunity under common law and the law of nations, which embraced the principle that a sovereign may not be sued without its consent. *Franchise Tax Bd. of Calif. v. Hyatt*, 139 S. Ct. 1485, 1493 (2019); The Federalist No. 81 (Alexander Hamilton). The FSIA did not alter this well-settled principle, and thus did not undermine *Beers*, *Railroad*, or *Florida Prepaid*.

Assessing jurisdiction over a foreign state or its organ is not a one-and-done inquiry: Courts must answer the antecedent question of whether they have retained jurisdiction over a dispute. These earlier cases show that foreign states may defeat jurisdiction by post-filing actions.

This court has embraced this understanding. For example, *Oliver American Trading Co., Inc. v. Government of the United States of Mexico*, 5 F.2d 659 (2d Cir. 1924) echoes *Beers* and *Railroad*, holding that U.S. recognition of the Mexican government *post-filing* meant that the plaintiff was no longer suing a private railroad but a public one. *Oliver*, 5 F.2d at 666–67. This *post-filing change of status*—like the Central Bank's liquidation of JTB—rendered the defendant an "organ" of Mexico entitled to sovereign immunity. *Id.* Regardless of its vintage, *Oliver* shows the customary international law for sovereign immunity which the FSIA codified: a robust immunity for public acts of foreign sovereigns.

11

Plaintiffs also summarily dismiss two mid-1980s Circuit Court decisions construing the FSIA's organ clause—*Callejo,* 764 F.2d at 1101 and *Wolf,* 739 F.2d at 1458—because they "do not raise the time-of-filing rule *at all*" (which is false) and "*pre-date Dole Food*" (which is true, but irrelevant, because *Dole* never discussed post-filing events of jurisdictional significance or the organ clause). Bartlett Br. 34 (emphasis in original). Both cases reject sovereign immunity based on the commercial activities exception, but the courts necessarily tackled the *antecedent question* regarding whether defendant-banks were "organs" of Mexico at all since, like JTB, they were private banks at the time-of-filing. Like *Oliver*, both courts concluded that the banks *became organs* when nationalized by Mexico *post-filing*. *Wolf*, 739 F.2d at 1460 ("That statute [FSIA] would not have protected Banamex, as a publicly held bank, *in the early stages of this suit*, but . . . .[post-filing], the government of Mexico nationalized the bank.") (emphasis added); *Callejo*, 764 F.2d at 1106 ("Bancomer was nationalized by the Mexican Government [post-filing]. Consequently, Bancomer *is now* an 'agency or instrumentality of a foreign state'") (emphasis added).

Construction of the FSIA's text should comport with "two well-recognized and related purposes of the FSIA: adoption of the restrictive view of sovereign immunity *and codification of international law at the time of the FSIA's enactment*." *Permanent Mission of India to the U.N. v. City of N.Y.*, 551 U.S. 193, 199 (2007) (italics added); *accord Samantar v. Yousuf*, 560 U.S. 305, 320 (2010). "[W]here a

common-law principle is well established . . . the courts may take it as given that Congress has legislated with an expectation that the principle will apply. . . ." *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991). Thus, contrary to Plaintiffs' assertions, Bartlett Br. 33–34, these pre-FSIA cases show what principles Congress expected to apply in FSIA cases where events of jurisdictional significance occur post-filing. They support the conclusion that the Lebanese Central Bank's post-filing liquidation of JTB—like Mexico's post-filing nationalization of the banks in *Oliver*, *Wolf* and *Callejo*—confers organ status.

## IV. Post-*Dole* Cases Support Appellants' Contentions

Plaintiffs claim that because post-*Dole* cases have described *Dole* as setting forth a broad "holding" about time-of-filing, "[t]hat alone should be sufficient" to deny sovereign immunity here. Bartlett Br. 40. Plaintiffs over-rely on these brief descriptions, which are no more than dicta.

### A. Post-*Dole* Supreme Court Cases

Plaintiffs claim (at 3, 18, 26) that two passing Supreme Court references to *Dole* "repeatedly reaffirm[]" its holding. But this is incorrect, because neither *Altmann v. Republic of Austria*, 541 U.S. 677 (2004) nor *Samantar*, 560 U.S. at 305, relate to the issue here or substantively discussed *Dole*'s reasoning.

