# No. 21-2019

_____

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**
_____

| | |
|---|---|
| **Robert Bartlett, et al.,** | ) |
| | ) |
|     **Plaintiffs-Appellees,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **Dr. Muhammad Baasiri,** | ) |
| | ) |
|     **Movant-Appellant,** | ) |
| | ) |
| **Jammal Trust Bank SAL,** | ) |
| | ) |
|     **Defendant-Appellant.** | ) |

_____

On Appeal from the United States District Court
for the Eastern District of New York
_____

**PLAINTIFFS-APPELLEES' OPPOSITION TO PROFESSOR JOSEPH W. DELLAPENNA'S UNTIMELY MOTION FOR LEAVE TO APPEAR AS AMICUS CURIAE AND FILE PROPOSED BRIEF IN SUPPORT OF MOVANT-APPELLANT AND DEFENDANT-APPELLANT**
_____

## INTRODUCTION

Professor Dellapenna's ("Movant") motion (the "Motion" or "Mot.") to file an amicus brief is nearly *two years* late. Movant's excuse for its extreme lateness is that its incorrect assertion that a "key sub-issue" in this appeal was raised "only after oral argument." But as the Court itself noted, that issue was thoroughly addressed in the parties' briefs—and has now been addressed again in the United States' amicus brief.

The *actual* reason for the untimely motion, as admitted in a footnote buried some 44 pages into the Motion and its attachments, is that Movant's counsel, which "contributed money for the preparation of this brief," also represents a party in another appeal pending in this Court, *Schansman v. Sberbank of Russia PJSC*, No. 22-cv-3097. That appeal is still being briefed and affirmance here may be fatal to Movant's counsel's client. An attempt to bolster a litigation position in a different appeal is hardly a basis for the "discourtesy" of the late motion.

## ARGUMENT

As Movant admits, the deadline for its proposed amicus brief in support of Defendant-Appellant Jammal Trust Bank and Movant-Appellant Dr. Baasiri (together, "JTB") expired *20 months ago*. Mot. at 4-5. That deadline was November 3, 2021. Federal Rule of Appellate Procedure 29(a)(6) states that "[a]n amicus curiae must file its brief, accompanied by a motion for filing when necessary, no later than

1

7 days after the principal brief of the party being supported is filed." As Movant concedes, its proposed amicus brief was due "within 7 days of JTB's brief," which was "filed … on October 27, 2021." Mot. at 4. As Movant's cited case explained, that "[t]he language of that rule sets forth no exceptions." *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 458 F.3d 359, 361 (4th Cir. 2006). Thus, the proposed brief is not just belated; it is entirely untimely; indeed, *Larue* called an untimely brief from the Secretary of Labor "a discourtesy both to the parties in that case and to the court," and only permitted it "out of respect for the Secretary." *Id.*

Movant's excuse for filing its brief now is that it asserts that a "key sub-issue" was purportedly only "crystallize[d]" or "fully ripened" "[o]nly after oral argument." Mot. at 3, 5, 6, 9. As shown below, that is entirely untrue—that "key" issue was argued extensively in both parties' briefs, as the Court itself noted. Movant's *actual* reason is buried in a footnote—not in the motion, but in the proposed amicus brief attached as an exhibit to the motion:

> Wilk Auslander LLP, counsel of record for amicus, assisted in preparing this brief and contributed money for the preparation of this brief. Separately, counsel of record represents Sberbank of Russia PJSC in the matter of *Schansman, et al. v. Sberbank of Russia PJSC, et al.*, No. 22-cv-3097, currently pending before this Court, in which the scope and application of the time-of-filing rule of *Dole Food* is likewise at issue.

Proposed Amicus Brief at 1 n.1 (PDF p. 44).

2

Setting aside the use of the word "Separately,"[1] it is the *Schansman* appeal that precipitates the filing of the late amicus brief in this case (and, indeed, pays for it). The proposed amicus brief is paid for by counsel for the appellant in *Schansman*—where an amicus brief in support of appellant would *also* be untimely (the appellees' principal brief in *Schansman* was filed the same day as the Motion was here). The motion is thus simply an attempt to belatedly bolster *a different* appeal on the same issue while claiming the amicus brief, paid for by counsel for a party in that other appeal, would provide "neutral academic treatment." Mot. at 8.

Movant cites no cases in this Circuit permitting the filing of a late amicus brief, much less one that is *nearly two years late*. Rather, it supplies two cases from this Circuit that do not support its position. The first does not mention granting a late filing at all—Movant only notes that a motion to file an amicus brief in that case came after the typical deadline. *See id.* at 5 (discussing *Chen v. Stony Brook Univ. Advancement*, No. 20-4250, 2022 WL 289317, at *1 n. 2 (2d Cir. Feb. 1, 2022)). The second case involves this Court's *denial* of leave to file a late amicus brief. *Id.* at 5-6 (discussing *Kreisberg ex rel. N.L.R.B. v. Healthbridge M*gmt., LLC, No. 12-4890, 2013 WL 690977, at *1 (2d Cir. Jan. 30, 2013)).

