# 21-2019

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT

◆◆◆

ROBERT BARTLETT, *et al.*,

*Plaintiffs-Appellees,*

—against—

DR. MUHAMMAD BAASIRI,

*Movant-Appellant,*

JAMMAL TRUST BANK SAL,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## SUPPLEMENTAL BRIEF IN RESPONSE TO THE BRIEF OF THE UNITED STATES AS *AMICUS CURIAE*

MICHAEL RADINE
GARY M. OSEN
DINA GIELCHINSKY
AARON SCHLANGER
OSEN LLC
190 Moore Street, Suite 272
Hackensack, New Jersey 07601
(201) 265-6400

*Attorneys for Plaintiffs-Appellees*

## TABLE OF CONTENTS

BACKGROUND ................................................................................... 1

ARGUMENT ........................................................................................ 3

    A.   The United States Disregards *Dole Food*'s "Unequivocal" Holding that Instrumentality Status is Determined at the Time of Filing Suit. ................................................................................................ 4

    B.   The United States Cannot Justify a Rule that, Contra *Dole Food*, the FSIA's Present Tense Means Any Time Post-Filing. .............. 8

CONCLUSION ................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Abrams v. Société Nationale Des Chemins De Fer Francais*,
 389 F.3d 61 (2d Cir. 2004) ................................................................. 5

*Anderson v. Watts*,
 138 U.S. 694 (1891) .......................................................................... 7

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
 932 F.3d 126 (3d Cir. 2019) ............................................................ 11

*Dole Food Co. v. Patrickson*,
 538 U.S. 468 (2003) ................................................................ *passim*

*Eur. Cmty. v. RJR Nabisco, Inc.*,
 764 F.3d 129 (2d Cir. 2014) ..................................................... 4, 6, 8

*Keene Corp. v. United States*,
 508 U.S. 200 (1993) ...................................................................... 6, 8

*Minneapolis & St. L. R. Co. v. Peoria & P. U. Ry. Co.*,
 270 U.S. 580 (1926) .......................................................................... 6

*Oliver American Trading Co. v. Government of the United States of Mexico*,
 5 F.2d 659 (2d Cir. 1924) ................................................................ 10

*TIG Ins. Co. v. Republic of Arg.*,
 967 F.3d 778 (D.C. Cir. 2020) .................................................... 9, 11

*Yousuf v. Samantar*,
 552 F.3d 371 (4th Cir. 2009) .......................................................... 10

**Statutes**

28 U.S.C. § 1602 .................................................................................... 2

28 U.S.C. § 1603 ........................................................................... *passim*

Plaintiffs-Appellees ("Appellees") respectfully submit this supplemental brief in response to the United States' amicus brief. The United States' brief is directly contrary to controlling law from the Supreme Court and prior precedent from this Court. Whatever the policy interests of the United States, its legal analysis is defective.

## BACKGROUND

Appellees brought suit against Jammal Trust Bank ("JTB"), alleging that it aided and abetted dozens of terrorist attacks Hezbollah committed, killing and maiming American service members, including Appellees. *See generally*, Appellees' Opposition Brief ("Opp.") at 5-15. When Appellees filed the suit, JTB was a private entity engaged in purely commercial activity. Months after suit was filed, the United States designated JTB a Specially Designated Global Terrorist ("SDGT") pursuant to Executive Order 13224 "for brazenly enabling Hizballah's financial activities." JA-881-82. *See* Opp. at 6. It further explained that "[c]orrupt financial institutions like Jammal Trust are a direct threat to the integrity of the Lebanese financial system," and that JTB assisted an entity "which funnels money to the families of suicide bombers …." JA-881-82. *See* Pls. Opp. at 6.

That designation led to the collapse of JTB's business, propelling it into liquidation. The Central Bank of Lebanon appointed a liquidator and—a year later—JTB and the liquidator moved to dismiss JTB from the suit on the ground that, *inter alia*, JTB had effectively become an organ of Lebanon and thus enjoyed sovereign immunity pursuant to the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602 *et seq.* ("FSIA").