*Altmann* addressed whether Austria and its instrumentality, the Austrian Gallery, were entitled to FSIA immunity against claims that they wrongfully possessed

13

paintings seized by the Nazis. *Altmann*, 541 U.S. at 680–81. Defendants argued for a time-of-conduct rule, and that pre-FSIA conduct could not be subject to the FSIA. *Id.* at 686. *Altmann* disagreed, holding that the FSIA applied to pre-enactment conduct, citing *Dole* for the proposition that "[m]any of the Act's provisions unquestionably apply to cases arising out of conduct that occurred before 1976." *Id.* at 698. Its entire discussion of *Dole Foods* is limited to explaining that the Court "held that whether an entity qualifies as an 'instrumentality' of a 'foreign state' for purposes of the FSIA's grant of immunity depends on the relationship between the entity and the state at the time suit is brought rather than when the conduct occurred," *Id.* (internal citation omitted). *Altmann* "emphasiz[ed] the narrowness of [its] holding" that the FSIA applied to *pre-enactment* conduct, *id.* at 700, so its broad recitation of *Dole's* facts only support that narrow holding. Its description of *Dole* is merely a dicta summary from a later court decision, and such dicta do not bind here. *See Lange*, 141 S. Ct. at 2019; *In re MDL-731 Tax Refund Litig.*, 989 F.2d 1290, 1298 (2d Cir. 1993) (description of "holding" of earlier case is not same as holding of the case); *Valley Eng'rs v. Elec. Eng'g Co.*, 158 F.3d 1051, 1056 (9th Cir. 1998) (same). JTB's case, by contrast, does not involve *pre-enactment* conduct but rather *post-filing* conduct.

If anything, *Altmann* further supports JTB's argument *supra* that the FSIA must be construed consistent with the Act's purposes. *Altmann* concluded that

extending immunity to pre-enactment conduct was appropriate because "Congress' purposes in enacting such a comprehensive jurisdictional scheme would be frustrated if, in post-enactment cases concerning pre-enactment conduct, courts were to continue to follow the same ambiguous and politically charged 'standards' that the FSIA replaced." *Altmann*, 541 U.S. at 699. The entire logic of *Altmann*, which extends sovereign immunity to the pre-enactment conduct would be undermined if such conduct involving the organs of a sovereign state can be exempted from immunity based upon the time of filing rule.

Similarly, in *Samantar*, the Court held that an individual foreign official is not a "foreign state" entitled to FSIA immunity. 560 U.S. at 319. This holding has nothing to do with this case, yet Plaintiffs insist (at 26) that a *footnote* in *Samantar* stating that "[i]f Congress intended the FSIA to reach individuals, one would expect the Act to have addressed whether *former* officials are covered, an issue it settled with respect to instrumentalities, *see Dole Food Co. v. Patrickson*" and includes, after the citation, the following parenthetical: "('[I]nstrumentality status [must] be determined at the time suit is filed')" forecloses immunity. *Samantar*, 560 U.S. at 322 n.17. But not only is Footnote 17's parenthetical not a holding, the fact that "instrumentality status must be determined at the time suit is filed" does not mean that instrumentality status must not be reassessed where an event of jurisdictional significance occurs after filing. And like *Altmann* and *Dole*, *Samantar* emphasized the

15

importance of construing the FSIA consistent with its purposes, including "codifying the restrictive theory of sovereign immunity, which Congress recognized as consistent with extant international law." *Samantar,* 560 U.S. at 319–20.

### B. Lower Courts' Post-*Dole* Cases

Unlike Appellants, which (as discussed above) cite to numerous cases—both pre- and post-FSIA—recognizing sovereign immunity based on post-filing actions by the sovereign, Plaintiffs do not cite to a single authority where a court considered and *rejected* immunity when a previously private defendant became controlled by an organ of a foreign state post-filing.