---

[1] For the avoidance of doubt, the specific attorneys listed as counsel for Movant are listed as attorneys for Sberbank in *Schansman*.

3

This Court *has* permitted late-filed amicus briefs in narrow circumstances not present here. For example, it did so where an amicus intended to support the appellant after the appellee filed its brief, because the brief raised a discrete issue for the first time *in a cross-appeal*. *See* Motion of the National Congress of American Indians for Leave to File Out of Time Amicus Curiae Brief in Support of Defendant-Appellant-Cross-Appellee King Mountain Tobacco Company Inc., *State of New York v. Mountain Tobacco Co.*, 2018 WL 3618196, ECF No. 130 (2d Cir. filed July 27, 2018). In that scenario, the amicus is in fact supporting the appellant in its capacity as cross-*appellee*, necessarily complicating the timing. Moreover, there the parties consented to the filing, and the proposed amicus did not wait *20 months* to file its motion. Another example is *Larue*, discussed above. That case does not stand for the proposition that the "discourtesy" implicated in the Motion should be tolerated.

\*\*\*\*

Movant here argues that a "key sub-issue" arose "[o]nly after oral argument" that justifies its untimely amicus brief:

> the sub-issue of whether the Court, in applying *Dole Food*, ought to draw a distinction between a defendant seeking immunity based on its pre-filing status (which *Dole Food* bars) and a defendant seeking immunity based on post-filing changes in status (a question on which *Dole Food* is silent, as amicus' proposed brief thoroughly explains).

4

Mot. at 3. *See also id.* at 5 (arguing that "the Court itself precisely identified that issue only *after* the close of oral argument"); 8 ("that brief itself did not indicate that the case would most likely turn on whether the time-of-filing rule barred immunity based on post-filing changes in status.").

The assertion is unsupportable because—obviously—this "key" issue was covered thoroughly by the parties. Far from identifying the issue post-argument, the Court called it "one of the issues *briefed*" by the parties in requesting an amicus brief from the United States:

> One of the issues **briefed** and discussed by the parties is whether the time-of-filing rule from *Dole Food Co. v. Patrickson*, 538 U.S. 468 (2003), precludes a **post-filing** claim of sovereign immunity under the Foreign Sovereign Immunities Act ("FSIA") when the defendant, sued as a private party, goes into liquidation under foreign law in a process governed by a foreign central bank.

Order, ECF No. 112, at 1 (emphasis added).

And, indeed, JTB argued the issue extensively in its opening brief. For example:

> Unlike in *Dole Food*, the foreign state here (Lebanon) has not "severed" its ties to the defendant-corporation "*before* suit was commenced." *Dole Food*, 538 U.S. at 480. Indeed, it is the opposite: Lebanon, through its Central Bank and Liquidator-agent, have assumed control of the corporate-defendant (JTB) *after* Plaintiffs' lawsuit was filed.

JTB Opening Brief at 29 (emphasis added by JTB). JTB raised this repeatedly—often italicizing the relevant terms: *See id.* at 24-25 ("*post-filing* act"); 25 (discussing "[a] sovereign's post-filing acts"); 26 (transfer of assets "*post-filing* to an organ of

5

Puerto Rico"); 28 (arguing *Dole Food* only applied where sovereignty ceased "*before suit was commenced*"); 32 ("post-filing"); 33-35 (using the term "post-filing" five times) (emphases all supplied by JTB).

And Appellees naturally responded—indeed, Appellees' brief has a section headed, "Dole Food's Time-of-Filing Rule Is Not Limited to Pre-Filing Privatizations." Opp. at 41. And earlier in their brief, Appellees argue:

> But *Dole Food* suggests no such limitations…. For example, this Court applied *Dole Food*'s time-of-filing rule to a post-filing change in status in deciding that the European Community's post-filing incorporation into the European Union did not alter jurisdiction "as the court's subject matter jurisdiction and a party's instrumentality status for purposes of § 1603 are both determined at the time when the complaint is filed."

*Id.* at 21 (quoting *Eur. Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 129, 143 n.15 (2d Cir. 2014)). Appellees addressed JTB's "post-filing" arguments explicitly on pages 34-35. And on page 38, Appellees pointed out that "time-of-filing rule avoids … gamesmanship by ensuring that post-filing maneuvering by foreign sovereigns will not affect the result." *Id.* (quoting *TIG Ins. Co. v. Republic of Argentina*, 967 F.3d at 785 (D.C. Cir. 2020)).