The district court denied the motion to dismiss. On the sovereign immunity issue, the district court correctly explained that the Supreme Court in *Dole Food* held "instrumentality status [must] be determined at the time suit is filed," and "[i]t is undisputed that JTB lacked instrumentality status 'at the time suit [was] filed.'" SPA-16 (quoting *Dole Food Co. v. Patrickson*, 538 U.S. 468 (2003)). JTB then filed this interlocutory appeal.

Following briefing and oral argument, this Court issued the following order directed at the U.S. Department of State:

> On March 2, 2023, the Court heard oral argument in this appeal. One of the issues briefed and discussed by the parties is whether the time-of-filing rule from *Dole Food Co. v. Patrickson*, 538 U.S. 468 (2003), precludes a post-filing claim of sovereign immunity under the Foreign Sovereign Immunities Act ("FSIA") when the defendant, sued as a private party, goes into liquidation under foreign law in a process governed by a foreign central bank. In light of the

2

potential foreign-relations implications of answering this question, as well as the interest of the United States in the interpretation and application of the FSIA, we hereby solicit the views of the U.S. Department of State on this issue.

Order, ECF No. 112.

After receiving an extension, the United States (presumably on behalf of the State Department) filed its brief on June 20, 2023. The United States took the position that, "if such a defendant becomes an agency or instrumentality of a foreign state within the meaning of the FSIA in virtue of the liquidation (an issue governed in part by foreign law that the United States does not address), it is entitled to immunity from suit under the FSIA, subject to the exceptions enumerated by that statute; *Dole Food* is not to the contrary." U.S. Amicus Brief ("Br.") at 1.

Because the brief is in support of Appellants and comes long after any of the normal opportunities to brief or otherwise make arguments, Appellees sought leave to file this supplemental brief.

## ARGUMENT

The Supreme Court set down a straightforward rule: "We think the plain text of" the definition of instrumentalities of foreign states in 28 U.S.C. § 1603, "because it is expressed in the present tense, requires that

3

instrumentality status be determined at the time suit is filed." *Dole Food*, 538 U.S. at 478.

Courts, including this one, have made clear that the Supreme Court meant just that: instrumentality status is determined at the time of filing—not before, and *not after*. As this Court explained:

> *Since this lawsuit was filed*, the European Community has been incorporated into the European Union. Despite this change, the European Community remains the relevant entity, as *the court's subject matter jurisdiction and a party's instrumentality status for purposes of § 1603 are both determined at the time when the complaint is filed.*

*Eur. Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 129, 143 n.15 (2d Cir. 2014) 2014), *rev'd and remanded on other grounds*, 579 U.S. 325 (2016) (emphasis added). And indeed, the United States in its brief acknowledges that *Dole Food* "denies an entitlement to immunity to any entity that fails to possess the required relationship at the time of suit." Br. at 13-14 (citing *Dole Food*, 538 U.S. at 480).

### A. The United States Disregards *Dole Food*'s "Unequivocal" Holding that Instrumentality Status is Determined at the Time of Filing Suit.

To avoid the clear rule set forth in *Dole Food*, the United States' brief ties itself in knots introducing (with little elaboration) diverse and ill-defined concepts like "general law," "substantive federal law,"

4

"customary international law," pre-FSIA case law, and some purported general purposes of the FSIA. Br. at 7 n.2, 9, 10, 18-19. But ultimately the United States gives two reasons why *Dole Food* either does not apply here or does not mean what it says.

First, the United States argues that *Dole Food* only stated that "instrumentality status is determined at the time suit is filed" because the Court was forced to effectively choose between the lesser of two evils raised by the parties to that case. According to the United States:

> *Dole Food*'s holding that "instrumentality status [is to] be determined at the time suit is filed," 538 U.S. at 478, … must be understood in context. In light of the history of the corporations' alleged sovereign status, the Court considered only two options: whether instrumentality status should be determined at the time of the alleged tort or at the time the suit was brought. *Id.* at 471. The Court had no occasion in *Dole Food* or in subsequent cases to consider whether instrumentality status may appropriately be found during the pendency of a suit if the entity becomes an agency or instrumentality of the state after the complaint is filed. *Dole Food* should not be read to resolve the latter question.