#### 1. *This Circuit's Post-*Dole *Cases*

In *Garb v. Republic of Poland*, 440 F.3d 579 (2d Cir. 2006), this Circuit recognized that there are "certain parallels" between FSIA and Eleventh Amendment immunity because sovereign immunity—whether foreign or domestic—is grounded in universal principles. *Id.* at 592 n.15. One of these parallels is that if a "judgment would essentially be one against the state and an entity's assets are not separate from those of the state, then the entity is not a legal person separate from the state . . . ." *Compagnie Noga D'Importation Et D'Exp. S.A. v. Russian Fed'n*, 361 F.3d 676, 688 (2d Cir. 2004). Here, any judgment in Plaintiffs' favor would "essentially be one against the state" of Lebanon since it is undisputed that under Lebanese law, "the entity's [JTB's] assets" are not separate from the Lebanese Central Bank.

Moreover, like the Supreme Court in *Altmann*, this Court in *Abrams v. Société Nationale des Chemins de Fer Francais*, 389 F.3d 61 (2d Cir. 2004), discussed whether the organ clause hinged on time-of-wrongdoing. *Id.* at 64. *Abrams* noted that "[w]hile [the French national railroad] was predominantly owned by civilians during World War II [the time-of-wrongdoing], it is *now* wholly owned by the French government and, as we have previously ruled, is an 'agent' or 'instrumentality' of France under the FSIA." *Id.* (emphasis added). Therefore, the *current* status of the entity controlled, and *Abrams* only cites to *Dole* as "see also" case with a parenthetical. Once again, a parenthetical describing another court's ruling is not a holding.

Plaintiffs assert, however, that *Abrams'* phrase "now wholly-owned by the French government" necessarily "referred to time-of-filing, not the moment the defendant moved to dismiss the case or this Court decided the appeal." Bartlett Br. 48. But this argument runs contrary to the plain meaning of "now," which means "at the present time" or "in the present situation." *Now*, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/now (last accessed Feb. 15, 2022). There is no reasonable construction of "now" that is synonymous with a time in the *past*, such as the time-of-filing, as Plaintiff advocates. *Abrams* only rejected a time-of-wrongdoing rule, but left the question of *post*-filing conduct unanswered. *Abrams*, 389 F.3d at 64. Indeed, if anything, *Abrams* strongly intimates that organ

17

status may be ascertained *post-filing*, as the defendant in the case was "now" wholly owned by the French government. *Id.*

Plaintiffs next rely on *Filler v. Hanvit Bank*, 378 F.3d 213 (2d Cir. 2004), but this case is also inapplicable, as the primary question there was whether certain banks whose shares were majority-owned by an organ of a foreign state qualified as foreign states under the majority-shares clause. *Filler* held that the majority-shares clause did not extend to banks majority-owned by organs, reasoning that doing so would "eviscerate *Dole Food*" and its prohibition of "tiering" of immunity status. *Id.* at 219. The Court then analyzed whether the banks were themselves organs under the FSIA and concluded that they were not "consistent with the restrictive theory of sovereign immunity codified in the FSIA," because "while the KDIC [the organ of Korea] serves a public function in ensuring the stability of the South Korean banking system," the defendant banks were reverting back to private ownership, and any "denial of sovereign immunity to [the banks] would not undermine a public function of the government of Korea . . . ." *Id.* at 220.

Here, by contrast, the Lebanese Central Bank's control over JTB is ongoing and complete under Lebanese law. J.A.960–62 (Baasiri Decl. ¶¶ 26–28, 41–42, 46–48) (liquidation requires JTB to cease operating and leads to permanent deletion).

Lebanese law transferred JTB's assets to the Central Bank,[7] and its Liquidator-agent is liquidating pursuant to the statute. J.A.959, 961–62 (Baasiri Decl. ¶¶ 25–33, 42, 45–57). In liquidating JTB, the Central Bank, like the KDIC in *Filler,* "serves a public function[.]" *Filler*, 378 F.3d at 220. Moreover, unlike the banks in *Filler*, JTB cannot "revert[] back to private ownership." J.A.960 (Baasiri Decl. ¶ 28, 47) (liquidation effects permanent deletion of JTB as ongoing bank). Thus, unlike *Filler*, denying sovereign immunity here would "undermine a public function of the government" of Lebanon—orderly liquidation pursuant to Lebanese law.