As Appellees explained, *Dole Food*'s holding that the "present" meant the "time of filing" was not an arbitrary result of the facts of that case but was premised on "the longstanding principle that 'the jurisdiction of the Court depends upon the state of things at the time of the action brought.'" 538 U.S. at 478 (quoting *Keene Corp. v. United States*, 508 U.S. 200, 207 (1993)). *See* Opp. at 20, 24-25, 31, 41.

6

And as Appellees showed, the D.C. Circuit explained that "[a] statute's use of the present tense ordinarily refers to the time the suit is filed, not the time the court rules." Opp. at 46-47 (quoting *TIG Ins.*, 967 F.3d at 783). And Appellees further argue it on pages 40 and 41-43, in a dedicated section on post-filing changes in status.

On reply, JTB returned to the topic at length, arguing that *Dole Food* did "not address the effect of *post-filing* developments" rather than "time-of-wrongdoing versus time-of-filing," Reply at 2. And again: "*Dole* 'said nothing' absolving a court from its duty to ensure that jurisdiction *remains* proper where an event of jurisdictional significance occurs post-filing." *Id.* at 4. JTB again argued that *Dole Food* did not address "the present, *post-filing* status of an entity," necessary to an entirely invented "federal court's continuing obligation to assure subject-matter jurisdiction." *Id.* at 5. And again, it argued: "the only question remaining is whether a foreign state's *post-filing* liquidation of a bank warrants dismissal under the FSIA's organ clause." *Id.* at 7.

Movant also attempts to suggest that the Court's invitation to the United States to file an amicus brief somehow excuses its lateness. Mot. at 9. Thus, Movant argues that its extreme lateness is justified by what it calls "[t]he unusual posture of this appeal." Mot. at 4. There is nothing unusual about the posture of the appeal. No relevant issues were raised at or after oral argument for the first time and no post-

7

argument supplemental briefing was ordered from the parties, much less briefing on issues not in their briefs.

Far from a general call for amicus briefs, the Court specifically requested that brief from the United States "[i]n light of the potential foreign-relations implications of answering this question, as well as the interest of the United States in the interpretation and application of the FSIA." Order, ECF No. 112. The United States is clearly uniquely positioned to provide that view, which is why the Court requested it. It was not an invitation to others, including retired law professors, to weigh in for "further analysis." Mot. at 6. Indeed, *LaRue* explains that using some later phase in the case as an excuse to introduce a partisan amicus brief "is a disfavored litigation tactic and fails to serve the litigants' interest in having all views considered thoroughly at the initial briefing and argument stage." 458 F.3d at 361.

Movant also notes that the United States received an extension, as if that somehow also applied to him. Mot. at 4, 9. But the U.S. requested the extension (1) in advance, (2) with the parties' consent, and (3) for 45 days—not after missing the deadline, with opposition, and *nearly two years later*, as Movant has. The United States also gave a reasonable justification for an extension: "[t]he process of preparing recommendations for the Solicitor General concerning amicus participation often is time consuming" which was the case here where "the Department of Justice is closely consulting with the Department of State on a

8

complex question of statutory interpretation on an issue that has potential foreign-relations implications…." U.S. Mot., ECF No. 121, at 4-5. Movant's justification relies on mispresenting the parties' papers to the Court.

Finally, the Court now has the United States' views on the issue of post-filing changes in sovereignty, as it requested. If anything, Appellees should be given the opportunity to respond to *that* brief, rather than face *another*, *uninvited* amicus brief in support of JTB's position.

## CONCLUSION

The Motion is audacious: it asks for extreme relief and is premised on a unsupportable representation of the record in support of another appeal, not to "provide[] great value to the court." Mot. at 8. It should be denied.

Dated: June 29, 2023
     Hackensack, NJ

          Respectfully submitted,

          /s/ Michael Radine

          **OSEN LLC**
          Michael Radine
          Gary M. Osen
          Ari Ungar
          Aaron A. Schlanger
          Dina Gielchinsky
          190 Moore Street, Suite 272
          Hackensack, New Jersey 07601
          (201) 265-6400

          *Attorneys for Plaintiffs-Appellees*

9

# CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements and Type Style Requirements

1.　This document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 2,151 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.　This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman.

Dated: June 29, 2023

/s/ Michael Radine
*Attorney for Plaintiffs-Appellees*

# **CERTIFICATE OF SERVICE**

I hereby certify that on June 29, 2023, I electronically filed the foregoing document with the United States Court of Appeals for the Second Circuit by using the CM/ECF system.

I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the appellate CM/ECF system.

Dated: June 29, 2023

/s/ Michael Radine
*Attorney for Plaintiffs-Appellees*