Br. at 15.

But the Supreme Court did not choose between "only two options," as the United States insists—it held "unequivocally that an entity's status should be 'determined at the time of the filing of the complaint.'" *Abrams v. Société Nationale Des Chemins De Fer Francais*, 389 F.3d 61,

5

64 (2d Cir. 2004) (describing *Dole Food*). And, as stated above, this Court has held that "instrumentality status for purposes of § 1603 [is] determined at the time when the complaint is filed," even where changes occurred "[s]ince this lawsuit was filed …." *Eur. Cmty.*, 764 F.3d at 143 n.15 (emphasis added).

Indeed, the Supreme Court did not write that it was compelled to choose between "only two options," even if that meant ("unequivocally") stating an incorrect rule. Nor did it couch its holding in the narrow facts of that case. It stated, without qualification, "we hold … that instrumentality status is determined at the time of the filing of the complaint." 538 U.S. at 480.

In fact, it explained that its holding was "consistent with the 'longstanding principle that "the jurisdiction of the Court depends upon the state of things *at the time of the action brought.*"'" 538 U.S. at 478 (quoting *Keene Corp. v. United States*, 508 U.S. 200, 207 (1993)) (emphasis added). And it noted, by analogy, "that federal-diversity jurisdiction depends on the citizenship of the parties at the time suit is filed," and cited two cases stating citizenship was determined at time of filing **versus a later time.** *See Minneapolis & St. L. R. Co. v. Peoria & P.*

6

*U. Ry. Co.*, 270 U.S. 580, 586 (1926) ("[L]ater facts alleged could not conceivably affect the result of the case before us. The jurisdiction of the lower court depends upon the state of things existing at the time the suit was brought."); *Anderson v. Watts*, 138 U.S. 694, 707 (1891) ("This court held that jurisdiction depended upon the state of the parties at the commencement of the suit, which no subsequent change could give or take away ….").

Second, the United States argues that the Supreme Court's "reliance" on that longstanding jurisdictional principle is inapposite because sovereign immunity is a separate concept from jurisdiction:

> Nor is there any tension between the present-tense interpretation of the FSIA and *Dole Food*'s reliance on "the longstanding principle that the jurisdiction of the Court depends upon the state of things at the time of the action brought." 538 U.S. at 478 (quotation marks omitted) …. Because the FSIA's substantive foreign sovereign immunity principles apply independently of the statute's grant of jurisdiction, an entity that acquires instrumentality status during litigation is entitled to claim immunity under the FSIA even if the district court's subject-matter jurisdiction is established under some other statute at the outset of litigation.

Br. at 17.

It goes without saying that the Supreme Court's ruling in *Dole Food* was on *immunity*—not jurisdiction (and was "unequivocal"). The fact that

7

the United States believes the Supreme Court *erred* in "relying"[1] on a jurisdictional principle to reach a holding on immunity is irrelevant.

And, again, this Court made clear that *Dole Food*'s holding relates to determining instrumentality status, not just jurisdiction: "the court's subject matter jurisdiction **and** a party's instrumentality status for purposes of § 1603 are both determined at the time when the complaint is filed." *Eur. Cmty.*, 764 F.3d at 143 n.15 (emphasis added). JTB's instrumentality status is determined at the time of filing; later facts do not change that determination, and thus JTB does not enjoy foreign sovereign immunity from this suit.

### B. The United States Cannot Justify a Rule that, Contra *Dole Food*, the FSIA's Present Tense Means Any Time Post-Filing.

Having argued that instrumentality status is *not* determined at time-of-filing despite being defined in the present tense, the United States struggles to show that the "present" means whenever immunity is raised during the pendency of a suit.