Plaintiffs' citations (at 27–28, 44) to two decisions of this Court are similarly inapposite. In *European Community v. RJR Nabisco, Inc.*, the Court considered whether the EC was a foreign state for diversity jurisdiction, 764 F.3d 129 (2d Cir. 2014), *rev'd sub nom., RJR Nabisco, Inc. v. Eur. Cmty*., 579 U.S. 325 (2016), a situation implicating the longstanding rule that *diversity jurisdiction* is determined at time-of-filing. *See Dole*, 538 U.S. at 478. There are compelling reasons why time-

---

[7] That JTB's New York correspondent account is frozen by OFAC does not contradict that Lebanon's liquidation law transferred all interests in JTB's assets to the Central Bank. JTB Br. 42–43. OFAC regularly freezes assets owned by foreign states, recently freezing assets of the Afghanistan Central Bank. The White House, Fact Sheet: Executive Order to Preserve Certain Afghanistan Central Bank Assets for the People of Afghanistan (Feb. 11, 2022), *available at* https://www.whitehouse.gov/briefing-room/statements-releases/2022/02/11/fact-sheet-executive-order-to-preserve-certain-afghanistan-central-bank-assets-for-the-people-of-afghanistan/ (last accessed Feb. 15, 2022).

of-filing is appropriate for diversity cases, as well as removed cases (such as *Dole*). JTB Br. 20–27. But none of these reasons apply here, in a non-removed federal question case. *Id.* at 23. Plaintiffs never address these arguments, nor do they explain how a footnote in *RJR*, addressing time-of-filing in the context of a *diversity* case, is salient to the Court's antecedent question of its continued jurisdiction.

*Kirschenbaum v. 650 Fifth Ave. & Related Properties*, 830 F.3d 107 (2d Cir. 2016), likewise does not help Plaintiffs. There, plaintiff obtained judgment against Iran and sought to execute against assets held in the U.S. by a foundation and a company. *Id.* at 117. Defendants argued that they were *not* agents/instrumentalities of Iran in an effort to shield their assets from execution under the Terrorism Risk Insurance Act. *Id.* at 121. This Court agreed, concluding that defendants were *not* agents or instrumentalities of Iran. *Id.* at 117. In reaching this conclusion, *Kirschenbaum* expressly did "not address" whether defendants were "organs" of Iran or "majority owned" by Iran under the majority-shares clause. *Id.* at 126. The Court held only that defendants "are U.S. citizens exempted from FSIA agency or instrumentality status under § 1603(b)(3)."[8] *Id.* The court then explicitly declined to address the definition of "organ" of a foreign state. *Id.*

---

[8] Section 1603(b)(3) requires that to qualify for immunity as an agent or instrumentality, the entity must not be "a citizen of a State of the United States . . ." 28 U.S.C. § 1603(b)(3).

*Kirschenbaum*'s only citation to *Dole* is not necessary to reach that conclusion, stating only that "[b]ecause jurisdiction 'depends upon the state of things at the time . . . the action [is] brought' . . . .an entity's agency or instrumentality status under the FSIA 'is determined at the time of the filing of the complaint,' and not necessarily 'as of the time an alleged tort or other actionable wrong occurred.'" 830 F.3d at 126. *Kirschenbaum* says nothing of relevance to this case, and does not explain how *Dole* might apply in the organ-clause context.

2. *Other Circuits' Post-*Dole *Cases*

a. *Non-FSIA cases*

Plaintiffs disparage Appellants' citation to post-*Dole,* non-FSIA cases such as *Connectu LLC v. Zuckerberg*, 522 F.3d 82 (1st Cir. 2008), on the basis that they are "not [] FSIA case[s]." Bartlett Br. 35. But they offer no reasoning for why non-FSIA cases regarding general principles concerning the time-of-filing rule are inapplicable, and, indeed, cite to non-FSIA cases themselves. For example, *Connectu* stands for the proposition that a time-of-filing rule is *not generally appropriate outside diversity*, as "the letter and spirit of that rule apply most obviously in diversity cases, where the rule originated, and where heightened concerns about forum-shopping and strategic behavior offer special justifications for it." 522 F.3d at 92.