---

[1] In any event, the Supreme Court did not "rel[y]" on the jurisdiction principle from *Keene*, 508 U.S. at 207; it only noted that its holding on immunity was "*consistent* with the 'longstanding principle'" in *Keene*. *Dole Food*, 538 U.S. at 478 (emphasis added). Similarly, it cited cases discussing diversity jurisdiction as an "example." *Id.*

8

Instead, it argues that "[foreign sovereign] immunity reflects *current* political realities and relationships," Br. at 11 (quoting *Altmann*, 541 U.S. at 696) (emphasis added), as if "current" necessarily means "right now." It argues that "[t]o give the present tense real significance, the definition also permits an entity that acquires instrumentality status during the pendency of litigation to claim immunity." *Id.* at 14. It argues that the word "is" in the FSIA means "the immunity of an entity turn[s] on the entity's present relationship with the foreign state." And it argues that the FSIA was meant to provide "some *present* 'protection from the inconvenience of suit.'" Br. at 14 (quoting *Altman*, 541 U.S. at 696).

But the Supreme Court *explicitly* gave the "real significance" of the "present tense": "Construing § 1603(b) so that the present tense has *real significance* is consistent with the "longstanding principle that 'the jurisdiction of the Court depends upon the state of things *at the time of the action brought.*'" *Dole Food*, 538 U.S. at 478 (emphasis added). Other circuits agree: "A statute's use of the present tense ordinarily refers to the time the suit is filed, not the time the court rules." *TIG Ins. Co. v. Republic of Arg.*, 967 F.3d 778, 783 (D.C. Cir. 2020). The Fourth Circuit, in a decision affirmed by the Supreme Court, explained that the phrase

9

"*is* an organ of a foreign state," "expressed in the present tense," refers to "the state of things at the time of the action." *Yousuf v. Samantar*, 552 F.3d 371, 382 (4th Cir. 2009) (quoting *Dole Food*, 538 U.S. at 478). And *Dole Food* itself acknowledged that the FSIA provides foreign states "some protection from the inconvenience of suit"—but that did not mean protection from the inconvenience of suits that had *already* commenced against an entity when it was private. 538 U.S. at 479.

Notably, the United States does not cite a *single case* stating that the "present" refers to right now or any time after filing. Instead, the U.S. largely relies on *Oliver American Trading Co. v. Government of the United States of Mexico*, 5 F.2d 659 (2d Cir. 1924), a case decided 50 years before the FSIA was enacted. That decision turned on the effect of the U.S. formally "recognizing" a foreign sovereign during the pendency of a suit against it, rather than an entity becoming sovereign mid-suit. Whatever the relevance that case could have to the facts here, it does not matter. *Oliver* was decided before the FSIA was enacted. It was decided

before *Dole Food*, which interpreted the FSIA, was issued. It is simply irrelevant.[2]

## CONCLUSION

After the commencement of this lawsuit, the United States designated JTB a Specially Designated Global Terrorist for its extensive support for Hezbollah. But it has now argued that it is the policy position of the United States that JTB should be immune from suit from Hezbollah's thousands of American victims. That is the United States' prerogative, if an appalling one. But it is no basis for misconstruing clear legal precedent. This Court should reject the United States' arguments and affirm the decision below.

---

[2] The United States' preferred rule "'unnecessarily leaves room for manipulation,'" whereas "[a] time-of-filing rule avoids such gamesmanship by ensuring that post-filing maneuvering by foreign sovereigns will not affect the result." *TIG Ins. Co.*, 967 F.3d at 785 (quoting *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126, 150 (3d Cir. 2019)). The United States argues that it "is aware of no [such] case," Br. at 20 n.5—but that presumably is the *effect* of the "longstanding principle" relied upon in *Dole Food* (and *Dole Food* itself, which is 20 years old), not a reason to set it aside.

Dated: July 13, 2023
      Hackensack, NJ

                              Respectfully submitted,

                              /s/ Michael Radine

                              **OSEN LLC**
                              Michael Radine
                              Gary M. Osen
                              Ari Ungar
                              Aaron A. Schlanger
                              Dina Gielchinsky
                              190 Moore Street, Suite 272
                              Hackensack, New Jersey 07601
                              (201) 265-6400

                              *Attorneys for Plaintiffs-Appellees*

# CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements and Type Style Requirements

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 2,377 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Century.

Dated: July 13, 2023

/s/ Michael Radine
*Attorney for Plaintiffs-Appellees*