None of the non-FSIA cases Plaintiffs cite disagree. For example, *Spear Marketing v. BancorpSouth Bank*, 791 F.3d 586 (5th Cir. 2015), applied a time-of-filing

rule in the *non-FSIA* context of ascertaining jurisdiction over state-law claims that had been *removed* based on complete preemption under the Copyright Act. *Id.* at 592. The court held that *as with diversity cases*, jurisdiction over *removed* state-law cases could not be defeated by post-filing actions. *Id.* at 592–93; *accord Dole*, 538 U.S. at 478. This case, by contrast, is not a removed state-law case and thus does not involve, unlike diversity or removal cases, attempted jurisdictional manipulation. JTB Br. 23.

Furthermore, Plaintiffs themselves rely on the non-FSIA cases of *Carr v. Alta Verde Industries*, 931 F.2d 1055 (5th Cir. 1991), and *Nuveen Municipal Trust v. WithumSmith Brown*, 692 F.3d 283 (3d Cir. 2012). Plaintiffs cite broad language in *Carr* that "[a]s with all questions of subject matter jurisdiction except mootness, standing is determined as of the date of the filing of the complaint, and subsequent events do not deprive the court of jurisdiction," *Carr*, 931 F.2d at 1061, but that statement is clearly wrong: while "[m]ost standing cases consider whether a plaintiff has satisfied the requirement when filing suit . . . Article III demands that an 'actual controversy' persist throughout all stages of litigation." *Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013). *Carr* has no persuasive value beyond its facts, which concern whether a polluter's post-violation, post-suit remedial actions were sufficiently robust to moot a citizen suit by precluding the possibility of the pollution ever recurring.

22

Plaintiffs claim that *Nuveen* is important because it involved a federal question. Bartlett Br. 37. But again, Plaintiffs overread *Nuveen*, and a careful reading supports Appellants, not Plaintiffs. *Nuveen* admitted that it "once declined to apply the time of filing rule in a federal question case," but in the specific bankruptcy context of *Nuveen*, a time-of-filing rule was warranted. *Nuveen*, 692 F.3d at 294.

*Nuveen* involved *state-law* claims filed in federal court because the case "related to" a bankruptcy proceeding. *Nuveen*, 692 F.3d at 287–88. Federal law grants district courts broad jurisdiction over actions "*related to*" bankruptcy cases. *See* 28 U.S.C. § 1334(b) (emphasis added); *Nuveen*, 692 F.3d at 287–88, 293. It concluded that Congress intended "related to" to be construed broadly, encompassing claims that "could *conceivably* have any effect on the estate being administered in bankruptcy." *Id.* at 293–94 (emphasis in original). Consistent with this purpose, *Nuveen* held: "Conceivability is determined at the time a lawsuit is filed." *Id.* at 294.

*Nuveen* therefore emphasizes that determining whether time-of-filing applies depends on the *underlying statute's purposes.* The same broad purpose underlies FSIA immunity, which as the House Report makes clear, attaches whenever "plaintiff's claim *relates to* a public act of the foreign state . . . ." H.R. Rep. 94-1487 at 17 (emphasis added). Like *Nuveen*, Plaintiffs' claims here "could *conceivably* have any effect on the estate being administered in [liquidation]," *id.* at 293–94, by

23

undermining Lebanon's liquidation process and priorities. J.A.961–63 (Baasiri Decl. ¶¶ 36–57).

        b.   *FSIA cases*

Plaintiffs also cite FSIA cases that apply a time-of-filing rule, but in distinguishable contexts. For example, in *Olympia Express, Inc. v. Linee Aeree Italiane, S.P.A.*, 509 F.3d 347 (7th Cir. 2007), the Seventh Circuit unremarkably applied time-of-filing to a state-law case removed based on a claim of immunity under the majority-shares clause—exactly the same procedural posture as *Dole*. *Id.* at 348–49. Similarly, the Ninth Circuit's *United States v. Pangang Grp. Co.* decision unremarkably applied *Dole*'s time-of-filing rule for a claim of immunity under the majority-shares clause in a criminal prosecution. 6 F.4th 946, 956–57 (9th Cir. 2021).

The Fourth Circuit's *Yousuf v. Samantar* decision is likewise unhelpful to Plaintiffs, holding only that FSIA immunity does not extend to *individual* foreign officials, 552 F.3d 371, 382 (4th Cir. 2009), as affirmed in *Samantar*. 560 U.S. 305. The Tenth Circuit's *Orient Mineral Co. v. Bank of China* opinion, involved a state-law claim against the Bank of China. 506 F.3d 980, 989 (10th Cir. 2007). It was undisputed that the Bank was an organ of China, and the only issue was whether the commercial activities exception applied. *Id.* In a *footnote*, the court noted that the post-filing sale of twenty percent of the Bank's stock to entities in Scotland and Singapore was not relevant based on *Dole*'s time-of-filing rule. *Id*. at 992 n.16. It

also was not relevant because sale of stock cannot effect the *organ* clause, and the parties did not dispute organ status. *Id.*

The Third Circuit's decision in *USX Corp. v. Adriatic Ins. Co*., 345 F.3d 190 (3d Cir. 2003), involved state-law claims against insurance companies removed to federal court. *Id.* at 197. The district court ruled that the defendant qualified for immunity under the majority-shares clause because it was a subsidiary of another entity that was majority-owned by Ireland. *Id.* at 199. After the Supreme Court decided *Dole*, however, the "parties agree[d] that *Dole* is controlling here to the extent that the district court upheld its exercise of jurisdiction predicated on the majority ownership prong of section 1603(b)(2) . . . ." *Id.* at 200. Defendants then argued that jurisdiction existed under the "organ prong" of the FSIA. *Id.* at 203.

The Third Circuit concluded that determining organ status requires a multifactor analysis, because there was a "need for a *more flexible approach under the organ prong* of section 1603(b)(2) than the Court adopted in *Dole* with respect to the ownership prong of that section." *Id.* at 208 (emphasis added). Using this "flexible approach under the organ prong," *USX* concluded that "tiering arrangements," although forbidden for the *majority-shares* clause per *Dole*, may qualify for immunity under the organ clause. *Id.* at 208–09.

*USX* holds nothing regarding time-of-filing. Plaintiff cites it for—yet again—a *footnote*, which states that because plaintiff "obtained its insurance coverage

. . . . before Ireland became involved . . . it was not dealing with an organ of Ireland at that time." *Id.* at 208 n.16. The footnote cites "*see Dol*e" only for the organ-status of the defendant "when USX sued it and *removed the case*." *Id.* (emphasis added). The footnote merely addresses a concern, raised in the body of the opinion, that "for an entity to be an organ . . . it must engage in a public activity on behalf of the foreign government" because "[r]equiring less would open the door to situations in which a party only tangentially related to a foreign state could claim foreign state status" and "would not further the goal of avoiding adverse foreign relations." *Id.* at 208. The footnote, in other words, explains why, consistent with the FSIA's purposes, organ status was appropriate, as the defendant was *already an organ* "when [plaintiff] sued it *and removed the case*." *Id.* at 208 n.16 (emphasis added). Whether *USX* is referring to the time-of-filing or the time-of-removal (or both) is unclear, but the case was a *removed* state-law case and, as *Dole* recognized, "[i]t would be anomalous to read [the removal statute's] words . . . differently" than the diversity statute." *Dole*, 538 U.S. at 478. *USX* thus does not "hold" anything regarding time-of-filing. It holds only that the organ clause, unlike the majority-shares clause, permits "tiering" because the organ clause requires a "*more flexible approach*" than the majority-shares prong. *USX*, 345 F.3d at 208. *USX* thus supports Appellant's position that these two clauses can (and should) be *construed differently*.

26

Finally, *TIG Insurance Co. v. Republic of Argentina*, 967 F.3d 778 (D.C. Cir. 2020), adopts a time-of-filing rule but not for the organ clause. There, plaintiff sought to execute a judgment against Argentina by attaching a building it listed for sale. *Id.* at 780. After filing suit, Argentina withdrew the listing and the district court concluded that this immunized the property from execution because it was no longer being used for "commercial activity" as required by the FSIA. *Id.*

The D.C. Circuit reversed, holding that "whether a property is 'used for a commercial activity' depends on the totality of the circumstances existing when the motion for a writ of attachment is filed, not when the writ would issue." *Id.* It reasoned that the FSIA provision authorizing attachment of commercial property must be resolved by looking at the "text and purpose of the FSIA," *id.* at 782, and "Congress cannot have intended . . . [to] allow a foreign sovereign unilaterally to thwart an otherwise valid attachment simply by removing the property from the market . . . ." *Id.* at 785. Imposing a time-of- filing rule for this provision "avoids such gamesmanship[.]" *Id.*

*TIG* embraced time-of-filing for the FSIA's attachment clause because—like diversity and removal—it holds potential for "gamesmanship" that could thwart the FSIA's purposes. No such potential manipulation is present here where Lebanon has determined to liquidate an insolvent bank, and plaintiffs have not argued that time-of-filing would violate FSIA's purpose of providing immunity for all public acts.

27

## V.    Substitution Is Warranted

Plaintiffs argue that the district court "assumed *arguendo* that the relevant interest had transferred" and that it "ruled that *even if there definitely was a transfer of interest*, it would deny substitution." Bartlett Br. 55 (emphasis in original). This is patently false. The district court stated as follows: "*I need not decide, however, whether the requisite transfer of interest has occurred* because I agree with Plaintiffs' further contention that substitution here would complicate the proceedings and unfairly frustrate Plaintiffs' ability to obtain a judgment against the party they properly sued: JTB." J.A.1275 (italics added); JTB Br. 41, 42.

The district court's failure to even *consider* "whether the requisite transfer of interest has occurred" is legal error, particularly given its concomitant conclusion that "by operation of Lebanese law, [the Liquidator-agent] is charged with disposing of *all of JTB's assets*." J.A.1279 (emphasis added).

Plaintiffs' only remaining argument is continued overreading of *Dole*: "Whether Dr. Baasiri is the real party in interest . . . is irrelevant because it does not change the jurisdictional analysis under *Dole Food*, and thus does not affect the substitution analysis." Bartlett Br. 56. Plaintiffs assert (at 43–50) that *Banco Economico* and *Galadari*, are irrelevant because they make no mention of a time-of-filing rule. *Id.* at 59, 60. But JTB cited these cases in support of substitution, not sovereign immunity. They hold that when a foreign liquidator assumes control over an entity post-

28

filing, a "transfer of interest" occurs that warrants substitution of the liquidator as the real party in interest. JTB Br. 43–50. About this issue—transfer of interest—Plaintiffs have nothing to say.

## CONCLUSION

For the foregoing reasons, the Court should reverse the district court's denial of the motion to substitute as well as its denial of the motion to dismiss based on sovereign immunity.

Dated: February 16, 2022                    Respectfully submitted,

/s/ David B. Rivkin, Jr.
DAVID B. RIVKIN, JR.
ELIZABETH P. FOLEY
MARK W. DELAQUIL
KENDALL E. WANGSGARD
BAKERHOSTETLER LLP
Washington Square, Suite 1100
1050 Connecticut Ave., N.W.
Washington, D.C. 20036
(202) 861-1731
drivkin@bakerlaw.com

*Counsel for*
*Movant-Appellant and*
*Defendant-Appellant*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing complies with the length limitations of Fed. R. App. P. 32(a)(7) because it is 6,958 words. It complies with the typeface and type-style requirements of Rule 32(a)(5) and Rule 32(a)(6) because it is printed in 14-point Times New Roman font, a proportionally spaced face with serifs.


/s/ David B. Rivkin, Jr.

## CERTIFICATE OF SERVICE

I hereby certify that on February 16, 2022, a true and correct copy of the foregoing was filed via the Court's CM/ECF system and served via electronic filing upon all counsel of record in this case.

<u>/s/ David B. Rivkin, Jr.</u>